1  GUIDO SAVERI (22349)
   R. ALEXANDER SAVERI (173102)
2  LISA SAVERI (112043)
   SAVERI & SAVERI, INC.
3  111 Pine Street, Suite 1700
   San Francisco, California 94111-5630
4  Telephone (415) 217-6810
   Facsimile (415) 217-6813
5
   Attorneys for Plaintiffs
6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                 (OAKLAND DIVISION)

11

12  FATEMAH AZIZIAN, et al.,          CIVIL NO. 3:03CV03359 SBA

13            Plaintiffs,             CLASS ACTION

14       v.                          DECLARATION OF GUIDO
                                     SAVERI IN SUPPORT OF
15  FEDERATED DEPARTMENT STORES,     MOTION FOR PRELIMINARY
                                     APPROVAL OF CLASS ACTION
16  INC.; et al.,                    SETTLEMENT

17            Defendants.            Date:      November 18, 2003
                                     Time:      1:00 p.m.
18                                   Courtroom: 3, 3rd Floor
                                     Judge:     The Hon. Saundra Brown Armstrong
19

20      I, Guido Saveri, declare:

21      1.    I am a member of the firm Saveri & Saveri, Inc. and licensed to practice before all

22  courts in the State of California. I submit this declaration in support of Plaintiffs' motion for

23  preliminary approval of the settlement with the following Defendants: Federated Department

24  Stores, Inc., The Neiman-Marcus Group, Inc., Nordstrom, Inc., The May Department Stores

25  Company, Saks Incorporated, Gottschalks, Inc., Target Corporation, and Dillard's, Inc.

26  (collectively the "Department Store Defendants"), The Estée Lauder Companies Inc., L'Oréal

27  USA, Inc., Conopco, Inc., Christian Dior Perfumes, Inc., Guerlain, Inc., Parfums Givenchy, Inc.,

28

1   Chanel, Inc., Boucheron (USA) Ltd., and Clarins U.S.A., Inc. (collectively the "Manufacturer
2   Defendants").

3          2.      Attached hereto as Exhibit 1 is a true and correct copy of the Settlement
4   Agreement dated July 16, 2003.

5   **I.     DESCRIPTION OF THE ACTIONS**

6          3.      In 1998, Plaintiffs filed a number of class action complaints on behalf of persons
7   who purchased department store cosmetics in the State of California, defined as the full range of
8   high-end, "prestige" or specialty beauty and cosmetic products and product lines, including, but
9   not limited to, color products, treatments and fragrances which are or were manufactured,
10  distributed and/or sold by the Manufacturer Defendants or Department Store Defendants under
11  various brand names during the period from May 29, 1994 through July 16, 2003 ("Department
12  Store Cosmetic Products"). The original complaints were filed in various counties in the State of
13  California and were ultimately coordinated and assigned by the Judicial Council of the State of
14  California to Judge M. Lynn Duryee, Judge of the Superior Court in and for the County of Marin,
15  State of California. The original complaints alleged a conspiracy among the Department Store
16  Defendants to prohibit discounting of Department Store Cosmetic Products sold to consumers
17  throughout California in violation of the state antitrust and unfair competition laws. After
18  extensive discovery, Class Plaintiffs on or about May 17, 2000 filed their Amended Consolidated
19  Complaint to add the Manufacturer Defendants to the complaint and alleged a conspiracy among
20  the Department Store Defendants and the Manufacturer Defendants to discourage or prohibit
21  discounting of Department Store Cosmetic Products. Plaintiffs continued conducting extensive
22  discovery, including taking numerous depositions and inspecting hundreds of thousands of
23  documents. The parties retained the services of The Honorable Charles B. Renfrew, former
24  United States District Judge for the Northern District of California to act as a Special Master and
25  Discovery Referee to resolve the numerous and contested discovery issues that arose during the
26  lengthy proceedings. The parties also retained the services of the Honorable Daniel J. Weinstein
27  to mediate the settlement negotiations.

28         4.      The original cases filed in the state courts alleged a statewide conspiracy in

California. As the case developed, it became apparent that the Defendants' conduct was nationwide in scope and that a nationwide settlement was necessary to resolve all applicable federal and state law claims and to reduce the time and expense which would otherwise result from multiple litigation in federal and state fora of claims that are substantively similar to the claims asserted and allegations made by Plaintiffs herein. Consequently, to obtain a nationwide settlement and relief, a federal complaint, attached as Exhibit A to the Settlement Agreement, was filed on July 18, 2003. The state cases have been stayed.

5.  Defendants have denied engaging in any wrongful conduct and have vigorously defended this case. Two motions for summary judgment are pending before Judge Duryee.

## III.  SETTLEMENT NEGOTIATIONS

6.  After over two years of arm's-length negotiations, Plaintiffs and all Defendants reached a Settlement Agreement on July 16, 2003.

7.  The Settlement Agreement provides that Settling Defendants shall agree to entry of a Stipulated Order enjoining certain future conduct, a copy of which order is attached to the Settlement Agreement as Exhibit B.

8.  The Stipulated Order provides, among other things, that the Department Store Defendants are prohibited from entering into any agreement with any manufacturer to: (a) fix, establish, control or maintain the resale price, including the manufacturer's suggested resale price ("MSRP"), at which any Department Store Defendant may offer for sale or sell any Department Store Cosmetic Products; (b) maintain, adopt or adhere to any resale price for such products; (c) secure any commitment or assurance from any other Department Store Defendant concerning the resale price at which that Department Store Defendant may offer for sale or sell any Department Store Cosmetic Products; or (d) prohibit any Department Store Defendant from advertising any Manufacturer Defendant's Department Store Cosmetic Products at a resale price less than the MSRP, except any advertising done pursuant to a cooperative advertising program whereby a manufacturer pays the costs, in whole or in part, of advertising by a retail store for the manufacturer's Department Store Cosmetic Products ("Cooperative Advertising Program").

9. The Stipulated Order also provides that the Manufacturer Defendants are prohibited from entering into any agreement with any Retail Store: (a) to fix, establish, control or maintain the resale price, including any MSRP, at which any Department Store Defendant may offer for sale or sell any Department Store Cosmetic Products; (b) to maintain, adopt or adhere to any resale price for any Manufacturer Defendant's Department Store Cosmetic Products; (c) to secure any commitment or assurance from any Department Store Defendant concerning the resale price at which such Department Store Defendant may offer for sale or sell any Department Store Cosmetic Products; or (d) to prohibit any Department Store Defendant from advertising any Manufacturer Defendant's Department Store Cosmetic Products at a resale price less than the MSRP, or to prohibit any other Department Store Defendant from advertising any Manufacturer Defendant's Department Store Cosmetic Products at a resale price less than the MSRP, except any advertising done pursuant to a Cooperative Advertising Program.

10. Each Manufacturer Defendant is also prohibited from: (a) suggesting or recommending an MSRP or resale price to any Department Store Defendant in writing on any price list or order form unless it clearly states the following caveat on each page of such list or form: "The Retail Prices Quoted Herein Are Suggested Only. You Are Completely Free to Determine Your Own Retail Prices"; (b) requiring any Department Store Defendant to report the identity of any other Department Store Defendant which resells that Manufacturer Defendant's Department Store Cosmetic Products below the MSRP; (c) taking objectively baseless action under applicable legal precedent to hinder or preclude the lawful use by any Department Store Defendant of any brand name, trade name or trademark of any Manufacturer Defendant because of the sale or advertising of any Department Store Cosmetic Products at any resale price; (d) conducting any surveillance program to determine whether any Department Store Defendant is advertising, offering for sale or selling any Department Store Cosmetic Products at any resale price, where such surveillance program is conducted to fix, maintain, control or enforce the resale price at which any Department Store Cosmetic Products are sold or advertised; (e) making any payment or granting any other benefit to any Department Store Defendant in consideration for the Department Store Defendant's agreement to sell or advertise any Department Store

1   Cosmetic Products at MSRP, except in connection with any Cooperative Advertising program or
2   any conduct, agreement or understanding that is expressly permitted under the Stipulated Order;
3   or (f) agreeing upon the prices for new Department Store Cosmetic Products with any other
4   Manufacturer Defendant.  The Stipulated Order also requires each Manufacturer Defendant to
5   distribute a letter (Exhibit A to the Stipulated Order) to all of the retailers that sell that
6   Manufacturer Defendant's Department Store Cosmetic Products advising those retailers of the
7   prohibitions contained in the Stipulated Order.

8          11.    The settlement also provides that Defendants shall provide a total of One Hundred
9   and Seventy-Five Million Dollars ($175,000,000.00) in Department Store Cosmetic Products
10  (the "Product Fund") based on the retail value of such products as they would be normally valued
11  by the Settling Defendants in the ordinary course of business, free of any cost or charge to, or
12  requirement to purchase any other product or service by, the members of the Settlement Class.
13  The Product Fund is to be distributed in accordance with procedures described in Exhibit C to
14  the Settlement Agreement.

15         12.    In addition to the above benefits made available to the Settlement Class, Settling
16  Defendants agree to pay all expenses and costs incurred in providing notice to the Settlement
17  Class, as described in paragraph 9 of the Settlement Agreement, as well as all expenses incurred
18  in administering the notice and settlement process. Further, Settling Defendants will not object to
19  any application by Plaintiffs' Counsel for attorneys' fees, expenses and costs (collectively,
20  "Attorneys' Fees") incurred for work already performed in the prosecution of these actions or to
21  be performed hereafter by Plaintiffs' Counsel (as defined in the Settlement Agreement) on behalf
22  of the Settlement Class in obtaining final approval of this settlement and in upholding such
23  approval on appeal, so long as, and provided that, such request is not in excess of $24,000,000.

24         13.    Attached as Exhibits F-1 and F-2 to the Settlement Agreement are two forms of
25  proposed notices. Exhibit F-1 is a summary notice which will be published throughout the United
26  States in approximately 50 newspapers in the top 25 markets in the United States as well as in the
27  following magazines: Parade and USA Weekend (carried in approximately 900 newspapers),
28  Better Homes & Gardens, People, Reader's Digest, TV Guide, Newsweek, Cosmopolitan, In-

1 <u>Style</u> and <u>Redbook</u>. All of these publications, including the specific newspapers, are also listed

2 in Exhibit G to the Settlement Agreement. The proposed summary notice describes the lawsuit,

3 the proposed Settlement Class, the proposed settlement, the options available to each class

4 member to opt out or object to the settlement or Attorneys' Fees, and the date of the hearing on

5 final approval. In addition, Exhibit F-2 will be posted on a website established for the purpose of

6 the settlement and mailed to any class member who requests a copy. The website address will be

7 published in the summary notice, along with a toll-free telephone number that will provide

8 information to the class members about the nature of the settlement. Class members will be able

9 to provide their email and/or mailing addresses on the website or by calling the toll-free number

10 in order to register to receive an email or postcard notification of the time and places of the

11 settlement product give-away. In addition to the email or postcard notification, a supplemental

12 notice will be published in the approximately 50 newspapers following settlement approval to

13 alert class members when and where they may claim their settlement product.

14     14. Attached as Exhibit E to the Settlement Agreement is a copy of a Proposed Order

15 Conditionally Certifying Settlement Class; Granting Motion for Preliminary Approval of Class

16 Actions; and Scheduling Hearing on Final Settlement Approval.

17     15. Attached as Exhibit H to the Settlement Agreement is a proposed Final Judgment.

18     16. The settlement was consummated only after thorough, arm's-length, protracted

19 negotiations by experienced and informed counsel.

20     17. The settlement was reached after completion of substantial discovery, and in the

21 judgment of Plaintiffs' Counsel, is clearly fair and adequate and should be approved.

22     I declare under penalty of perjury that the foregoing is true and correct to the best of my

23 knowledge and belief at the present time.

24     Executed the **3** day of *October*, 2003 at San Francisco, California.

25

26                                 Guido Saveri

27

28

EXHIBIT 1

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement" or "Settlement Agreement") is made as of the ____ day of July, 2003, by and between the Plaintiffs in the coordinated actions pending in the California Superior Court, County of Marin (the "Plaintiffs"), both individually and on behalf of each and every member of the Settlement Class, and the following entities hereinafter collectively referred to as "Settling Defendants":

(a) Boucheron (USA) Ltd., Chanel, Inc., Christian Dior Perfumes, Inc., Clarins U.S.A., Inc., Conopco, Inc., The Estée Lauder Companies Inc., Guerlain, Inc., L'Oréal USA, Inc. (formerly known as Cosmair, Inc.), Parfums Givenchy, Inc. (sometimes collectively referred to herein as the "Manufacturer Defendants"); and (b) Dillard's, Inc., Federated Department Stores, Inc., Gottschalks Inc., The May Department Stores Company, The Neiman Marcus Group, Inc., Nordstrom, Inc., Saks Incorporated and Target Corporation (sometimes collectively referred to herein as the "Department Store Defendants").

WHEREAS, nine class actions were filed in various Superior Courts for the State of California between May 29, 1998 and July 2, 1998, against the defendants named therein (the "Named Defendants"), which cases were coordinated by the Judicial Council of the State of California on December 7, 1998, before The Honorable Lynn Duryee, Judge of the Superior Court for the State of California, County of Marin (the "Superior Court") and captioned "In Re Cosmetics Cases, JCCP No. 4056" (hereinafter sometimes referred to as the "Coordinated Actions"), which actions were actively litigated for over four years under the supervision of Judge Duryee; and

WHEREAS, Plaintiffs allege that Settling Defendants have acted unlawfully by, among other things, combining, conspiring or otherwise engaging in a common course of

conduct to fix, raise, maintain or stabilize prices of Department Store Cosmetic Products (as defined in Paragraph 2, below), in violation of both federal and state laws, and Plaintiffs contend that they have suffered damages, including paying more for such products than they would have paid in a competitive market; and

WHEREAS, Settling Defendants deny each and every one of Plaintiffs' allegations of unlawful conduct and have asserted a number of defenses to Plaintiffs' claims; and

WHEREAS, Plaintiffs and Settling Defendants agree that this Settlement Agreement, including its exhibits, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by any defendant or of the truth of any of the claims or allegations alleged by Plaintiffs; and

WHEREAS, the Honorable Charles B. Renfrew was appointed to act as the Discovery Referee in the Coordinated Actions, and has conducted numerous hearings and made rulings on the scope and extent of discovery; and

WHEREAS, counsel for the Plaintiffs have conducted an extensive investigation into the facts and issues raised by this action, and have reviewed and analyzed hundreds of thousands of documents, and have deposed numerous former and current employees of the Settling Defendants; and

WHEREAS, the Honorable Daniel J. Weinstein was appointed as a settlement mediator in the Coordinated Actions, whose mediation efforts contributed to this settlement; and

WHEREAS, arm's-length settlement negotiations took place between counsel for Plaintiffs and counsel for Settling Defendants; and

WHEREAS, Plaintiffs have concluded that it is in the best interests of the Settlement Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation, particularly complex litigation such as this; and

WHEREAS, Plaintiffs consider the settlement set forth herein to be fair, reasonable and adequate to all members of the Settlement Class, as defined in Paragraph 3, below; and

WHEREAS, each Settling Defendant has concluded, despite its belief that it has good defenses to the claims asserted and is not liable therefore, that it will enter into this Settlement Agreement solely to avoid the further expense, inconvenience and burden of this protracted litigation, and the distraction and diversion of its personnel and resources, and thereby to put to rest this controversy with the Plaintiffs, and to avoid the risks inherent in complex litigation; and

WHEREAS, a nationwide settlement will resolve all applicable federal and state law claims and reduce the time and expense which would otherwise result from litigation in other federal and state forums of claims that are duplicative of the claims asserted and allegations made by Plaintiffs herein, and will result in more rapid relief for the Settlement Class;

NOW THEREFORE, it is agreed by the undersigned, on behalf of the Plaintiffs and on behalf of the Settling Defendants, that this action and all claims of the Plaintiffs and members of the Settlement Class be settled, compromised and dismissed on the merits and with prejudice as to each of the Settling Defendants, and, except as hereinafter provided, without costs to Plaintiffs or Settling Defendants, on the following terms and conditions:

1.      For settlement purposes only, within ten (10) days of the date hereof,

Plaintiffs shall file a complaint, substantially in the form attached hereto as Exhibit A

(hereinafter referred to as the "Federal Action"), in the United States District Court for

the Northern District of California (hereinafter referred to as the "Federal Court").

Thereafter, the parties to this Agreement shall proceed with the settlement proposed

herein before the Federal Court.  During the pendency of the settlement proceedings

before the Federal Court, the parties hereto shall stipulate to and seek an order from the

Superior Court providing for a stay of all proceedings and tolling of the Five-Year Statute

(California Code of Civil Procedure, Section 583.310).  Upon this settlement becoming

final in accordance with the terms of this Agreement, Plaintiffs shall dismiss the

Coordinated Actions with prejudice.  If, for any reason, this settlement does not become

final as to one or more of the Settling Defendants, Plaintiffs, at their option, may proceed

against such defendant(s) in the Federal Court or may dismiss the Federal Action without

prejudice as to such defendant(s) and resume proceedings against such defendant(s) in the

Superior Court.

2.      As used in this Settlement Agreement, the term "Department Store

Cosmetic Products" means the full range of high-end, "prestige" or specialty beauty and

cosmetic products and product lines (whether established, discontinued or new),

including, but not limited to, color products, treatments and fragrances which are or were

manufactured, distributed and/or sold by the Manufacturer Defendants or Department

Store Defendants under various brand names during the time period referenced in

Paragraph 3 herein.  Department Store Cosmetic Products are sold primarily through

traditional department and/or specialty stores ("Retail Stores"), including such stores

owned or operated by the Department Store Defendants, who, in turn, sell such products

to the Plaintiffs and members of the Settlement Class. The term "Department Store

Cosmetics" excludes products and product lines sold principally through mass

distribution channels.

3.     For settlement purposes only, Plaintiffs and Settling Defendants agree

jointly to request that the Federal Court certify the following Settlement Class for

purposes of effectuating this settlement:

> All persons who currently reside in the United States and
> who purchased Department Store Cosmetic Products in the
> United States, which products were manufactured,
> distributed and/or sold by the Manufacturer Defendants or
> Department Store Defendants, at any time during the period
> May 29, 1994 through July ____, 2003 (the "Class
> Period"). Excluded from this Settlement Class are all
> employees, officers, directors or agents (including
> attorneys) of any defendant, as well as any judge, justice or
> judicial officer presiding over this matter, and each such
> person's immediate family.

4.     In full and complete settlement of all claims described in Paragraph 18,

below, which have been, might have been, are now or could be asserted in the

Coordinated Actions or in the Federal Action, Settling Defendants shall:

> (a)     agree to entry of the Stipulated Order, a copy of which is attached
>         hereto as Exhibit B; and
>
> (b)     provide a total of One Hundred and Seventy-Five Million Dollars
>         ($175,000,000.00) in Department Store Cosmetic Products (the
>         "Product Fund") based on the retail value of such products as they
>         would be normally valued by the Settling Defendants in the
>         ordinary course of business (including promotions), free of any
>         charges to the members of the Settlement Class, in accordance
>         with a plan of distribution, which is attached hereto as Exhibit C.

5.     In addition to the benefits made available to the Settlement Class pursuant

to Paragraph 4 above, Settling Defendants will pay all of the expenses and costs incurred

in providing notice to the Settlement Class and administering the Settlement as described in Paragraph 9 herein, as well as all expenses incurred in distributing the free product provided in Paragraph 4(b) above.

6.     (a)     Settling Defendants will not object to any application by plaintiffs' counsel in the Federal Action, listed on Exhibit D (hereinafter "Plaintiffs' Counsel"), for attorneys' fees, expenses and costs (collectively, "Attorneys' Fees") incurred for work already performed in the prosecution of the Coordinated Actions and/or to be performed hereafter by Plaintiffs' Counsel in the Federal Action on behalf of the Settlement Class in obtaining final approval of this Settlement and in upholding such approval (including any and all appeals), so long as, and provided that, such request is not in excess of $24,000,000. Plaintiffs' Counsel may apply for an award of Attorneys' Fees not to exceed in the aggregate $24,000,000 at the same time as Plaintiffs' Counsel applies for an order pursuant to Paragraph 14 herein finally approving the settlement. Settling Defendants agree to pay Attorneys' Fees as awarded by the Court to the extent such award does not exceed $24,000,000 (the "Fee Award") within ten (10) business days after the date of the Order by the Court approving any Fee Award. Such monies shall be deposited in an interest-bearing trust account(s) (the "Trust Account") at such bank(s) as is consistent with proper security with Guido Saveri, William Bernstein, Josef D. Cooper, Joseph M. Alioto and Francis O. Scarpulla serving as co-escrow agents. Any interest earned on such monies shall become and remain a part of the amount deposited. Except as expressly provided for in this Agreement, Settling Defendants shall have no obligation or responsibility with respect to the allocation, administration or distribution of the monies in the Trust Account(s). Settling Defendants shall bear no risk related to the investment of the funds in the Trust Account(s).

    (b)     Under no circumstances shall Settling Defendants have any obligation to pay more than $24,000,000 for Attorneys' Fees of any and all members of the Settlement Class or their Counsel, experts or advisors.

    (c)     The monies in the Trust Account(s) shall be dispensed only pursuant to and consistent with the Court order awarding Attorneys' Fees, except that any award of Attorneys' Fees shall be paid from the Trust Account(s) only upon this settlement becoming Final pursuant to Paragraph 15 herein.

(d)     Except as provided in Paragraph 6(b) herein, the procedure for and the allowance or disallowance by the Court of any Attorneys' Fees are not part of the settlement set forth in this Settlement Agreement and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement set forth in the Settlement Agreement, and any order or proceedings relating to the payment of any Attorneys' Fees, or any fee and/or expense application, or any appeal from any order relating thereto, or a reversal or modification thereof shall not operate to terminate or cancel the Settlement Agreement or affect or delay the finality of the judgment approving the Settlement Agreement and the settlement of the Federal Action set forth herein.

7.      Counsel for the undersigned agree to recommend approval of this

settlement to the Federal Court and to undertake their best efforts, including all steps and

efforts contemplated by this Agreement and any other steps and efforts that may be

necessary or appropriate, by order of the Federal Court or otherwise, to carry out the

terms of this settlement.

8.      (a)     Within ten (10) business days after the filing of the Federal Action, Plaintiffs shall submit to the Federal Court a motion pursuant to Rule 23, Federal Rules of Civil Procedure:

(i)      for certification, for settlement purposes only, of the Settlement Class as defined in Paragraph 3, above;

(ii)     for preliminary approval of the contemplated settlement;

(iii)    to schedule a hearing for final approval of the proposed settlement; and

(iv)    to stay all proceedings in the Federal Action against the Settling Defendants until the Federal Court has ruled on final approval of the settlement and entered a final judgment.

(b)     The motion shall include:

(i)      a copy of this Settlement Agreement;

<table>
<tr><td>(ii)</td><td>a copy of the proposed form of order, substantially in the form attached hereto as Exhibit E, conditionally certifying the Settlement Class and preliminarily approving the settlement ("Preliminary Approval Order");</td></tr>
<tr><td>(iii)</td><td>a copy of the proposed Summary Notice of the settlement to members of the Settlement Class, substantially in the form attached hereto as Exhibit F-1, which shall be disseminated through publication in the publications listed in Exhibit G, attached hereto;</td></tr>
<tr><td>(iv)</td><td>a copy of the proposed Notice of the settlement to members of the Settlement Class, substantially in the form attached hereto as Exhibit F-2, to be posted on a website and mailed to any class member who so requests; and</td></tr>
<tr><td>(v)</td><td>a copy of the proposed form of order and final judgment, substantially in the form attached hereto as Exhibit H.</td></tr>
<tr><td>(c)</td><td>Plaintiffs shall notice for hearing a motion for preliminary approval pursuant to the Federal Court's Local Rules.</td></tr>
</table>

9.     Notice of this settlement shall be given to members of the Settlement Class within thirty (30) days of the Federal Court's order preliminarily approving the Settlement, or as soon thereafter as practicable. There shall be two forms of notice: a Summary Notice, substantially in the form attached hereto as Exhibit F-1, and a Notice, substantially in the form attached hereto as Exhibit F-2. The Summary Notice shall be published in each of the publications listed on Exhibit G. The Notice shall be posted on a website established for purposes of this Settlement and mailed to any Settlement Class member who requests a copy. The website address shall be published in the Summary Notice, along with a toll-free telephone number that will provide information to the Class Members about the nature of the settlement. The Settling Defendants shall be responsible for all costs and expenses of providing notice to the Settlement Class and administering the Settlement pursuant to the terms of this paragraph.

(ii)    a copy of the proposed form of order, substantially in the form attached hereto as Exhibit E, conditionally certifying the Settlement Class and preliminarily approving the settlement ("Preliminary Approval Order");

(iii)    a copy of the proposed Summary Notice of the settlement to members of the Settlement Class, substantially in the form attached hereto as Exhibit F-1, which shall be disseminated through publication in the publications listed in Exhibit G, attached hereto;

(iv)    a copy of the proposed Notice of the settlement to members of the Settlement Class, substantially in the form attached hereto as Exhibit F-2, to be posted on a website and mailed to any class member who so requests; and

(v)    a copy of the proposed form of order and final judgment, substantially in the form attached hereto as Exhibit H.

(c)    Plaintiffs shall notice for hearing a motion for preliminary approval pursuant to the Federal Court's Local Rules.

9.    Notice of this settlement shall be given to members of the Settlement Class within thirty (30) days of the Federal Court's order preliminarily approving the Settlement, or as soon thereafter as practicable. There shall be two forms of notice: a Summary Notice, substantially in the form attached hereto as Exhibit F-1, and a Notice, substantially in the form attached hereto as Exhibit F-2. The Summary Notice shall be published in each of the publications listed on Exhibit G. The Notice shall be posted on a website established for purposes of this Settlement and mailed to any Settlement Class member who requests a copy. The website address shall be published in the Summary Notice, along with a toll-free telephone number that will provide information to the Class Members about the nature of the settlement. The Settling Defendants shall be responsible for all costs and expenses of providing notice to the Settlement Class and administering the Settlement pursuant to the terms of this paragraph.

10. (a)    Any member of the Settlement Class shall have the right to opt out of the Settlement Class and thereby exclude herself or himself from this settlement pursuant to the procedure set forth in Paragraph 12, below, and in the Preliminary Approval Order. Within ten (10) days after the last date by which members of the Settlement Class must provide notification of their election to exclude themselves from the Settlement Class, Plaintiffs' Counsel shall serve on counsel for the Settling Defendants a list of all members of the Settlement Class who have excluded themselves from the Settlement Class.

(b)    In the event that any Settling Defendant concludes in good faith that the number of class members who have requested exclusion from the Settlement Class is "substantial," then that Settling Defendant shall have the right, exercisable in its sole and absolute discretion, to withdraw from this settlement by filing with the Federal Court and serving on Plaintiffs' Counsel written notice of withdrawal within ten (10) days after receipt of the list of those Settlement Class members excluding themselves from the class. With respect to each Settling Defendant who timely withdraws, this Agreement shall be terminated, cancelled, null and void and all consideration described in Paragraphs 4 and 6, above, to be provided by Settling Defendants pursuant to this Agreement shall be reduced in proportion to the amount(s) that would have been contributed by such withdrawing Defendant(s), and the parties shall meet and confer in good faith to calculate such amounts based on information provided by the Settling Defendants. If all Settling Defendants timely withdraw, this Settlement Agreement shall be terminated, cancelled, null and void as to all parties. Any Settling Defendant who elects to withdraw from this Agreement will not be reimbursed for any funds advanced to pay the costs of notice and/or communicating with Class members. In addition, any Defendant who withdraws from the settlement pursuant to this Paragraph shall not be bound by the Stipulated Order (Exhibit B) or any court-ordered Consent Decree. Plaintiffs shall be free to pursue this action against such withdrawing Defendant(s) forthwith.

(c)    In the event that Plaintiffs conclude in good faith that the withdrawal of any Settling Defendant will "materially reduce" the consideration to be received by the Settlement Class members under Paragraph 4(b) herein, then Plaintiffs shall have the right, exercisable in their sole and absolute discretion, to withdraw from this Settlement by filing with the Federal Court and serving on Settling Defendants' counsel written notice of withdrawal within

four (4) days after receipt of any Settling Defendant's withdrawal. If the Plaintiffs elect to withdraw from this Agreement, no defendant will be reimbursed for any funds advanced pursuant to Paragraph 5.

(d)     For purposes of Paragraph 10(b), the term "substantial" shall be interpreted so that no Settling Defendant may withdraw from this Settlement unless at least 7,500 class members have requested exclusion from the Settlement Class. For purposes of Paragraph 10(c), the term "materially reduce" shall be interpreted so that Plaintiffs may not withdraw from this settlement unless the amount of retail value consideration to be received by the Settlement Class members under Paragraph 4(b) herein is reduced by more than thirty percent (30%).

(e)     In the event that any Settling Defendant who does not withdraw under the terms of Paragraph 10(b) fails to pay its proportionate share of the consideration described in Paragraphs 4 and 6 herein ("Proportionate Share"), then Plaintiffs retain the right to sue such defendant for breach of this Agreement and seek damages for such defendant's failure to pay. Under such circumstances, the non-withdrawing Settling Defendants shall provide Plaintiffs with information sufficient to calculate any withdrawing Settling Defendant's Proportionate Share. By way of example, if a Settling Defendant with a Proportionate Share of 10% fails to pay that Proportionate Share, the Product Fund described in Paragraph 4 will be reduced to $157,500,000, and the Attorneys' Fees and/or fee award described in Paragraph 6 will be reduced to an amount not in excess of $21,600,000. In the event that any Settling Defendant withdraws or fails to pay under Paragraphs 10(b) or (e), Plaintiffs may not seek to recover from any other Settling Defendant the withdrawing Settling Defendant's Proportionate Share.

11.     Within thirty (30) days after the last date by which Settlement Class members may exclude themselves from the settlement, Plaintiffs' Counsel shall file a Memorandum of Points and Authorities requesting final approval by the Court of the settlement, including a determination by the Court: (i) that the settlement set forth in this Settlement Agreement shall be approved finally as fair, reasonable and adequate; (ii) that Plaintiffs' Counsel have adequately represented the interests of the Settlement Class; (iii)

that the Plaintiff Settlement Class, excluding those persons who exercise their right to opt out of participation in the Settlement, shall be certified; (iv) that the Judgment approving the settlement substantially in the form of Exhibit H, should be entered; and (v) that an award of Attorneys' Fees and expenses should be made to counsel for the Plaintiffs.

12.     Any person, acting solely on his or her own behalf, may seek to be excluded from the Settlement Class and the Settlement provided for by this Agreement by submitting a written request for exclusion. Any request for exclusion must be mailed to the Cosmetics Antitrust Litigation Settlement Administrator, post-marked no later than thirty-five (35) days after the deadline for publishing the Notice. Any Settlement Class member so excluded shall not be bound by the terms of the Agreement, nor entitled to any of its benefits, and will not be bound by any final judgment or other order of the Court entered herein, whether pursuant to this Agreement or otherwise.

13.     Any member of the Settlement Class who has not timely requested exclusion may appear at the final approval hearing and show cause why the Court should not approve this settlement and dismiss the Federal Action with prejudice as to the Settling Defendants, and may appear at the hearing to support or oppose Plaintiffs' Counsel's application for Attorneys' Fees and expenses. For a member of the Settlement Class to have any objections considered, the Settlement Class member must file any objections and all papers in support of such objections with the Cosmetics Antitrust Litigation Settlement Administrator no later than thirty-five (35) days after the deadline for publishing the Notice. All such written objections and papers shall be sent by first-class mail, postage prepaid, to the Cosmetics Antitrust Litigation Settlement Administrator. The objection shall include: (1) the Settlement Class member's complete

name and residence or business address (giving the address of any lawyer who represents the Settlement Class member is not sufficient); (2) a statement that the Settlement Class member purchased Department Store Cosmetic Products during the period May 29, 1994 through July ___, 2003; and (3) each ground for comment or objection and any supporting papers the Settlement Class member desires the Court to consider (*i.e.*, a mere statement that "I object" shall not be deemed to be sufficient). The Cosmetics Antitrust Litigation Settlement Administrator shall provide copies of any objections received to designated counsel for the Plaintiffs and for the Settling Defendants within three (3) days of receipt of such objections by the Cosmetics Antitrust Litigation Settlement Administrator. The filing of any objection shall not extend the time within which a Settlement Class member may file a request for exclusion from the settlement.

14. If the Federal Court finally approves this settlement, then the parties hereto shall seek entry of an order and judgment substantially in the form attached hereto as Exhibit H:

        (a)    Determining that the Settling Defendants and the Plaintiffs and members of the Settlement Class have submitted to the jurisdiction of the Federal Court for purposes of the proposed settlement, and that the Federal Court has subject matter jurisdiction to approve the Settlement Agreement;

        (b)    Finding that the proposed Settlement Class satisfies the requirements for a class action under Rule 23 of the Federal Rules of Civil Procedure, taking into account as permitted under applicable precedent the fact that the class is being certified for settlement purposes only;

        (c)    Finding that the notice given pursuant to this Settlement Agreement: (i) constitutes the best practicable notice under the circumstances; (ii) constitutes due, adequate and sufficient notice to all persons entitled to receive notice; and (iii) meets the

requirements of due process, the Federal Rules of Civil Procedure and any other applicable rules of the Federal Court;

(d)   Approving finally this settlement and its terms as being in good faith and a fair, reasonable and adequate settlement as to Plaintiffs and the members of the Settlement Class, and directing the settlement's consummation pursuant to its terms;

(e)   Dismissing the Federal Action with prejudice as to each Settling Defendant, without Attorneys' Fees and costs, except as provided for herein;

(f)   Providing that the Federal Court shall retain jurisdiction for a period of three (3) years to enforce the Stipulated Order;

(g)   Determining that there is no just reason for delay and ordering that the judgment of dismissal of the Federal Action shall be final and appealable;

(h)   Incorporating the release set forth below (in Paragraphs 18 and 19 of this Settlement Agreement), and forever discharging the Settling Defendants from any claims or liabilities relating to the Federal Action; and

(i)   Reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement.

15.   This settlement shall become final upon the occurrence of the following events:

(a)   The entry, as provided in Paragraph 14, of the order and final judgment (substantially in the form attached hereto as Exhibit H) of dismissal with prejudice as to the Settling Defendants against all Plaintiffs and members of the Settlement Class who have not timely excluded themselves from the Federal Action; and

(b)   The expiration of the time for appeal (including a petition for *certiorari*), or to seek permission to appeal from the Federal Court's entry of the final judgment, or, if appealed, the final judgment has been affirmed in its entirety by the Federal Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

In the event that the Federal Court refuses to approve this settlement, or any material part hereof, or the final judgment described in Paragraph 14 is not entered, or the Federal Court's approval of this settlement or such final judgment is set aside, in whole or in material part, on appeal, this Agreement in its entirety (except for Paragraph 21 herein) shall become null and void unless and only insofar as the parties hereto agree otherwise in writing. An appeal solely from the judgment approving an award of Attorneys' Fees and costs and the payment thereof to Plaintiffs' Counsel shall not affect the finality of the approval of this settlement. A modification or reversal on appeal of any amount of Plaintiffs' Counsel's Attorneys Fees awarded by the Federal Court shall not be deemed a modification of all or a part of the terms of the final judgment, except that, as stated in Paragraph 6 herein, Settling Defendants shall, under no circumstances, be obligated to pay more than $24,000,000 in Attorneys' Fees. Within ten (10) business days of this settlement becoming final in the Federal Court, Plaintiffs shall dismiss the Coordinated Actions with prejudice.

16. Attorneys' Fees and "incentive awards" (if any) to the Plaintiffs shall be paid solely from the Court's Fee Award (as defined in Paragraph 6(a) herein). Settling Defendants shall not be liable for any "incentive awards" to the Plaintiffs, or for any costs, fees or expenses of any of Plaintiffs' respective attorneys, experts, consultants, advisors, agents or representatives, and all such costs, fees and expenses as approved by the Federal Court shall be paid by Plaintiffs from the Court's Fee Award. Other than the costs of notice, distribution and administration (provided for in Paragraphs 5 and 9, above), the Settling Defendants shall be under no obligation to contribute anything in excess of One Hundred Seventy Five Million Dollars ($175,000,000.00) in Department

Store Cosmetic Products (the "Product Fund") (as described in Paragraph 4(b) herein) and the Federal Court's Fee Award (as described in Paragraph 6 herein).

17.     The consideration provided to the members of the Settlement Class pursuant to this Agreement is in full, complete and final settlement of the Coordinated Actions and the Federal Action, and shall be the Settling Defendants' sole obligation to support the full and complete settlement and satisfaction of all claims against the Settling Defendants as defined in Paragraphs 18 and 19, below.

18.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this settlement becoming final, Settling Defendants and their present and former parents, subsidiaries, divisions, affiliates, officers, directors, employees, agents and any of their legal representatives (and the present and former parents, subsidiaries, divisions, affiliates, officers, directors, employees, agents and legal representatives, and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing) shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, whether class, individual or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any member of the Settlement Class who has not timely excluded herself/himself from this action (including any of their past, present or future agents, legal representatives, trustees, estates, heirs, executors and administrators), and whether or not they object to the settlement, ever had, now has, or hereafter can, shall or may have, arising out of conduct during the Class Period by any Settling Defendant concerning the pricing, marketing, distribution, promotion, advertising or sale of

Department Store Cosmetic Products, and which arise under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing or trade practice law, or other similar law or regulation or common law, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.*, the Cartwright Act, Cal. Bus. & Prof. Code § 16720, *et seq.*, the Unfair Practices Act, Cal. Bus. & Prof. Code § 17000, *et seq.* and the Unfair Competition Act, Cal. Bus. & Prof. Code § 17200, *et seq.*, as well as any other federal or state law, statute or regulation concerning any of the aforementioned subjects. Nothing in this Agreement is intended to release any other claim(s) that a Plaintiff or member of the Settlement Class may have against one or more of the Settling Defendants; for example, a personal injury or a product defect claim is not released. Nothing in this Agreement is intended to release any claim(s) that any member of the Settlement Class may have against any other manufacturer or retailer of Department Store Cosmetic Products other than the Settling Defendants. Each member of the Settlement Class (including his or her past, present or future agents, legal representatives, trustees, parents, estates, heirs, executors and administrators) hereby covenants and agrees that she or he shall not hereafter assert any claim, demand, action, suit or cause of action, whether class or individual, against any Settling Defendant based, in whole or in part, upon any released claim.

19.     Plaintiffs and Settlement Class members who do not exclude themselves from this litigation expressly waive the provisions of Section 1542 of the California Civil Code (and all other like provisions of law) to the full extent that these provisions may be applicable to this release. California Civil Code, Section 1542, provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each member of the Settlement Class may hereafter discover facts other than or different from those which he or she knows or believes to be true with respect to the claims being released pursuant to the provisions of Paragraph 18. Nevertheless, each member of the Settlement Class hereby expressly waives and fully, finally and forever settles and releases, upon this settlement becoming final, any known or unknown, suspected or unsuspected, contingent or noncontingent claim in any way relating to the subject matter of the claims being released pursuant to the provisions of Paragraph 18, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

20. In the event that this settlement does not become final as contemplated by Paragraph 15, above, or any Settling Defendant withdraws pursuant to Paragraph 10(b), above, the monies contained in the Trust Account(s), including any and all income earned thereon, less any taxes and/or expenses and costs incurred in connection with said account(s), shall be returned to each Settling Defendant with respect to whom this settlement is terminated, on the same ratable basis as such funds were contributed to the Trust Account(s) by such Settling Defendant. Any release or covenant not to sue pursuant to Paragraphs 18 or 19, above, shall be of no force or effect with respect to such withdrawing Settling Defendant. Such withdrawing Settling Defendant shall not be required to contribute its Proportionate Share to the Product Fund or to sign (or be bound by the terms of) the Stipulated Order.

21.     In the event that this settlement does not become final as to one or more of the Settling Defendants in accordance with the terms hereof, then this Agreement shall be of no force or effect as to such Defendant(s), except that the parties hereto agree that this Agreement, including its exhibits, and any and all negotiations, drafts of settlement documents and discussions associated with it, shall be without prejudice to the rights of any party, shall be inadmissible in evidence against any party, and further shall not be *deemed or construed to be an admission or evidence of any violation of any statute or law* or of any liability or wrongdoing by any Settling Defendant, or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the Coordinated Actions or the Federal Action, and evidence thereof shall not be discoverable or used directly or indirectly in any way, whether in the Coordinated Actions or the Federal Action or in any other action or proceeding. Both the Plaintiffs and each Settling Defendant expressly reserve all of their rights and preserve all *applicable defenses (including but not limited to lack of personal jurisdiction and* improper venue) if this settlement does not become final in accordance with the terms of this Agreement. In the event this settlement is terminated with respect to any Settling Defendant, the Settlement Agreement and all matters leading up to or related to the settlement are confidential settlement communications inadmissible under Federal Rules of Evidence, Rule 408, or California Code of Evidence, Section 1152(a), and any and all other applicable federal and state laws. The provisions of this Paragraph shall survive and continue to apply to each Settling Defendant and Plaintiff, even if the Federal Court does not approve the Settlement, or the Federal Court's approval of this settlement is set aside on appeal, or any Settling Defendant withdraws from the Agreement pursuant to

Paragraph 10 herein. Notwithstanding the foregoing, this Agreement may be used or admitted into evidence against any party as to whom this Agreement is being enforced.

22.    In the event that Plaintiffs or any Settlement Class member who has not excluded herself or himself from the settlement sues any person or entity who is not a named Defendant in these proceedings, based on conduct encompassed within the release set forth in Paragraphs 18 and 19 herein, Plaintiffs will not seek any damages from that person or entity based on any Settling Defendant's sales of Department Store Cosmetic Products during the Class Period, even if that person or entity received revenues from sales of the same products.

23.    In the event that one or more of the Named Defendants in the Coordinated Actions is not a Settling Defendant or otherwise legally bound by this Settlement Agreement upon its execution, or if one or more of the Defendants (following the execution of this Agreement) withdraws from this Agreement under Paragraph 10 herein, then Plaintiffs may, in connection with any further litigation in the Coordinated Actions or Federal Action, seek discovery against any remaining Settling Defendant as a non-party pursuant to Federal Rule of Civil Procedure 45, or other applicable rule concerning non-party discovery, provided however that Plaintiffs may serve such discovery on Settling Defendants' counsel of record or substitute counsel in the Federal Action.

24.    This Settlement Agreement shall be binding upon and inure to the benefit of the successors of the parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement herein by the Plaintiffs and their counsel shall be binding upon all members of the Settlement Class.

25. This Agreement contains the entire, complete and integrated statement of each and every term and provision agreed to by and among the parties, and is not subject to any condition not provided for herein. This Agreement shall not be modified in any respect except by a writing executed by all the signatories hereto.

26. Any inconsistency between this Agreement and the exhibits attached hereto shall be resolved in favor of the Settlement Agreement.

27. None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter thereof.

28. All terms of this Agreement and the exhibits hereto shall be governed by and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

29. Settling Defendants and each member of the Settlement Class hereby irrevocably submit to and agree not to contest the exclusive jurisdiction of the Federal Court and agree that the Northern District of California is a proper venue and convenient forum, for purposes of any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement and/or the exhibits hereto. Without limiting the generality of the foregoing, it is hereby agreed that any dispute concerning the provisions of Paragraphs 18 and/or 19 (including, but not limited to, any suit, action or proceeding by a plaintiff in which the provisions of Paragraphs 18 and/or 19 are asserted as a defense, in whole or in part, to any claim or cause of action or otherwise raised as an objection) constitutes a suit, action or proceeding arising out of or relating to this Settlement

**20**

Agreement and exhibits hereto. In the event the provisions of Paragraphs 18 and/or 19 are asserted by any Settling Defendant as a defense, in whole or in part, to any claim or cause of action or otherwise raised as an objection in any suit, action or proceeding by a Plaintiff who is a member of the Settlement Class, it is hereby agreed that the Settling Defendant who is a party to such suit, action or proceeding shall be entitled to a stay of that suit, action or proceeding until the Federal Court has entered a final judgment no longer subject to any appeal or review determining any issues relating to the defense or objection based on such provisions.

30. This Settlement Agreement may be executed in counterparts. Facsimile signatures shall be considered as valid signatures as of the date hereof, although the original signature pages shall thereafter be appended to this Settlement Agreement.

31. This Settlement Agreement shall become effective, upon its execution by the undersigned, as of July __, 2003.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the

Parties have caused this Agreement to be executed by their officers or representatives

hereunto duly authorized, effective as of the date first above mentioned. In so doing, the

Parties expressly agree to and intend to be legally bound by this Agreement.

FOR PLAINTIFFS:                SAVERI & SAVERI, INC.

By: _____
    Guido Saveri, Esq.
    Chair, Committee of Plaintiffs' Counsel
    111 Pine Street, Suite 1700
    San Francisco, CA 94111

                               LIEFF, CABRASER, HEIMANN
                               & BERNSTEIN, LLP

By: _____
    William Bernstein, Esq.
    Liaison Counsel for the Plaintiffs
    Embarcadero Center West
    275 Battery Street, 30th Floor
    San Francisco, CA 94111

                               LAW OFFICES OF FRANCIS O. SCARPULLA

By: _____
    Francis O. Scarpulla, Esq.
    275 Battery Street, 28th Floor
    San Francisco, CA 94111

                               COOPER & KIRKHAM, P.C.

By: _____
    Josef D. Cooper , Esq.
    655 Montgomery Street, 17th Floor
    San Francisco, CA 94111

IN WITNESS WHEREOF, and intending to be legally bound hereby, the

Parties have caused this Agreement to be executed by their officers or representatives

hereunto duly authorized, effective as of the date first above mentioned.  In so doing, the

Parties expressly agree to and intend to be legally bound by this Agreement.

FOR PLAINTIFFS:                    SAVERI & SAVERI, INC.


By:_____

        Guido Saveri, Esq.
        Chair, Committee of Plaintiffs' Counsel
        111 Pine Street, Suite 1700
        San Francisco, CA  94111


        LIEFF, CABRASER, HEIMANN
        & BERNSTEIN, LLP


By:_____

        William Bernstein, Esq.   Michele C. Jackson, Esq.
        Liaison Counsel for the Plaintiffs
        Embarcadero Center West
        275 Battery Street, 30th Floor
        San Francisco, CA  94111


        LAW OFFICES OF FRANCIS O. SCARPULLA


By:_____

        Francis O. Scarpulla, Esq.
        275 Battery Street, 28th Floor
        San Francisco, CA  94111


        COOPER & KIRKHAM, P.C.


By:_____

        Josef D. Cooper , Esq.
        655 Montgomery Street, 17th Floor
        San Francisco, CA  94111

THE LAW FIRM OF JOSEPH M. ALIOTO

By: _____

Joseph M. Alioto, Esq.
555 California Street, 31st Floor
San Francisco, CA 94104

FOR THE DEFENDANTS:

Boucheron (USA) Ltd.:   Date: _July 15th 2003_

By: _ALAIN DENULY_

_8dr x CEO_

Chanel, Inc.:   Date: _____

By: _____

_____

Christian Dior Perfumes, Inc.:   Date: _____

By: _____

_____

Clarins U.S.A., Inc.:   Date: _____

By: _____

_____

Conopco, Inc.:   Date: _____

By: _____

_____

FOR THE DEFENDANTS:

Boucheron (USA) Ltd.:  Date: _____

By: _____

_____

Chanel, Inc.:  Date: *July 15, 2003*

By: *Jean Hoehn Zimmere*

*JEAN HOEHN ZIMMERMAN*
*Executive Vice President - Marketing & Sales*

Christian Dior Perfumes, Inc.:  Date: _____

By: _____

_____

Clarins U.S.A., Inc.:  Date: _____

By: _____

_____

Conopco, Inc.:  Date: _____

By: _____

_____

FOR THE DEFENDANTS:

Boucheron (USA) Ltd.:        Date: _____

                            By: _____

                            _____


Chanel, Inc.:               Date: _____

                            By: _____

                            _____


Christian Dior Perfumes, Inc.:   Date: _7/5/03_____

                            By: _Dirk Hure_____

                            _Bingham McCutchen LLP_


Clarins U.S.A., Inc.:       Date: _____

                            By: _____

                            _____


Conopco, Inc.:              Date: _____

                            By: _____

                            _____

FOR THE DEFENDANTS:

Boucheron (USA) Ltd.:     Date: _____

                         By: _____

                         _____


Chanel, Inc.:     Date: _____

                  By: _____

                  _____


Christian Dior Perfumes, Inc.:     Date: _____

                                   By: _____

                                   _____


Clarins U.S.A., Inc.:     Date:    July 14, 2003

                          By: _____
                              Marc Rosenblum
                              Vice President, Finance & Operations


Conopco, Inc.:     Date: _____

                   By: _____

                   _____

FOR THE DEFENDANTS:

Boucheron (USA) Ltd.:     Date: _____

                          By: _____

                          _____


Chanel, Inc.:             Date: _____

                          By: _____

                          _____


Christian Dior Perfumes, Inc.:   Date: _____

                          By: _____

                          _____


Clarins U.S.A., Inc.:     Date: _____

                          By: _____

                          _____


Conopco, Inc.:            Date: _JULY 14, 2003_____

                          By: _Sunil Mehta_____

                          _SUNIL MEHTA____

The Estée Lauder Companies Inc.:   Date: _July 16, 2003_

By: _Feelin W. Ye_

_Kaye Scholer LLP_

Guerlain, Inc.:   Date: _____

By: _____

_____

L'Oréal USA, Inc.: (formerly known as Cosmair, Inc.)   Date: _____

By: _____

_____

Parfums Givenchy, Inc.:   Date: _____

By: _____

_____

Dillard's, Inc.:   Date: _____

By: _____

_____

Federated Department Stores, Inc.:   Date: _____

By: _____

_____

The Estée Lauder Companies Inc.:    Date: _____

                                    By: _____

                                    _____


Guerlain, Inc.:    Date: _7/15/03_____

                   By: _Shirley Haun_____

                   _Bigham McCutchen LLP_


L'Oréal USA, Inc.: (formerly known as    Date: _____
Cosmair, Inc.)
                                         By: _____

                                         _____


Parfums Givenchy, Inc.:    Date: _7/15/03_____

                           By: _Shirley Haun_____

                           _Bigham McCutchen LLP_


Dillard's, Inc.:    Date: _____

                    By: _____

                    _____


Federated Department Stores, Inc.:    Date: _____

                                      By: _____

                                      _____

The Estée Lauder Companies Inc.:      Date: _____

                                      By: _____

                                            _____


Guerlain, Inc.:      Date: _____

                     By: _____

                          _____


L'Oréal USA, Inc.: (formerly known as      Date: __July 14, 2003__
                    Cosmair, Inc.)
                                           By: _____~signature~_____

                                               _____


Parfums Givenchy, Inc.:      Date: _____

                             By: _____

                                 _____


Dillard's, Inc.:      Date: _____

                      By: _____

                          _____


Federated Department Stores, Inc.:      Date: _____

                                        By: _____

                                            _____

The Estée Lauder Companies Inc.:   Date: _____

                                   By: _____

                                   _____


Guerlain, Inc.:   Date: _____

                  By: _____

                  _____


L'Oréal USA, Inc.: (formerly known as   Date: _____
Cosmair, Inc.)
                                        By: _____

                                        _____


Parfums Givenchy, Inc.:   Date: _____

                          By: _____

                          _____


Dillard's, Inc.:   Date: July 16, 2003

                   By: _____

                   Paul J. Schroeder, Jr.
                   Vice President and General Counsel


Federated Department Stores, Inc.:   Date: _____

                                     By: _____

                                     _____


JACRS 047.DOC                          25

The Estée Lauder Companies Inc.:     Date: _____

                                     By: _____

                                     _____


Guerlain, Inc.:                      Date: _____

                                     By: _____

                                     _____


L'Oréal USA, Inc.: (formerly known as     Date: _____
Cosmair, Inc.)
                                     By: _____

                                     _____


Parfums Givenchy, Inc.:              Date: _____

                                     By: _____

                                     _____


Dillard's, Inc.:                     Date: _____

                                     By: _____

                                     _____


Federated Department Stores, Inc.:   Date: _July 14, 2003_____

                                     By: _~~~~~~~~~~_ (P.A. PROGER)

                                     _Legal Counsel_

Gottschalks Inc.:                   Date: _7/15/02_____

                                    By: _____

                                    _PRESIDENT & CEO_

The May Department Stores Company:  Date: _____

                                    By: _____

                                    _____

The Neiman Marcus Group, Inc.:      Date: _____

                                    By: _____

                                    _____

Nordstrom, Inc.:                    Date: _____

                                    By: _____

                                    _____

Saks Incorporated:                  Date: _____

                                    By: _____

                                    _____

Target Corporation:                 Date: _____

                                    By: _____

                                    _____

Gottschalks Inc.:   Date: _____

By: _____

_____


The May Department Stores Company:   Date: _July 15, 2003_

By: _Alan Cluck_

**Senior Vice President
and General Counsel**


The Neiman Marcus Group, Inc.:   Date: _____

By: _____

_____


Nordstrom, Inc.:   Date: _____

By: _____

_____


Saks Incorporated:   Date: _____

By: _____

_____


Target Corporation:   Date: _____

By: _____

_____

| | |
|---|---|
| Gottschalks Inc.: | Date: _____ |
| | By: _____ |
| | _____ |
| The May Department Stores Company: | Date: _____ |
| | By: _____ |
| | _____ |
| The Neiman Marcus Group, Inc.: | Date: 7-15-03 |
| | By: _Nelson A. Bangs_ |
| Nordstrom, Inc.: | Date: _____ |
| | By: _____ |
| | _____ |
| Saks Incorporated: | Date: _____ |
| | By: _____ |
| | _____ |
| Target Corporation: | Date: _____ |
| | By: _____ |
| | _____ |

Gottschalks Inc.:          Date: _____

                           By: _____

                               _____


The May Department Stores Company:    Date: _____

                           By: _____

                               _____


The Neiman Marcus Group, Inc.:    Date: _____

                           By: _____

                               _____


Nordstrom, Inc.:           Date: 7/15/03

                           By: _Debi Cannon_ _vid_

                               Executive Vice President cosmetics


Saks Incorporated:         Date: _____

                           By: _____

                               _____


Target Corporation:        Date: _____

                           By: _____

                               _____

Gottschalks Inc.:          Date: _____

                          By: _____

                          _____


The May Department Stores Company:   Date: _____

                          By: _____

                          _____


The Neiman Marcus Group, Inc.:   Date: _____

                          By: _____

                          _____


Nordstrom, Inc.:          Date: _____

                          By: _____

                          _____


Saks Incorporated:        Date: _July 15, 2003_

                          By: _____

                          Brian Martin


Target Corporation:       Date: _____

                          By: _____

                          _____

Gottschalks Inc.:     Date: _____

                      By: _____

                      _____


The May Department Stores Company:     Date: _____

                      By: _____

                      _____


The Neiman Marcus Group, Inc.:     Date: _____

                      By: _____

                      _____


Nordstrom, Inc.:     Date: _____

                      By: _____

                      _____


Saks Incorporated:     Date: _____

                      By: _____

                      _____


Target Corporation:     Date: _7-15-03_____

                      By: _Carlos A. Martin_____

                      _____

EXHIBIT A

1  GUIDO SAVERI (22349)
   R. ALEXANDER SAVERI (173102)
2  LISA SAVERI (112043)
   SAVERI & SAVERI, INC.
3  111 Pine Street, Suite 1700
   San Francisco, California 94111-5619
4  Telephone (415) 217-6810
   Facsimile (415) 217-6813
5
   Chair, Committee of Plaintiffs' Counsel
6
   [Additional Counsel Appear on Signature Page]
7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10  FATEMAH AZIZIAN, SORAYA FARRAH, | CIVIL NO. |
| EUNICE FEY, ROSE GONZALES, KAZUKO | |
| 11  Y. MORGAN, NICOLA NELSON-TORRES, | **CLASS ACTION** |
| MONIQUE PATRICK, JUDITH POGRAN, | |
| 12  PAMELA POWELL, SHIRLEY POWELL, and | |
| ROSE SKILLMAN, on behalf of themselves and | **COUNT I** |
| 13  all other similarly situated, | |
| 14              Plaintiffs, | **COMPLAINT FOR VIOLATIONS** |
| | **OF THE SHERMAN ACT** |
| 15              v. | |
| 16  FEDERATED DEPARTMENT STORES, INC.; | **COUNTS II AND III** |
| THE NEIMAN-MARCUS GROUP, INC.; | |
| 17  NORDSTROM, INC.; THE MAY | |
| DEPARTMENT STORES COMPANY; SAKS | **COMPLAINTS FOR (1) RESTRAINT** |
| 18  INCORPORATED; GOTTCHALKS INC.; | **OF TRADE AND (2) UNFAIR** |
| TARGET CORPORATION; DILLARD'S, INC.; | **COMPETITION** |
| 19  CLARINS U.S.A., INC.; ESTÉE LAUDER | |
| COMPANIES INC.; L'ORÉAL USA, INC.; | |
| 20  CONOPCO, INC.; CHRISTIAN DIOR | |
| PERFUMES, INC.; GUERLAIN, INC.; | **JURY TRIAL DEMANDED ALL** |
| 21  PARFUMS GIVENCHY, INC.; CHANEL, INC.; | **COURSES OF ACTION** |
| BOUCHERON (USA) LTD., | |
| 22 | |
| 23              Defendants. | |

Plaintiffs, FATEMAH AZIZIAN, SORAYA FARRAH, EUNICE FEY, ROSE GONZALES, KAZUKO Y. MORGAN, NICOLA NELSON-TORRES, JUDITH POGRAN, SHIRLEY POWELL, MONIQUE PATRICK, PAMELA POWELL and ROSE SKILLMAN, on behalf of themselves and all others similarly situated, bring this action against the above-named defendants and allege on information and belief as follows:

## JURISDICTION AND VENUE

1. Plaintiffs bring this action under Section 4 and Section 16 of the Clayton Act, (15 U.S.C. §§ 15 and 16) to recover damages and to obtain injunctive relief as allowed by law, costs of suit and reasonable attorneys' fees for defendants' violations of the federal antitrust laws, including Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

2. This Court has jurisdiction over this action pursuant to Sections 4(a) and 16 of the Clayton Act and 28 U.S.C. §§ 1331 and 1137.

3. Venue is proper in this district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391.

4. Defendants transact business and are found within the Northern District of California. The interstate trade and commerce described herein is and has been carried out, in part, within the Northern District of California, and many of the unlawful acts done in violation of the Sherman Act have occurred within the Northern District of California.

## DEFINITIONS

5. As used in this Complaint, the following definitions shall apply:

   a. "Department Store Cosmetic Products" means the full range of high-end, "prestige" or specialty beauty and cosmetic products and product lines (whether new, established or discontinued), including, but not limited to, color products, treatments and fragrances which are manufactured and/or sold by the Manufacturer Defendants (as that term is defined below) or Department Store Defendants (as that term is defined below) under various brand names. Department Store Cosmetic Products are sold primarily through Retail Stores (as that term is defined below), including

such stores owned or operated by the Department Store Defendants, who, in turn, sell such products to the Plaintiffs and members of the Class. The term "Department Store Cosmetics" excludes product lines sold principally through mass distribution channels.

b.  "Department Store Defendants" means Federated Department Stores, Inc.; The Neiman-Marcus Group, Inc.; Nordstrom, Inc.; The May Department Stores Company; Saks Incorporated; Gottchalks, Inc.; Target Corporation; and Dillard's, Inc; each of which purchases Department Store Cosmetics from one or more Manufacturers, including the Manufacturer Defendants, and, in turn, resell such cosmetics to retail customers such as the Plaintiffs.

c.  "Retail Store" means each company, including but not limited to the Department Store Defendants, which sells Department Store Cosmetics to retail customers such as the Plaintiffs.

d.  "Manufacturer Defendants" means The Estée Lauder Companies Inc.; L'Oréal USA, Inc.; Conopco, Inc.; Christian Dior Perfumes, Inc.; Guerlain, Inc.; Parfums Givenchy, Inc.; Chanel, Inc.; Boucheron (USA) Ltd.; and Clarins U.S.A., Inc. -- each of which manufacturers or sells Department Store Cosmetics to Retail Stores, including the Department Store Defendants, who, in turn, resell such cosmetics to retail customers such as the Plaintiffs.

e.  "Manufacturer" means each company, including but not limited to the Manufacturer Defendants, which manufactures and/or sells Department Store Cosmetics to Retail Stores, including the Department Store Defendants, which, in turn, resell such cosmetics to retail customers such as the Plaintiffs.

f.  "Manufacturer's Suggested Retail Price" (or "MSRP") means the price that a Manufacturer suggests, at any given time, to a Retail Store, as the

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ACT

1  price at which that Retail Store resells the Manufacturer's Products to
2  retail customers such as the Plaintiffs.

3  g.  "Resale Price" means the price at which Department Store Cosmetics are
4  sold to retail customers such as the Plaintiffs, whether or not the price is
5  the same as the MSRP.

## THE PARTIES

### The Individual and Representative Plaintiffs

6.  The Individual and Representative Plaintiffs are: FATEMAH AZIZIAN, SORAYA FARRAH, EUNICE FEY, ROSE GONZALES, KAZUKO Y. MORGAN, NICOLA NELSON-TORRES, MONIQUE PATRICK, JUDITH POGRAN, PAMELA POWELL, SHIRLEY POWELL, and ROSE SKILLMAN. During the Class Period, each Individual and Representative Plaintiff purchased Department Store Cosmetics, manufactured or sold by one or more of the Manufacturer Defendants, from one or more of the Department Store Defendants for her personal use and not for resale.

### The Department-Store Defendants

7.  Defendant FEDERATED DEPARTMENT STORES, INC. ("FEDERATED") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Cincinnati, Ohio. It is a corporation engaged in the retail department store business through divisions that include, but are not limited to Macy's West and Bloomingdale's, which purchase Department Store Cosmetics from the Manufacturer Defendants and others and resell those cosmetics at retail to plaintiffs and members of the plaintiff class.

8.  Defendant THE NEIMAN-MARCUS GROUP, INC. ("NEIMAN-MARCUS") is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Houston, Texas. NEIMAN-MARCUS is engaged in the retail department store business. NEIMAN-MARCUS purchases Department Store Cosmetics from the Manufacturer Defendants and others and resells those cosmetics at retail to plaintiffs and members of the plaintiff class.

9.  Defendant NORDSTROM, INC. ("NORDSTROM") is a corporation organized

and existing under the laws of the State of Washington, with its principal place of business in Seattle, Washington. NORDSTROM is engaged in the retail department store business. NORDSTROM purchases Department Store Cosmetics from the Manufacturer Defendants and others and resells those cosmetics at retail to plaintiffs and members of the plaintiff class.

10. Defendant THE MAY DEPARTMENT STORES COMPANY ("MAY") is a corporation organized and existing under the laws of the State of New York, with its principal place of business in St. Louis, Missouri. MAY is engaged in the retail department store business through its divisions Lord & Taylor and Robinson's May. MAY purchases Department Store Cosmetics from the Manufacturer Defendants and others and resells those cosmetics at retail to plaintiffs and members of the plaintiff class.

11. Defendant SAKS INCORPORATED ("SAKS") is a corporation organized and existing under the laws of the State of Tennessee, with its principal place of business in Birmingham, Alabama. SAKS and various of its subsidiaries or affiliates are engaged in the retail department store business. SAKS and various of its subsidiaries or affiliates purchase Department Store Cosmetics from the Manufacturer Defendants and others and resell those cosmetics at retail to plaintiffs and members of the plaintiff class..

12. Defendant GOTTSCHALKS INC. ("GOTTSCHALKS") is a corporation organized and existing under the laws of the State of California, with its principal place of business in Fresno, California. GOTTSCHALKS is engaged in the retail department store business. GOTTSCHALKS purchases Department Store Cosmetics from the Manufacturer Defendants and others and resells those cosmetics at retail to plaintiffs and members of the plaintiff class.

13. Defendant TARGET CORPORATION ("TARGET") is a corporation organized and existing under the laws of the State of Minnesota, with its principal place of business in Minneapolis, Minnesota. TARGET is engaged in the retail department store business. TARGET purchases Department Store Cosmetics from the Manufacturer Defendants and others and resells those cosmetics at retail to plaintiffs and members of the plaintiff class.

14. Defendant DILLARD'S, INC. ("DILLARD'S") is a corporation organized and

existing under the laws of the State of Delaware, with its principal place of business in the State of Arkansas. DILLARD'S and its wholly owned or controlled subsidiaries are engaged in the retail department store business. DILLARD'S purchases Department Store Cosmetics from the Manufacturer Defendants and others and resells those cosmetics at retail to plaintiffs and members of the plaintiff class.

## The Manufacturer Defendants

15.     Defendant THE ESTÉE LAUDER COMPANIES, INC. ("LAUDER") is a corporation organized and existing under the laws of the State of Delaware.

16.     LAUDER, founded in 1946, is one of the world's leading manufacturers and marketers of Department Store Cosmetics, including skin care, makeup, fragrance and hair care products. The major trademarks and brand names used in LAUDER's business include Estée Lauder, Clinique, Aramis, Prescriptives, Origins, Tommy Hilfiger, Donna Karan New York, M.A.C. and Bobby Brown Essentials.

17.     On information and belief, defendant FEDERATED accounted for nearly 12% of LAUDER's net sales, and Defendant MAY accounted for 10% of LAUDER's net sales during certain years.

18.     Defendant L'ORÉAL USA, INC. ("L'ORÉAL ") formerly known as COSMAIR, INC., is a corporation organized and existing under the laws of the State of Delaware. L'ORÉAL is a wholly owned subsidiary of The Groupe L'Oréal, SA, a French Corporation. L'ORÉAL manufactures Department Store Cosmetics. L'ORÉAL  manufactures or distributes other Department Store Cosmetics brands such as Lancôme (makeup and skin care), Biotherm (skin care), as well as the Ralph Lauren and Giorgio Armani brand fragrances.

19.     Defendant CONOPCO, INC. ("CONOPCO") is a corporation organized and existing under the laws of the State of New York.

20.     CONOPCO manufactures or manufactured Department Store Cosmetics, including the following brand names: (a) Calvin Klein Cosmetics: CK One, CK BE, Escape, Eternity and Obsession, Calvin Klein Color; (b) Cerrutti: Cerrutti 1881; (c) Chloe: Chloe and Narcisse; (d) Elizabeth Arden: 5th Avenue, Blue Grass, Red Door, Sunflowers and True Love;

(e) Elizabeth Taylor: Black Pearls, Elizabeth Taylor Passion, and White Diamonds; (f) Jean Louis Scherrer: Indian Night/Nuits Indienness; (g) Karl Lagerfeld: KL, Lagerfeld, Lagerfeld Classic, Sun Moon Stars, and (h) Valentino: Vendetta.

21.    Defendant CHRISTIAN DIOR PERFUMES, INC. ("DIOR-US"), is a corporation organized and existing under the laws of the State of New York. DIOR-US is a wholly-owned subsidiary of Christian Dior Parfums SA, ("Dior France"), a French corporation located in France. DIOR-US distributes products manufactured by Dior France in the United States.

22.    Defendant GUERLAIN, INC is a corporation organized and existing under the laws of the State of New York. GUERLAIN, INC is a wholly-owned subsidiary of Guerlain, SA, a French corporation, which manufactures the product GUERLAIN, INC. distributed in the United States.

23.    Defendant PARFUMS GIVENCHY, INC. is a corporation organized and existing under the laws of the State of New York. PARFUMS GIVENCHY, INC. is owned by Parfums Givenchy, SA (68%) and LVMH Fashion Group, SA (32%), both of which are French corporations.

24.    The three defendants named in the above three paragraphs distribute Department Store Cosmetics throughout the United States. For example, DIOR US distributes perfumes and haute couture products under the following brand names: Capture; Dior Make-Up Products: Dior Essence fragrances, Diorissimo fragrances, Eau Savage fragrances, Equite cleansers, Fahrenheit fragrances, Hydra Dior skin care products, Icone skin care products, Miss Dior fragrances, Poison fragrances and Resultante skin care products.

25.    *Defendant CHANEL, INC. ("CHANEL") is a corporation organized and existing under the laws of the State of New York. CHANEL is engaged in the manufacture and marketing of Department Store Cosmetics, including under the following brand names: Anateus Pour Homme, Chanel Beaute, Chanel No. 5 perfume, Chanel No. 19 perfume, Chanel No. 22 perfume, Coco Perfume, Cristalle perfume, Egoiste fragrance and Pour Monsieur fragrance. CHANEL is a wholly owned subsidiary of the French corporation Chanel France, located in France. Chanel

France is owned by Chanel International BV, located at Boerhaaven 22, Zoetermeer, Zuid-Holland, The Netherlands 2713 HX.

26. Defendant BOUCHERON (USA) LTD. ("BOUCHERON") is a corporation organized and existing under the laws of the State of New York. BOUCHERON manufactures and distributes Department Store Cosmetics, including Boucheron perfume.

27. Defendant CLARINS U.S.A., INC. ("CLARINS") is a corporation organized and existing under the laws of the State of New York. CLARINS distributes and markets Department Store Cosmetics.

<u>Co-Conspirators</u>

28. Various others, presently unknown to plaintiffs, participated as co-conspirators with the defendants in the violations of law alleged in this Complaint and have engaged in conduct and made statements in furtherance thereof.

<u>CLASS ACTION ALLEGATIONS</u>

29. Plaintiffs bring this action pursuant to Rules 23(a) and b(3) of the Federal Rules of Civil Procedure on behalf of themselves and the following Class ("the Class"):

> All persons who currently reside in the United States and who purchased Department Store Cosmetic Products in the United States, which products were manufactured and/or sold by the Manufacturer Defendants or Department Store Defendants, at any time during the period May 29, 1994 through June 1, 2003 (the "Class Period"). Excluded from this Settlement Class are all employees, officers, directors or agents (including attorneys) of any defendant, as well as any judge, justice or judicial officer presiding over this matter, and each such person's immediate family.

30. This action has been brought and may be properly maintained as a class action because:

(a) The Class is ascertainable and there is a well-defined community of interest among the members of the Class;

(b) Based upon the nature of the trade and commerce involved and the number of retail purchasers of Department Store Cosmetics, plaintiffs believe that the members of the Class number in the millions, and, therefore, joinder of all class members of the Class is not practicable;

(c) Plaintiffs' claims are typical of the claims of those of the members of the Class

<hr>

8

because plaintiffs purchased Department Store Cosmetics from one or more of the Department Store Defendants, manufactured by one or more of the Manufacturer Defendants and their co-conspirators, and therefore plaintiffs' claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class;

(d) The following common questions of law or fact, among others, exist as to the members of the Class:

(i)     whether defendants combined and conspired to fix, raise, maintain or stabilize the prices of Department Store Cosmetics;

(ii)    whether said combination and conspiracy was implemented;

(iii)   the operative time period of the combination and conspiracy;

(iv)    whether the combination and conspiracy is continuing in nature;

(v)     whether defendants' conduct violates Section 1 of the Sherman Act; and

(vi)    whether defendants' conduct caused injury to the business or property of plaintiffs and the members of the Class.

(e)     Questions of law or fact, which are common to the members of the Class, predominate over any questions affecting only individual members of the Class;

(f)     Plaintiffs will fairly and adequately protect the interests of the Class in that plaintiffs have no interests that are antagonistic to other members of the Class, and they have retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent themselves and the Class;

(g)     A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all damaged Class members is impractical. The damages suffered by individual Class members are relatively small in relation to the expense and burden of individual prosecution of the claims asserted in this litigation. Thus, absent the availability of class action procedures, it would not be feasible for Class members to redress the wrongs done to them. Even if the Class members could afford individual litigation, the court system could not. Further, individual litigation presents the potential for

1 inconsistent or contradictory judgments and would greatly magnify the delay and expense to all
2 parties and to the court system and, therefore, the class action device presents far fewer case
3 management difficulties and will provide the benefits of unitary adjudication, economy of scale
4 and comprehensive supervision by a single court; and

5 (h) In the absence of a class action, defendants would be unjustly enriched because
6 they would be able to retain the benefits and fruits of their wrongful conduct.

## TRADE AND COMMERCE

8 31. During the time period covered by this Complaint, various Manufacturers,
9 including each of the named Manufacturer Defendants, sold and shipped substantial quantities of
10 Department Store Cosmetics in a continuous and uninterrupted flow of interstate commerce to
11 Retail Department Stores, including each of the Department Store Defendants, located in states
12 other than the states in which the Manufacturers are located. The Retail Department Stores, in
13 turn, resold the Department Store Cosmetics to consumers in the United States.

14 32. The business activities of the various Manufacturers, including each of the named
15 Manufacturer Defendants, and the Retail Department Stores, including each of the Department
16 Store Defendants, that are the subject of this Complaint were within the flow of and substantially
17 affected interstate trade and commerce.

## THE COSMETICS INDUSTRY

19 33. Department Store Cosmetics' counters generally feature only one cosmetic
20 Manufacturer's lines per counter. By way of example, the Lauder counter may display "Estée
21 Lauder ," "Clinique" or "Origins" brands, among others, but these are all Lauder-owned brands.
22 Cosmetics counters are located in areas of the Retail Department Stores where customer traffic is
23 heavy -- usually the main floor of the Retail Department Stores and generally near the main
24 entrance, which is the most visible and therefore the most valuable location in any department
25 store.

26 34. The Department Store Defendants purchase Department Store Cosmetics for
27 resale and take title to such goods upon receipt thereof. The Manufacturer Defendants pay for
28 store counters, in-store displays, demonstrations and other advertising, as well as up to 135% of

the salaries of cosmetic-counter salespeople, all in return for the Department Store Defendants' agreement to sell at MSRP. The Manufacturer Defendants further guarantee the Department Store Defendants a gross margin equal to 40% of the retail price of the Department Store Cosmetics and the Manufacturer Defendants buy back any unsold Department Store Cosmetics, thus guaranteeing that there will never be any mark-downs of Department Store Cosmetics. Therefore, the Department Store Defendants have none of the usual risks attendant to retail sales unless they deviate from the MSRP.

35.     Defendants' conduct with respect to the pricing of Department Store Cosmetics reveals that they do not compete on the basis of price with respect to the retail sale of Department Store Cosmetics. Department Store Cosmetics never go on sale. Even though cosmetics are extensively advertised by the defendants, discount prices are never advertised or offered.

36.     Defendants do not compete on the basis of price or discounts in the retail sale of Department Store Cosmetics and have engaged and continue to engage in acts and practices to prevent price competition in the retail sale of Department Store Cosmetics.

## VIOLATIONS ALLEGED

37.     Beginning at a time presently unknown to plaintiffs, and continuing thereafter up to and including the date of the filing of this Complaint, the defendants and their co-conspirators entered into and engaged in a continuing contract, combination or conspiracy in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

38.     The contract, combination or conspiracy consisted of a continuing agreement, understanding and concert of action among the defendants and their co-conspirators, the substantial terms of which were to fix, raise, and stabilize the prices of Department Store Cosmetics and to limit the supply of Department Store Cosmetics.

39.     For the purpose of forming and effectuating their continuing contract, combination or conspiracy, the defendants and their co-conspirators did those things which they contracted, combined or conspired to do, including but in no way limited to the acts, practices

and course of conduct set forth above and the following:

(a) To fix, establish, control or maintain the Resale Price at which any Retail Store may advertise, promote, offer for sale or sell any Department Store Cosmetic Products;

(b) To require, coerce, or otherwise pressure only Retail Stores to maintain, adopt or adhere to any resale price for any Department Store Cosmetic Products;

(c) To secure or attempt to secure any commitment or assurance from any Retail Store concerning the resale price at which the Retail Store may advertise, promote, offer for sale or sell any Department Store Cosmetic Products;

(d) To limit the amount of Products that any Retail Store may purchase at one time or in any single order from any Manufacturer;

(e) To limit the number or dollar amount of Department Store Cosmetic Products that may be purchased from any Retail Store at one time by any single retail customer;

(f) To establish, in connection with any gift-with-purchase, purchase with-purchase or similar promotion of Department Store Cosmetic Products (collectively "Promotion"), the "qualifying amount," *i.e.*, the amount which the retail customer pays in order to receive the benefit (*e.g.*, the gift or additional purchase) associated with the Promotion;

(g) To limit the number of Department Store Cosmetic Products that may be given or sold by a Retail Store to any single retail customer in connection with a Promotion, regardless of whether the customer has paid in excess of the qualifying amount;

(h) To prohibit any Retail Store from advertising any Manufacturer's Products at a price other than MSRP;

(i) To prohibit a Promotion of a Manufacturer on the same date(s) as a

Promotion by that same Manufacturer at another Retail Store;

    (j)    To prohibit a Promotion of one Manufacturer on the same date(s) another Manufacturer is having a Promotion at another Retail Store;

    (k)    To prohibit a Promotion of one Manufacturer on the same date(s) another Manufacturer is having a Promotion at the same Retail Store.

## EFFECTS

40.    The contract, combination or conspiracy had the following effects, among others:

    (a)    Retail prices charged by defendants and their co-conspirators for Department Store Cosmetics were fixed, raised, maintained or stabilized at artificially high and supra-competitive levels; and

    (b)    Competition for the sale of Department Store Cosmetics in the United States was unreasonably restrained.

## DAMAGES

41.    As a direct and proximate result of defendants' unlawful conduct, plaintiffs and the members of the class have been injured in their business and property in that they paid more for Department Store Cosmetics than they otherwise would have paid in the absence of defendants' unlawful conduct. *In addition, the illegal conduct alleged herein is continuing and, unless restrained, defendants will continue to engage in such conduct.*

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand judgment against defendants as follows:

42.    Declaring this action to be certified and approved as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class as defined herein;

43.    That the unlawful combination and conspiracy alleged herein be adjudged and decreed to be an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1);

44.    That plaintiffs and the Class recover damages, as provided by law, and that joint and several judgment in favor of plaintiffs and the Class be entered against defendants and each of them in an amount to be trebled in accordance with the antitrust laws;

1  45.    That plaintiffs and the Class recover their costs of this suit, including reasonable

2  attorneys' fees, as provided by law;

3  46.    That plaintiffs be entitled to prejudgment interest pursuant to section 4 (a) of the

4  Clayton Act;

5  47.    That each of the defendants, co-conspirators, successors, assigns, parents,

6  subsidiaries, affiliates and transferees, and their respective officers, directors, agents and

7  employees, and all other persons acting or claiming to act on behalf of defendants or in concert

8  with them, be permanently enjoined and restrained from, in any manner, directly or indirectly,

9  continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding or

10  concert of action, or adopting or following any practice, plan, program or design having similar

11  purpose or effect in restraining competition; and

12  48.    That plaintiffs and the Class be granted such other and further relief as the nature

13  of the case may require or as may seem just and proper to this Court.

## JURY TRIAL DEMANDED

15  Plaintiffs demand a trial by jury of all issues so triable in this case.

## COUNTS II AND III

17  Pursuant to the Supplemental Jurisdiction of this Court under 28 U.S.C. §1367, plaintiffs

18  above-named bring the following causes of action:

## JURISDICTION AND VENUE

20  49.    Plaintiffs bring this action pursuant to Section 16750(a) of the California

21  Business and Professions Code, to recover treble the damages that plaintiffs and the members of

22  the class, as defined, have sustained due to violations by the named defendants and their

23  co-conspirators of Section 16720 of the California Business and Professions Code (the

24  "Cartwright Act"). Plaintiffs' claims also are brought pursuant to Sections 17203 and 17204,

25  California Business and Professions Code, to obtain restitution from the defendants due to their

26  violations of Section 17200 of the California Business and Professions Code (the "Unfair

27  Competition Act").

28  50.    Venue as to each defendant is proper in this judicial district pursuant to the

provisions of Sections 16750(a) and 17203 of the Business and Professions Code and Sections 395(a) and 395.5 of the California Code of Civil Procedure. Each defendant either maintains an office, transacts business, has an agent or is found in the various counties set forth in the Complaint. Plaintiffs' causes of action arose in part within the various counties alleged and each defendant is subject to the jurisdiction of this Court. The unlawful conduct undertaken pursuant to the combination or conspiracy alleged has a direct effect on consumers within the State of California including the various counties alleged, and the trade and commerce described below is carried on within the State of California, as well as within those counties alleged.

51. Both causes of action are brought and may be properly maintained as a class action pursuant to Section 382 of the California Code of Civil Procedure.

## COUNT II

### (For Violations of the Cartwright Act)

52. Plaintiffs incorporate by reference paragraphs 5 through 48 of the First Count of this Complaint, as though fully set forth at length in this paragraph.

53. Beginning at a time presently unknown to plaintiffs and continuing thereafter up to and including the date of the filing of this Complaint, defendants and co-conspirators entered into and engaged in a continuing, unlawful trust in restraint of the trade and commerce in violation of Section 16720, California Business and Professional Code. Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize and maintain prices of Department Store Cosmetics at supra-competitive levels.

54. As a direct and proximate result of defendants' unlawful conduct, plaintiffs and the members of the class have been injured in their business and property in that they paid more for Department Store Cosmetics than they otherwise would have paid in the absence of defendants' unlawful conduct. In addition, the illegal conduct alleged herein is continuing and, unless restrained, defendants will continue to engage in such conduct. As a result of defendants' violation of Section 16720 of the California Business and Professions Code, plaintiffs seek treble damages, equitable relief and costs of suit, including reasonable attorney fees, pursuant to 16750(a) of the California Business and Professions Code and such similar laws.

## COUNT III

### (For Violations of the Unfair Competition Act)

55.     Plaintiffs incorporate by reference paragraphs 5 through 48 of the First Count of this Complaint, as though fully set forth at length in this paragraph.

56.     Beginning on a date unknown to plaintiffs, defendants committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code.

57.     This Complaint is filed and these proceedings are instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Act and such similar laws.

58.     The defendants' conduct as alleged herein violates Section 17200. The acts, omissions, misrepresentations, practices, and non-disclosures of defendants, as alleged herein, constituted and constitute a common continuous and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but in no way limited to, the following:

(a)     The violations of Section 16720, *et seq.* of the California Business and Professions Code, set forth above;

(b)     Defendants' acts, omissions, misrepresentations, practices and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.* of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(c)     Violation of Section 5 of the Federal Trade Commission Act (15 U.S.C.§ 45(a));

(d)     Defendants' acts and practices are unfair to consumers in the State of

California and other states and territories within the meaning of Section 17200, California Business and Professional Code; and

(c)     Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

59.     Plaintiffs and the Plaintiff Class are entitled to equitable and injunctive relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by defendants as a result of such business acts or practices and enjoining defendants to cease and desist from engaging in the practices described herein.

60.     The illegal conduct alleged herein is continuing and there is no indication that defendants will not continue such activity into the future.

61.     The unlawful and unfair business practices of defendants, and each of them, as described above, have injured and present a continuing threat of injury to members of the public in that defendants' conduct has restrained and continues to restrain competition, has caused and continues to cause plaintiffs and the members of the Class they represent to pay supra- competitive and artificially-inflated prices for Department Store Cosmetics, and has made it likely that members of the public have been and will continue to be deceived with respect to the manner in which the prices charged for Department Store Cosmetics have been set.

62.     The conduct of defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

63.     As alleged in this Complaint, defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by defendants' unfair competition. Plaintiffs and the members of the Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

64.     The illegal conduct alleged herein is continuing and, unless restrained,

defendants will continue to engage in such conduct.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, on behalf of themselves and the members of the Class, pray for judgment against defendants, jointly and severally, as follows:

65. Determining that this action may proceed and be maintained as a class action;

66. On the second count:

    (a)    For damages according to proof at trial, and that such amount be trebled;

    (b)    For reasonable attorneys' fees pursuant to Section 16750(a) of the California Business and Professions Code;

    (c)    For prejudgment interest at the highest legal rate, from and after the date of service of the initial Complaint in this action.

67. On the third count:

    Ordering defendants, and each of them, their agents and employees, and all persons acting, directly or indirectly, in concert with them, to restore all funds to each member of the class acquired by means of any act or practice declared by this Court to be unlawful or to constitute unfair competition under Sections 17200, *et seq.* of the California Business and Professions Code;

68. For costs of suit;

69. For such other and further relief as the Court may deem just and proper.

Dated: July __, 2003.

        GUIDO SAVERI (22349)
        R. ALEXANDER SAVERI (173102)
        LISA SAVERI (112043)
        SAVERI & SAVERI, INC.
        111 Pine Street, Suite 1700
        San Francisco, California 94111-5619
        Telephone: (415) 217-6810

WILLIAM BERNSTEIN (65200)
JOSEPH R. SAVERI (130064)
MICHAEL W. SOBOL (194857)
MICHELE C. JACKSON (90807)
LIEFF, CABRASER, HEIMANN & BERNSTEIN
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

FRANCIS O. SCARPULLA (41059)
LAW OFFICES OF FRANCIS O. SCARPULLA
Embarcadero Center West
275 Battery Street, 28th
San Francisco, CA 94111
Telephone: (415) 788-7210

JOSEF D. COOPER (53015)
COOPER & KIRKHAM, P.C.
655 Montgomery, 17th Floor
San Francisco, CA 94111
Telephone: (415) 788-3030

JOSEPH M. ALIOTO (42680)
THERESA MOORE (99978)
ANGELINA GRACE (206899)
THE LAW FIRM OF JOSEPH M. ALIOTO
555 California, 31st Flooor
San Francisco, CA 94104
Telephone: (415) 434-8900

DANIEL J. MOGIN (95624)
THE MOGIN LAW FIRM, P.C.
110 Juniper Street
San Diego, CA 92101-1502
Telephone: (619) 687-6611

J. GARRETT KENDRICK (61698)
KENDRICK & NUTLEY
468 North Camden Drive, Suite 200
Beverly Hills, CA 90210
Telephone: (310)858-5571

TERRY GROSS (103878)
GROSS & BELSKY
180 Montgomery Street, Suite 2200
San Francisco, CA 94111
Telephone: (415) 544-0200

W. TIMOTHY NEEDHAM (95642)
JANSSEN, MALLOY, NEEDHAM,
MORRISON & KOSHKIN
730 Fifth Street, Post Office Drawer 1288
Eureka, CA 95502
Telephone: (707) 445-2071

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ACT

GRETCHEN M. NELSON (112566)
LAW OFFICES OF GRETCHEN M. NELSON
707 Wilshire Boulevard, Suite 5000
Los Angeles, CA 90017
Telephone: (213) 622-6469

ROBERT DISKINT
CRITCHLOW & DISKINT
938 B Street
San Rafael, CA 94901
Telephone: (415) 721-7900

MICHAEL J., FLANNERY
THE DAVID DANIS LAW FIRM, PC
8235 Forsyth Boulevard, Suite 1100
St. Louis, MO 63105
Telephone: (314) 725-7700

JOHN H. BOONE
555 California, 31st Flooor
San Francisco, CA 94104
Telephone: (415) 434-1133

SUSAN TAYLOR
MILBERG, WEISS, BERSHAD,
HYNES & LERACH, L.L.P.
600 West Broadway
1800 One America Plaza
San Diego, CA 92101-3356
Telephone :(619) 231 - 1058

CRAIG C. CORBITT (83250)
ZELLE, HOFMANN, VOELBEL
MASON & GETTE, LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700

JOHN L. BURRIS (69888)
LAW OFFICES OF JOHN L. BURRIS
7677 Oakport, Suite 1120
Oakland, CA 94612
Telephone: (510) 839-5200

BEN FURTH
THE FURTH FIRM
201 Sansome Street, Suite 1000
San Francisco, CA 94104
Telephone: (415) 433-2070

ALAN R. PLUTZIK (77785)
BRAMSON, PLUTZIK, MAHLER &
BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0200

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ACT

JOHN W. ALLURED (84770)
LAW OFFICES OF JOHN W. ALLURED
One Maritime Plaza, Suite 1040
San Francisco, California 94111
Telephone: (415) 675-2960


By: _____
Guido Saveri
Chair, Committee of Plaintiffs' Counsel

cosmetics.099.wpd

EXHIBIT B

## Stipulated Order

It is hereby stipulated and agreed, by and between the named plaintiffs and the class they represent (collectively "Plaintiffs") and each of the undersigned Defendants as follows:

## I.     General Terms and Conditions

A.     This stipulation and agreement ("Stipulated Order" or "Order") is for settlement purposes only, and does not and shall not constitute an admission by any of the undersigned Defendants that they have engaged in any of the activities prohibited or described below, or that any laws have been violated as alleged by the Plaintiffs in: (i) their Complaint (the "Federal Complaint") filed on July 18, 2003, in the United States District Court for the Northern District of California entitled *Azizian, et al. v. Federated Department Stores, Inc., et al.,* Docket No. C 03 3359 (the "Federal Action"); or (ii) their Amended Consolidated Complaint filed on May 17, 2000, or any other complaint previously filed by them, in the Superior Court for the State of California, County of Marin.

B.     This Stipulated Order, along with each of its terms and conditions, shall not become effective unless and until it is entered by order ("Approval Order") of the United States District Court for the Northern District of California or any transferee court thereof (the "United States District Court"), and shall expire and cease to apply three (3) years after the date on which such Approval Order is entered.

C.     The United States District Court has jurisdiction over the subject matter of this Stipulated Order and over the parties hereto pursuant to Section 1 of the Sherman Act and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 1, 15 and 26).

D.     For purposes of this Stipulated Order, the following definitions shall apply:

1.     "Department Store Cosmetics" or "Products" mean the full range of high-end, "prestige" or specialty beauty and cosmetic products and product lines (whether established, discontinued or new), including, but not limited to, color products, treatments and fragrances which are or were manufactured, distributed and/or sold by the Manufacturer Defendants (as that term is defined below) or the Department Store Defendants (as that term is defined below) under various brand names. Department Store Cosmetics are sold to Retail Stores (as that term is defined below), who, in turn, sell such products to retail customers such as the Plaintiffs. The term "Department Store Cosmetics" excludes products and product lines sold principally through mass distribution channels, and, for each Manufacturer Defendant is limited to its discontinued and current product groups and brands, as well as any new brands which would otherwise be under the

definition of Department Store Cosmetics during the period that the Order is effective pursuant to Section II., below.

2.  "Department Store Defendant" means each entity named as a defendant in the Federal Complaint which is also a signatory to this Stipulated Order and which purchases *Department Store Cosmetics* from one or more Manufacturers (as that term is defined below), including the Manufacturer Defendants (as that term is defined below), and, in turn, resells such cosmetics to retail customers such as the Plaintiffs.

3.  "Retail Store" means each company or entity, including but not limited to the Department Store Defendants, which sells Department Store Cosmetics to retail customers such as the Plaintiffs.

4.  "Manufacturer Defendant" means each entity named as a defendant in the Federal Complaint which is also a signatory to this Stipulated Order and which manufactures, distributes and/or sells Department Store Cosmetics to Retail Stores, including the Department Store Defendants, who, in turn, resell such cosmetics to retail customers such as the Plaintiffs.

5.  "Manufacturer" means each company, including but not limited to the Manufacturer Defendants, which manufactures, distributes and/or sells Department Store Cosmetics to Retail Stores, including the Department Store Defendants, who, in turn, resell such cosmetics to retail customers such as the Plaintiffs.

6.  "Manufacturer's Suggested Retail Price" (or "MSRP") means the price that a Manufacturer suggests, at any given time, to a Retail Store as being the price at which that Retail Store resells the Manufacturer's Product to retail customers such as the Plaintiffs, and shall not mean a "Qualifying Amount" as that term is defined below.

7.  "Resale Price" means the price or price level at which Department Store Cosmetics are sold to retail customers such as the Plaintiffs, whether or not the price or price level is the same as the MSRP.

8.  "Agreement" means a contract, combination or conspiracy which would constitute concerted conduct under federal judicial precedent concerning Section 1 of the Sherman Act (15 U.S.C. § 1). In addition, the legal principles set forth in Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984), as well as subsequent federal judicial precedent applying those legal principles, shall apply to this Stipulated Order.

9.  "Cooperative Advertising" means any advertising or advertising program pursuant to which a Manufacturer pays the cost, in whole or in part, of advertising by a Retail Store for the Manufacturer's Department Store Cosmetics.

10. "Promotion" means any gift-with-purchase, purchase-with-purchase, launch or similar promotion of Department Store Cosmetics that may, from time-to-time be made available to Retail Stores, the cost of which is paid in whole or in part by the Manufacturer whose Products are the subject of the Promotion.

11. "Qualifying Amount" means the amount which any Manufacturer Defendant determines is the amount which any retail customer must pay in order to receive the benefit associated with any Promotion.

## II.   Specific Conditions

### A.   Department Store Defendants

1.   Each of the undersigned Department Store Defendants, its successors and assignees, its officers, directors, agents, representatives and employees, or through any parent, subsidiary or affiliated corporation, division or other device, in connection with the advertising, offering for sale, sale or distribution of Department Store Cosmetics, is prohibited from entering into any Agreement with any Manufacturer:

   a.   To fix, establish, control or maintain the Resale Price, including any MSRP, at which any Department Store Defendant may offer for sale or sell any Products;

   b.   To maintain, adopt or adhere to any resale price for any Products;

   c.   To secure any commitment or assurance from any other Department Store Defendant concerning the resale price at which that Department Store Defendant may offer for sale or sell any Products; or

   d.   To prohibit any Department Store Defendant from advertising any Manufacturer Defendant's Products at a Resale Price less than the Manufacturer's Suggested Retail Price, or to prohibit any other Department Store Defendant from advertising any Manufacturer Defendant's Products at a Resale Price less than the Manufacturer's Suggested Retail Price, provided that this subparagraph (d) does not apply to any advertising done pursuant to a Cooperative Advertising program.

2.   Provided, however, that nothing in this Stipulated Order shall prohibit any contract or understanding between any Department Store Defendant and a Manufacturer (or any unilateral conduct by a Department Store Defendant) concerning:

a. The amount of Product that said Department Store Defendant purchases at one time or in any single order from any Manufacturer;

b. The number or dollar amount of Products that may be sold by any Department Store Defendant at one time to any single customer of the Department Store;

c. The terms and conditions of any Promotion, including the Qualifying Amount or the number or value of any gift(s) or other component(s) of the Promotion;

d. Purchasing a Manufacturer's Products at a wholesale price which is determined by a fixed percentage of the MSRP for such Products;

e. Selling a Manufacturer's Products at that Manufacturer's MSRP based on the unilateral decision of a Department Store Defendant and in the absence of any Agreement enumerated in Paragraph II.A.1. herein;

f. Establishing terms or conditions of the sale or resale of any Products other than Resale Price, such as credits, backorders, returns and opening orders; or

g. Establishing exclusive or limited distribution periods with respect to any Manufacturer's Products or Promotions of its Products, including but not limited to exclusive or limited distribution periods in which: (i) only one Manufacturer's Promotion is run by a Department Store Defendant on any given date(s); or (ii) a Manufacturer does not offer any Promotion at any Department Store Defendant's retail store on the same date(s) as that Manufacturer's Promotion is offered at another Retail Store.

B. Manufacturer Defendants

1. Each undersigned Manufacturer Defendant, its successors and assignees, its officers, directors, agents, representatives and employees or through any parent, subsidiary or affiliated corporation, division or other device, in connection with the manufacture, advertising, offering for sale, sale or distribution of that Manufacturer Defendant's Products, is prohibited from entering into any Agreement with any Retail Store:

a. To fix, establish, control or maintain the Resale Price, including any MSRP, at which any Department Store Defendant may offer for sale or sell any Products;

b.     To maintain, adopt or adhere to any resale price for any Manufacturer Defendant's Products;

c.     To secure any commitment or assurance from any Department Store Defendant concerning the resale price at which such Department Store Defendant may offer for sale or sell any Products; or

d.     To prohibit any Department Store Defendant from advertising any Manufacturer Defendant's Products at a Resale Price less than the Manufacturer's Suggested Resale Price, or to prohibit any other Department Store Defendant from advertising any Manufacturer Defendant's Products at a Resale Price less than the Manufacturer's Suggested Resale Price provided that this subparagraph (d) does not apply to any advertising done pursuant to a Cooperative Advertising program.

2.     Each Manufacturer Defendant is also prohibited from:

a.     Suggesting or recommending an MSRP or Resale Price to any Department Store Defendant in writing on any price list or order form unless it clearly states the following caveat on each page of such list or form: "The Retail Prices Quoted Herein Are Suggested Only. You Are Completely Free to Determine Your Own Retail Prices";

b.     Requiring any Department Store Defendant to report the identity of any other Department Store Defendant which resells that Manufacturer Defendant's Products below the Manufacturer Defendant's Suggested Resale Price, provided that it shall not constitute a violation of this Stipulated Order for a Manufacturer Defendant to receive an unsolicited report from any Department Store Defendant as to the identity of any other Department Store Defendant which has sold that Manufacturer Defendant's Products below the Manufacturer Defendant's Suggested Resale Price;

c.     Taking objectively baseless action under applicable legal precedent to hinder or preclude the lawful use by any Department Store Defendant of any brand name, trade name or trademark of any Manufacturer Defendant because of the sale or advertising of any Department Store Cosmetics at any resale price;

d.     Conducting any surveillance program to determine whether any Department Store Defendant is advertising, offering for sale or selling any Department Store Cosmetics at any Resale Price, where such surveillance program is conducted to fix, maintain, control or

enforce the Resale Price at which any Department Store Cosmetics are sold or advertised;

e.  Making any payment or granting any other benefit to any Department Store Defendant in consideration for the Department Store Defendant's agreement to sell or advertise any Department Store Cosmetics at MSRP, except in connection with any Cooperative Advertising program or any conduct, agreement or understanding referenced in Section III.B.3. below; or

f.  Agreeing upon the prices for new cosmetic Products with any other Manufacturer Defendant.

3.  Provided, however, that nothing in this Stipulated Order shall prohibit any contract or understanding between any Manufacturer Defendant and a Retail Store (or any unilateral conduct by a Manufacturer Defendant) concerning:

a.  The amount of Products that any Retail Store purchases at one time or in any single order from any Manufacturer Defendant;

b.  The number or dollar amount of Products that may be sold by any Retail Store at one time to any single customer of the Retail Store;

c.  The terms and conditions of any Promotion, including the Qualifying Amount or the number or value of any gift(s) or other component(s) of the Promotion;

d.  Selling that Manufacturer Defendant's Products at a wholesale price which is determined by a fixed percentage of the Manufacturer Defendant's Suggested Resale Price for such Products;

e.  Establishing terms or conditions of the sale or resale of any Products other than Resale Price, such as credits, backorders, returns and opening orders; or

f.  Establishing exclusive or limited distribution periods with respect to that Manufacturer Defendant's Products or Promotions of its Products, including but not limited to exclusive or limited distribution periods in which: (i) only one Manufacturer Defendant's Promotion is run by a Retail Store on any given date(s); or (ii) that Manufacturer Defendant does not offer any Promotion at one Retail Store on the same date(s) as its Promotion is offered at another Retail Store.

## III. Additional Provisions

A. Nothing in this Stipulated Order shall be construed to prohibit a Department Store or Manufacturer Defendant from entering into any agreement or understanding, or engaging in any conduct, not prohibited by this Stipulated Order.

B. This Stipulated Order has no application to any claims(s) that Plaintiffs may have against any Retail Store(s) or Manufacturer(s) that has not signed this Stipulated Order (collectively "Non-Signatories"). Accordingly, nothing in this Stipulated Order may be construed as limiting Plaintiffs' right to claim that any policy, practice, agreement or conduct of or by any Non-Signatory ("Non-Signatory Conduct") is violative of any federal or state antitrust law, or any other applicable law, irrespective of whether the Non-Signatory Conduct at issue is: (a) pursuant to an agreement with a Department Store Defendant or Manufacturer Defendant; or (b) otherwise related to or associated with a policy, practice, agreement or conduct of or by a Department Store Defendant or Manufacturer Defendant.

C. Nothing in this Stipulated Order shall be construed in a manner that is inconsistent with the terms of the parties' Settlement Agreement.

## IV. Distribution of this Stipulated Order

A. Within thirty (30) days after entry of this Stipulated Order, each Manufacturer Defendant shall mail the attached Exhibit A to the main office of each Retail Store in the United States of America to whom said Manufacturer Defendant sells Products. An affidavit shall be sworn to by an official of said Manufacturer Defendant verifying that the attached Exhibit A was so mailed and filed with this court within ten (10) days after mailing;

B. Each Manufacturer Defendant shall mail the attached Exhibit A to any person, partnership, corporation or firm that becomes a new seller of that Manufacturer Defendant's Products within three (3) years after entry of this Stipulation and Order;

C. Each of the undersigned Department Store Defendants and Manufacturer Defendants shall, within thirty (30) days of the date on which the Stipulated Order is entered, distribute a copy of this Stipulation to each of its management officers, employees, agents or representatives who has responsibilities related to the sale or marketing of Department Store Cosmetics at or above the level of Department or Divisional Merchandise Manager (or its functional equivalent) for Department Store Defendants, and at or above the level of Regional Sales Manager (or its functional equivalent) for Manufacturer Defendants ("Covered Employees"), and will certify in writing to the Court that it has done so. In addition, each Department Store Defendant and Manufacturer Defendant shall, for a period of three (3) years from the date of entry of the Approval Order, distribute a copy of this Stipulation to any new Covered Employee to whom the Stipulation was not previously distributed.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have caused this Agreement to be executed by their officers or representatives hereunto duly authorized, effective as of the date first above mentioned. In so doing, the Parties expressly agree to and intend to be legally bound by this Agreement.

Boucheron (USA) Ltd.:  Date: _____

By: _____

_____

Chanel, Inc.:  Date: _____

By: _____

_____

Christian Dior Perfumes, Inc:  Date: _____

By: _____

_____

Clarins U.S.A., Inc.:  Date: _____

By: _____

_____

Conopco, Inc.:    Date: _____

                 By: _____

                 _____


The Estée Lauder Companies Inc.:    Date: _____

                 By: _____

                 _____


Guerlain, Inc.    Date: _____

                 By: _____

                 _____


L'Oréal USA, Inc.:    Date: _____
(formerly known as Cosmair, Inc.)
                 By: _____

                 _____


Parfums Givenchy, Inc.:    Date: _____

                 By: _____

                 _____


Dillard's Inc.:    Date: _____

                 By: _____

                 _____

Federated Department Stores, Inc.:  Date: _____

By: _____

_____


Gottschalks Inc.:  Date: _____

By: _____

_____


The May Department Stores Company:  Date: _____

By: _____

_____


The Neiman Marcus Group, Inc.  Date: _____

By: _____

_____


Nordstrom, Inc.  Date: _____

By: _____

_____


Saks Incorporated:  Date: _____

By: _____

_____

Target Corporation: Date: _____

By: _____

_____

## ORDER

It is so ordered this _____ day of _____, 2003.

_____
Judge

11

Exhibit A

Dear Retailer:

This letter is intended to remind you of certain aspects of our Company's practices concerning the sale of its prestige or specialty beauty and cosmetic products ("Products") to your stores:

1. The Company may, in its discretion, provide you with a suggested resale price for its Products. Any such price is a suggested price only; you are completely free to determine your own retail prices. The Company will not enter into any agreement with you (and will not require or solicit any commitment or assurance from you) concerning the retail prices at which you sell the Company's Products.

2. Notwithstanding anything above, with respect to any advertising or advertising program for Products which is paid, in whole or in part, by the Company ("Cooperative Advertising"), the Company reserves the right to set terms and conditions related to such advertising (including but not limited to the price at which Products will be advertised).

3. With respect to any advertising of the Company's Products other than Cooperative Advertising, the Company may suggest the price at which its Products will be advertised, and any such suggestion will be considered a suggested resale price within the meaning of paragraph number (1) above.

4. This letter is not intended to affect or supersede any policies, practices or guidelines which the Company has established or may in the future establish with respect to any terms or conditions of sale or resale of its Products not specifically referenced in this letter.

If you have any questions regarding the contents of this letter, please contact the undersigned by phone, mail or email as specified below.

[Signed]

EXHIBIT C

## Distribution Plan

Pursuant to Paragraph 4(b) of the Settlement Agreement (and incorporating the defined terms used in that Agreement), the following sets forth the anticipated logistics for the distribution of Department Store Cosmetics to members of the Settlement Class:

1.    Best Efforts:  Settling Defendants shall use their best efforts to distribute Department Store Cosmetics Products ("Product") to the Class Members in accordance with the terms of the Settlement Agreement and this Distribution Plan.

2.    Product:  Each Manufacturer Defendant shall contribute Product based on its share of Department Store Cosmetics sales.  Each Manufacturer Defendant shall choose the product(s) and the brand(s) to be distributed as Product, and the Product will have an approximate retail value of $18-25 per unit.  There is no requirement that all brands manufactured, distributed and/or sold by the Defendants be represented in the Products selected for distribution pursuant to the Settlement.  The Product contributed by each Manufacturer Defendant may be from its existing stock or specially manufactured for the purpose of distribution pursuant to this Settlement but may not be from a Department Store Defendant's existing inventory.

3.    Distribution of Product among Department Store Defendants:  The Product contributed by each Manufacturer Defendant shall be distributed among the Department Store Defendants so as to approximate the percentage of that Manufacturer Defendant's sales of Department Store Cosmetics sold through that Department Store Defendant as of the most recent, full calendar year.

4.    Department Store Defendant Distribution of Product among Stores:  In order to allow for logistical considerations, Product from each Manufacturer Defendant may be allocated by each Department Store Defendant among its stores in any manner consistent with this plan subject to agreement by the corresponding Manufacturer Defendant.  A Department Store Defendant shall be under no obligation to distribute a Manufacturer Defendant's Product at a store that does not sell, at the time of the distribution, that particular brand of Product.

5.    Distribution Location within Stores:  At each store at which a Manufacturer Defendant's Product is being distributed by a Department Store Defendant, the place(s) of distribution within that store of each Manufacturer Defendant's Product shall be decided jointly by the Manufacturer Defendant and the Department Store Defendant.

6.    Timing of Distribution:  The Product shall be distributed over a one week period (seven consecutive days) and shall commence within eighteen months following the expiration of the period of time provided in the Federal Rules of Civil Procedure for appeal of the final judgment entered in the case ("Distribution Period").  The Distribution Period shall commence in January unless all defendants agree to a different period.

7.    Publication:  The availability of Product for distribution to the settlement class members shall be announced approximately not more than three weeks nor less than one week in advance of the Distribution Period.  The announcement shall appear once in the same publications as those used to publish preliminary notice of the class settlement, and any

**Exhibit C**

defendant is free to publish supplemental announcements of its own Product give-away program in more publications or other media if that defendant so desires, at its own expense. If for any reason a publication used for class notice is unavailable or impractical for purposes of announcing Product availability, defendants may substitute another publication providing similar distribution. Responsibility for publication of the product distribution notice shall be apportioned among the Settling Defendants in the same manner as responsibility for the notice of settlement under Paragraph 9 of the Settlement Agreement.

8.     Consumer Certification:  Class members requesting Product during the Distribution Period shall be requested, in a manner to be determined by the Settling Defendants, to certify that they have previously purchased Department Store Cosmetics and have not previously recovered under that particular Manufacturer Defendant's Product give-away program contained in this Distribution Plan.

9.     Excess Product:  If for any reason all Product is not distributed during the Distribution Period, the Department Store Defendants shall return the remaining Product to the Manufacturer Defendant which supplied it, and the Manufacturer Defendant shall distribute such remaining Product to appropriate charitable organizations.

10.     No Refunds or Returns:  Under no circumstances shall any Department Store Defendant accept the return of any Product, whether the return be presented for refund, credit or exchange. Manufacturer Defendants and Department Store Defendants shall mark, package or configure Product to facilitate the identification of an item as Product that may not be returned.

11.     Certification:  Seventy-five days after the commencement of the Distribution Period, each Manufacturer Defendant shall provide a certification to Plaintiffs' Counsel that it has distributed to the Department Store Defendants Product in conformity with the provisions of Paragraphs 2 and 3 above, and each Department Store Defendant shall provide a certification to Plaintiffs' Counsel that it has distributed to Class Members, or otherwise properly disposed of, all Product provided to it by any Manufacturer Defendant in conformity with the provisions of Paragraphs 4 through 9 above.

EXHIBIT D

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to be a member of the class, or if you want to be able to start your own suit or be part of a different lawsuit against the defendants raising the claims involved in this lawsuit, then you must take steps to get out of the Class. This is called "excluding yourself" and sometimes is referred to as "opting out" of the Class.

11.     How do I get out of the Settlement?

        To exclude yourself, you must send a letter by first-class mail clearly stating that you want to be excluded from Azizian, et al. v. Federated Department Stores, Inc., et al. Be sure to include your name, address, telephone number and signature. The name and address of your attorney is not sufficient. You must mail your exclusion request postmarked no later than _____ ___, 2003, to:

                Cosmetics Antitrust Litigation Settlement Administrator
                [address]
                [city], [state] [zip].

        You cannot exclude yourself on the phone or by email. If you ask to be excluded, you will not be entitled to get any free Department Store Cosmetics, and you cannot object to the Settlement. Nor will you be legally bound by anything that happens in this lawsuit.

12.     If I do not exclude myself, can I sue the defendants for the same thing later?

        No. Unless you exclude yourself, you give up all of your rights against the defendants for the claims that are involved in this Settlement.

## THE LAWYERS REPRESENTING YOU

13.     Do I have a lawyer in this case?

        The Court has approved several law firms (called "Plaintiffs' Counsel") to collectively represent you. You will not be charged for the services of these attorneys in litigating this case for over five years and negotiating this Settlement. If you want to be represented by your own lawyer, you may hire one at your own expense.

14.     How will the lawyers be paid?

        The Court has not decided how much Plaintiffs' Counsel will be paid. Plaintiffs' Counsel may ask the Court for an award of their reasonable fees and expenses incurred in pursuing this case, and Defendants have agreed to pay an amount of no more than $24 million. The Court may award less than that amount. You do not have to pay any fees and expenses that the Court may award. These fees and

costs will be paid separately by the defendants and will not come out of the value of the free Department Store Cosmetics to be distributed to the Class Members.

## OBJECTING TO THE SETTLEMENT OR ATTORNEYS' FEES

15. If I do not like the Settlement or object to the attorneys' fees, how do I tell the Court?

If you are and choose to remain a Class Member, you can object to the Settlement if you do not like any part of it, or you may object to the request for attorneys' fees. You must give the reason why you think that the Court should not approve the Settlement or the requested attorneys' fees (i.e., a mere statement that "I object" will not be deemed sufficient). Do not contact the Court directly to object. Rather, you must send a written statement with your name, your address (just giving the address of an attorney who represents you is not sufficient), your telephone number, your signature and the reason why you object, and, if you are represented by a lawyer, the name, address and telephone number of that lawyer. You must mail your comments or objections and any supporting papers by first-class mail postmarked no later than _____ ___, 2003 to the following address:

> Cosmetics Antitrust Litigation Settlement Administrator
> [address]
> [city], [state] [zip].

Submitting an objection will not extend the time within which a class member may request exclusion from this Settlement.

16. What is the difference between objecting and excluding?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the Class. If you object and the Court rejects your objection, you remain a member of the class and will be bound by any outcome of the case. Excluding yourself is telling the Court that you do not want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement and award attorneys' fees. You may, but do not have to, attend the hearing. You may speak at the hearing but only if you have submitted your comments or objections as provided in Paragraph 15, above.

17. When and where will the Court decide whether to approve the Settlement and attorneys' fees?

The Court will hold a hearing at _____ on _____ ___, 2003, in the United States District Courthouse for the Northern District of California, Oakland Division, Oakland, California 94162, in Judge Armstrong's Courtroom, Room 3,

QUESTIONS? CALL 1-800-___-____, TOLL-FREE, OR VISIT THE REST OF THE SETTLEMENT WEBSITE

## LIST OF PLAINTIFFS' COUNSEL

The following firms are hereby designated as "Plaintiffs' Counsel":

Law Offices of Francis O. Scarpulla
275 Battery Street, 28th Floor
San Francisco, CA 94111
Telephone:    (415) 788-7210
Facsimile:    (415) 788-0707

Milberg, Weiss, Bershad,
    Hynes & Lerach, L.L.P.
401 B Street, Suite 1700
San Diego, CA 92101
Telephone:    (619) 231-1058
Facsimile:    (619) 231-7423

Critchlow & Diskint
938 B Street
San Rafael, CA 94901
Telephone:    (415) 721-7900
Facsimile:    (415) 256-9222

Janssen, Malloy, Needham, Morrison
    Reinholtsen & Crowley, LLP
730 Fifth Street, Post Office Drawer 1288
Eureka, CA 95502
Telephone:    (707) 445-2071
Facsimile:    (707) 445-8305

Bramson Plutzik Mahler
    & Birkhaeuser, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone:    (925) 945-0200
Facsimile:    (925) 945-8792

Kendrick & Nutley
468 North Camden Drive, Suite 200
Beverly Hills, CA 90210
Telephone:    (310) 858-5571
Facsimile:    (562) 439-7829

Lieff, Cabraser, Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Telephone:    (415) 956-1000
Facsimile:    (415) 956-1008

Law Offices of Gretchen M. Nelson
707 Wilshire Boulevard, Suite 5000
Los Angeles, CA 90017
Telephone:    (213) 622-6469
Facsimile:    (213) 622-6019

The Mogin Law Firm
110 Juniper Street
San Diego, CA 92101-1502
Telephone:    (619) 687-6611
Facsimile:    (619) 687-6610

Gross & Belsky, LLP
180 Montgomery Street, Suite 2200
San Francisco, CA 94104
Telephone:    (415) 544-0200
Facsimile:    (415) 544-0201

Law Offices of John W. Allured
One Maritime Plaza, Suite 1040
San Francisco, CA 94111
Telephone:    (415) 675-2960
Facsimile:    (415) 675-2961

The Law Firm of Joseph M. Alioto
555 California Street, 31st Floor
San Francisco, CA 94104
Telephone:    (415) 434-8900
Facsimile:    (415) 434-9200

**EXHIBIT D**

Saveri & Saveri, Inc.
111 Pine Street, 17th Floor
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

Cooper & Kirkham, P.C.
655 Montgomery Street, 17th Floor
San Francisco, CA 94111
Telephone:  (415) 788-3030
Facsimile:  (415) 882-7040

The Furth Firm
201 Sansome Street, Suite 1000
San Francisco, CA 94104
Telephone:  (415) 433-2070
Facsimile:  (415) 982-2076

Law Offices of John H. Boone
555 California Street, 31st Floor
San Francisco, CA 94104
Telephone:  (415) 434-1133
Facsimile:  (415) 434-9200

Zelle Hofmann Voelbel Mason
  & Gette, LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:  (415) 693-0700
Facsimile:  (415) 693-0770

Law Offices of John L. Burris
7677 Oakport, Suite 1120
Oakland, CA 94621
Telephone:  (510) 839-5200
Facsimile:  (510) 839-3882

The David Danis Law Firm, PC
8235 Forsyth Boulevard, Suite 1100
St. Louis, MO 63105
Telephone:  (314) 725-7700
Facsimile:  (314) 721-0905

EXHIBIT E

1  GUIDO SAVERI (22349)
2  R. ALEXANDER SAVERI (173102)
   LISA SAVERI (112043)
3  SAVERI & SAVERI, INC.
   111 Pine Street, Suite 1700
4  San Francisco, CA 94111
   Telephone: (415) 217-6810
5
   WILLIAM BERNSTEIN (65200)
6  MICHELE C. JACKSON (90807)
   LIEFF, CABRASER, HEIMANN & BERNSTEIN
7  Embarcadero Center West
   275 Battery Street, 30th Floor
8  San Francisco, CA 94111
   Telephone: (415) 956-1000
9
   Attorneys for Plaintiffs
10
11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13

14  Fatemah Azizian, _et al._,          )   **CIVIL NO. 3:03 CV-03359 SBA**
                                        )
15            Plaintiffs,               )   [PROPOSED] ORDER CONDITIONALLY
                                        )   CERTIFYING SETTLEMENT CLASS;
16       v.                             )   GRANTING MOTION FOR
                                        )   PRELIMINARY APPROVAL OF CLASS
17  Federated Department Stores, Inc., _et al._, )  _ACTION SETTLEMENT,_ AND
                                        )   SCHEDULING HEARING ON FINAL
18            Defendants.               )   SETTLEMENT APPROVAL
    _____ )
19
20      WHEREAS, this Court has presided over certain of the proceedings in the

21  above-captioned action (the "Class Action") and has reviewed all of the pleadings, records and

    papers on file herein; and
22
        WHEREAS, this Court has been apprised of the proceedings in _In re Cosmetics Cases,_
23
    J.C.C.P. No. 4056, which has been proceeding in the Superior Court of the State of California,
24
    County of Marin (the "Superior Court") for over four years (the "Coordinated Actions"); and
25

26

27

28
    _____
                                            1
EXHIBIT E

1    WHEREAS, the plaintiffs have entered into a Settlement Agreement dated July 16, 2003

2    (which has been lodged with the Court) with the following entities, herein after collectively

3    referred to as "Settling Defendants,": (a) Boucheron (USA) Ltd., Chanel, Inc., Christian Dior

4    Perfumes, Inc., Clarins U.S.A., Inc., Conopco, Inc., L'Oréal USA, Inc. (formerly known as

5    Cosmair, Inc.), The Estée Lauder Companies Inc., Guerlain, Inc., Parfums Givenchy, Inc.

6    (sometimes collectively referred to herein as the "Manufacturer Defendants"); and (b) Dillard's,

7    Inc., Federated Department Stores, Inc., Gottschalks Inc., The May Department Stores Company,

8    The Neiman Marcus Group, Inc., Nordstrom, Inc., Saks Incorporated and Target Corporation

9    (sometimes collectively referred to herein as the "Department Store Defendants"); and

10    WHEREAS, the Court has reviewed the Settlement Agreement together with the Exhibits

11    thereto, and has heard the attorneys for the parties with respect to the proposed settlement of this

12    action; and

13    WHEREAS, the Court has determined that inquiry should be made as to the fairness and

14    adequacy of this proposed settlement; and

15    WHEREAS, the Court has conducted a hearing respecting the reasonableness of

16    proceeding with this proposed settlement, and good cause appearing therefor, now finds and

17    orders as follows:

18                                    FINDINGS

19    1.    The Court finds that the proposed settlement falls within the range of possible

20    approval and is sufficiently fair to warrant the dissemination of notice to the proposed class

21    members apprising them of the settlement, and finds that the proposed class, as defined in

22    Paragraph 12, below, is proper and should be certified for settlement purposes only.

23    2.    Solely within the context of and for the purposes of settlement, the Court finds

24    that: (a) the members of the class are so numerous that joinder would be impractical; (b) there

25    are questions of law or fact which are common to the class, and those common questions

26

27

28

1 predominate over individual questions; (c) the Plaintiffs' claims are typical of the claims of the

2 absent members of the class; (d) Plaintiffs have and will fairly and adequately represent the

3 interests of the absent members of the class; and (e) this class action is superior to any other

4 available method for the fair and efficient adjudication of the controversy.

5     3.    There is no evidence that any member of the class has an interest in filing a

6 separate action. Any putative class member will have the right to exclude himself or herself

7 from the class to pursue individual litigation, should he or she choose to do so. There is no other

8 case containing the same or similar allegations pending in any other court against these Settling

9 Defendants. It is desirable to maintain this litigation under the jurisdiction of this Court to

10 facilitate the parties' settlement agreement and resolve all of the claims of the proposed

11 Settlement Class.

12     4.    As provided in the Settlement Agreement, each Settling Defendant retains the

13 right to withdraw from and terminate the settlement as to it if it concludes, in good faith, that the

14 number of class members who request exclusion is "substantial" (as that term is defined in the

15 Settlement Agreement). Plaintiffs also retain the right to withdraw from and terminate this

16 settlement if they conclude that the termination of this Agreement by one or more of the Settling

17 Defendants will "materially reduce" (as defined in the Settlement Agreement) the consideration

18 to be received by the class members.

19     5.    The Superior Court appointed The Honorable Charles B. Renfrew as the

20 Discovery Referee, who conducted numerous hearings and made rulings on the scope and extent

21 of discovery.

22     6.    The Superior Court appointed The Honorable Daniel Weinstein as a settlement

23 mediator, whose mediation efforts contributed to this settlement.

24

25

26

27

28

1    7.    The proposed settlement is the product of arm's-length, serious, informed and

2    non-collusive negotiations between experienced and knowledgeable counsel who have actively

3    prosecuted and defended this litigation.

4    8.    The Settlement Agreement is granted preliminary approval and incorporated

5    herein by this reference, and has the full force and effect of an order of this Court.

6    9.    A hearing is appropriate to consider whether this Court should grant final

7    approval to this settlement, and to allow adequate time for members of the class, or their counsel,

8    to support or oppose this settlement.

9    10.    A hearing is also appropriate for this Court to determine the appropriate amount

10   to be awarded to Plaintiffs' Counsel, as listed in Exhibit D to the Settlement Agreement, in

11   attorneys' fees and costs, as well as "incentive awards" to the named Plaintiffs and to allow

12   adequate time for Plaintiffs' Counsel to submit their application for attorneys' fees and costs, as

13   well as for members of the class to support or oppose that application.

14   11.    For purposes of this Order, the term "Department Store Cosmetic Products"

15   means the full range of high-end, "prestige" or specialty beauty and cosmetic products and

16   product lines (whether established, discontinued or new), including, but not limited to, color

17   products, treatments and fragrances which are or were manufactured, distributed and/or sold by

18   the Manufacturer Defendants or Department Store Defendants under various brand names during

19   the Class Period, as defined in Paragraph 12 below. Department Store Cosmetic Products are

20   sold primarily through traditional department and/or speciality stores ("Retail Stores"),

21   including such stores owned or operated by the Department Store Defendants, who, in turn, sell

22   such products to the Plaintiffs and members of the Settlement Class. The term "Department

23   Store Cosmetics" excluded products and product lines sold principally through mass distribution

24   channels.

25

26

27

28

1     GOOD CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED:

2       12.    Solely within the context of and for purposes of holding a hearing to consider

3 whether this Court should grant final approval to the proposed settlement, this action is

4 determined to be properly maintained as a class action pursuant to Rule 23(b)(2) and (b)(3),

5 Federal Rules of Civil Procedure, with a class, for settlement purposes only, consisting of:

6           All persons who currently reside in the United States and who
          purchased Department Store Cosmetic Products in the United
7           States, which products were manufactured, distributed and/or sold
          by the Manufacturer Defendants or Department Store Defendants,
8           at any time during the period May 29, 1994 through July 16, 2003
          (the "Class Period"). Excluded from this Settlement Class are all
9           employees, officers, directors or agents (including attorneys) of
          any defendant, as well as any judge, justice or judicial officer
10          presiding over this matter, and each such person's immediate
          family.

11

12       13.    Two forms of notice: a Summary Notice of Class Certification and Settlement

13 ("Summary Notice") attached hereto as Exhibit A-1, and a Notice of Class Certification and

14 Settlement ("Notice"), attached hereto as Exhibit A-2, shall be given to the class.

15       14.    Within 30 days after the Court orders Preliminary Approval, or as soon thereafter

16 as practicable, the Summary Notice shall be disseminated to the Class, substantially in the form

17 attached hereto as Exhibit A-1, by publication in the newspapers and periodicals listed in

18 Exhibit B. Such notice shall appear in either USA Weekend or Parade sections of such

19 newspapers. Such notice shall be published in a size no less than two-fifths (2/5) of a page.

20 Proof of dissemination of such Summary Notice shall be filed by Defendants' counsel prior to

21 the final approval hearing. The Notice, substantially in the form of Exhibit A-2, shall be posted

22 on the website established pursuant to Paragraph 15 below, and shall be mailed to any class

23 member who so requests. The expense of giving notice to the class members shall be paid by the

24 Settling Defendants. Dissemination of the Notice as provided above is hereby authorized and

25

26

27

28

1 approved, and satisfies the notice requirements of Rule 23(e), Federal Rules of Civil Procedure,

2 the Constitution of the United States, due process and any other applicable rule(s) of this Court.

3      15.    The Settlement Administrator shall establish a website, which will contain the

4 Notice to Class Members. The Summary Notice and Notice shall contain the address of the

5 website, which shall remain available until one (1) year after the entry of the Court's order of

6 final approval of the settlement.

7      16.    The Settlement Administrator shall establish a toll-free telephone number to

8 provide information to Class Members about the nature of the settlement. The Summary Notice

9 and Notice shall contain the toll-free telephone number.

10      17.    Any member of the Class may request exclusion from the class by first class mail,

11 personally signed, and stating unequivocally that he/she wishes to be excluded from this class

12 action settlement. Any request for exclusion must be mailed, postmarked on or before [thirty-

13 five (35) days after deadline for publication of Notice], 2003, to:

14               Cosmetics Antitrust Litigation Settlement Administrator
              P.O. Box [to be inserted]

15               [address to be inserted]

16 and referring, in the request for exclusion, to the name and number of this litigation, *Azizian, et*

17 *al. v. Federated Department Stores, Inc., et al.*, Docket No. 3:03 CV-03359. Such request shall

18 state the name and address of the member of the class requesting exclusion, and that such class

19 member elects to be excluded from this litigation. The class member must sign the request for

20 *exclusion personally.* Any class member who chooses to be excluded and who provides the

21 requested information will not be bound by any judgment entered in connection with this

22 settlement. Copies of any exclusions received by Plaintiffs' counsel pursuant to this paragraph

23 shall be served on counsel for Settling Defendants, as provided for in the Settlement Agreement,

24 and shall be filed with the Court by Plaintiffs' counsel before the date for the hearing on final

25 approval.

26

27

28

1        18.    Any member of the class who does not elect to be excluded from this litigation

2  may enter an appearance on their own behalf in this action through that class member's own

3  attorney (at their own expense), but need not do so.  Class members who do not enter an

4  appearance through their own attorneys will be represented by the Plaintiffs as class

5  representatives and their counsel, whose fees and costs will be paid as provided in the Settlement

6  Agreement.

7        19.    A final approval hearing pursuant to Rule 23(e), Federal Rules of Civil Procedure,

8  will be held in the *Courtroom of the undersigned on* _____ ___, 2003 at _____ a.m./p.m.

9  in the United States District for the Northern District of California, Oakland Division,

10  Courtroom 3, 3rd Floor, 1301 Clay Street, Oakland, California 94612, to determine whether the

11  proposed settlement is fair, reasonable and adequate, and whether it should be finally approved

12  by the Court and the claims against the Settling Defendants dismissed on the merits, with

13  prejudice and without costs as to the Settling Defendants, except as provided in the Settlement

14  Agreement.  This hearing may be continued from time to time without further notice.

15        20.    *Briefs in support of final approval shall be filed on or before* _____ ___,

16  2003.

17        21.    A hearing on attorneys' fees and costs to be awarded to Plaintiffs' Counsel will be

18  held in the Courtroom of the undersigned on _____ ___, 2003 at _____ a.m./p.m. in the

19  United States District for the Northern District of California, Oakland Division, Courtroom 3, 3rd

20  Floor, 1301 Clay Street, Oakland, California 94612. This hearing may be continued from time to

21  time without further notice.

22        22.    *Plaintiffs' Counsel shall file any application for attorneys' fees and costs and for*

23  *any "incentive awards" for the named Plaintiffs on or before* _____ ___, 2003.

24        23.    Any member of the class who has not timely requested exclusion may appear at

25  the final approval hearing and show cause why the Court should not approve this settlement, and

26

27

28

1    dismiss this action with prejudice as to the Settling Defendants, and may appear at the hearing to

2    support or oppose Plaintiffs' Counsel's application for attorneys' fees and expenses. For a

3    member of the class to have any objections considered, the class member must send a sworn

4    statement by first-class mail postmarked no later than ＿＿＿＿ ＿＿, 2003, to:

5                  Cosmetics Antitrust Litigation Settlement Administrator
                   P.O. Box [to be inserted]

6                    [address to be inserted].

7    This statement shall include: (1) the class member's complete name and residence or business

8    address (giving the address of any lawyer who represents the class member is not sufficient);

9    (2) that the class member purchased Department Store Cosmetic Products during the period  May

10    29, 1994, through July 16, 2003; and (3) each ground for comment or objection and any

11    supporting papers the class member desires the Court to consider (*i.e.*, a mere statement that

12    "I object" shall not be deemed to be sufficient). The Settlement Administrator shall provide

13    copies of any objections received to counsel for the Plaintiffs and for the Settling Defendants.

14    Plaintiffs' Counsel shall file copies with the Court at least ten (10) days before the hearing on

15    final approval. The filing of any objection shall not extend the time within which a class member

16    may file a request for exclusion from the settlement.

17         24.     In the event that, within ten (10) days after receipt of the list of class members

18    who have excluded themselves from the settlement, any Settling Defendant shall conclude in

19    good faith that the number of class members who have opted out of the Settlement Class is

20    substantial (as that term is defined in the Settlement Agreement), then said Settling Defendant

21    shall have the right, exercisable in its sole and absolute discretion, to withdraw from this

22    settlement, in which event the case will proceed as to any such withdrawing Settling Defendant.

23    This option shall be exercised, if at all, within the above-described period by service of written

24    notice of the election to terminate on Plaintiffs' Counsel and by filing a copy of such notice with

25    the Court. With respect to each Settling Defendant who timely withdraws, the Settlement

26

27

28

[PROPOSED] ORDER CONDITIONALLY CERTIFYING SETTLEMENT CLASS; GRANTING MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT, AND SCHEDULING HEARING ON FINAL SETTLEMENT APPROVAL     EXHIBIT E

1 Agreement shall be terminated, canceled, null and void, as provided in the Settlement

2 Agreement.

3     25.    In the event that Plaintiffs conclude in good faith that the withdrawal of any

4 Settling Defendant will "materially reduce" the consideration to be received by the Settlement

5 Class members (as that term is defined in the Settlement Agreement), then Plaintiffs shall have

6 the right, exercisable in their sole and absolute discretion, to withdraw from this settlement by

7 filing with the Federal Court and serving on Settling Defendants' counsel written notice of

8 withdrawal within four (4) days after receipt of any Settling Defendant's withdrawal. In the

9 event Plaintiffs timely withdraw, the Settlement Agreement shall be terminated, canceled, null

10 and void. If the Settling Defendants and/or Plaintiffs elect to withdraw from this Agreement, no

11 defendant will be reimbursed for any funds advanced to defray the costs of providing notice to

12 Class Members pursuant to Paragraph 13, above.

13     26.    In the event the Settlement Agreement is terminated with respect to any and all

14 Settling Defendants, the Settlement Agreement and all matters leading up to or related to the

15 settlement are confidential settlement communications inadmissible under Federal Rules of

16 Evidence, Rule 408, or California Code of Evidence, Section 1152(a), and any and all other

17 applicable federal and state laws.

18

19 Dated: _____ ___, 2003

20                                  The Honorable Saundra Brown Armstrong
                                 United States District Court Judge

21                                  United States District Court for the
                               Northern District of California

22

23

24

25

26

27

28

[PROPOSED] ORDER CONDITIONALLY CERTIFYING SETTLEMENT CLASS; GRANTING MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT, AND SCHEDULING HEARING ON FINAL SETTLEMENT APPROVAL     EXHIBIT E

Exhibits to this document:

A:    A-1: Summary Notice (short-form notice)
       A-2: Notice (long-form notice)

B:    List of Publications

[PROPOSED] ORDER CONDITIONALLY CERTIFYING SETTLEMENT CLASS; GRANTING MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT, AND SCHEDULING HEARING ON FINAL SETTLEMENT APPROVAL

EXHIBIT E

EXHIBIT F1

# If You Purchased Certain Cosmetics or Fragrance Products at a Department Store from May 29, 1994 through July 16, 2003,

## Your Rights Could Be Affected by a Proposed Class Action Settlement.

### What is this Notice About?

A settlement has been proposed in a class action lawsuit that alleges that certain manufacturers of cosmetics and fragrance products and certain department stores that sell those products ("Defendants") violated the antitrust laws in connection with the pricing of these products.

Defendants deny any wrongdoing or illegal conduct but have agreed to settle the litigation.

### What Cosmetics and Fragrance Products Are Included?

This lawsuit involves products ("Department Store Cosmetics"), which are the full range of high-end, "prestige" or specialty beauty and cosmetic products and product lines, including color products (such as foundation, eye shadow and lipsticks), treatments (such as skin creams and moisturizers) and fragrances. These products are manufactured, distributed and/or sold by the Defendants under various brand names. The settlement does not include cosmetics and fragrance products sold through mass distribution channels, such as drug stores and warehouse outlets.

### Am I a Member of the Class?

You are a member of the Class if you are currently a resident of the United States who purchased Department Store Cosmetics in the United States, which products were made, distributed and/or sold by the Defendants during the period May 29, 1994 through July 16, 2003. Employees of any Defendant, as well as any judge or lawyer involved in this case, and each such person's immediate family members, are excluded from the class. You do not have to do anything to remain a member of the class.

### What Benefits Does the Settlement Provide to Class Members?

Without admitting any wrongdoing or liability, Defendants have agreed to:

• Give to Class Members, free of charge, cosmetics and fragrance products having a total retail value of $175 million;

• Enter into a court order that prohibits them from engaging in certain marketing practices, including agreements to fix, establish, control or maintain the retail price at which any department store defendant may offer for sale or sell any cosmetics or fragrance products; and

• Pay, on behalf of the Class, Plaintiffs' attorneys' fees and expenses in an amount to be determined by the Court, up to a maximum of $24 million. Any fees and costs that may be awarded by the court shall not reduce the value of the cosmetics and fragrance products to be distributed to Class Members.

### What Are My Options?

If you are a member of the Class and you do not want to be legally bound by the settlement, you must exclude yourself from the Class by sending a signed letter requesting exclusion to the Settlement Administrator, whose address is at the bottom of this Notice, postmarked by Month Date, 2003, or you will not be able to sue the Defendants for the same claims involved in this case.

If you do not exclude yourself from the class, you may object to the settlement or to the award of expenses and attorneys' fees by filing a written objection with the Settlement Administrator, postmarked by Month Date, 2003. You also have the right to hire a lawyer at your own expense to advise you about your rights under this proposed settlement.

### Important Hearing Date

The Court will hold a hearing in this case on Month Date, 2003, to consider whether to approve the settlement and a request by the lawyers representing the Class for fees and expenses. You may but are not required to appear at this hearing.

### If I Stay in the Class, How Do I Claim My Free Product?

While a Supplemental Notice of the distribution of free cosmetic products will be published in newspapers in major metropolitan areas, to assure that you will receive notice of when the free product will be available, you should register on the website below leaving your email address, or call the toll-free number and leave your name and address. Upon approval of the Settlement, you will be notified by email or postcard as to when you may claim your free product. The availability of free product under the Settlement will also be announced on the website below and on the toll-free number. Class Members may then go to their department store to claim their free product.

## For additional information, including covered brands and stores,

## visit www.xxxxxxxx.com or call: 1-800-000-0000

**Or write:** Cosmetics Antitrust Litigation Settlement Administrator [address], [city], [state] [zip].

EXHIBIT F2

# ATTENTION

# LEGAL NOTICE
## from
# United States District Court for the Northern District of California

## READ THIS NOTICE CAREFULLY

# IF YOU PURCHASED CERTAIN COSMETICS OR FRAGRANCE PRODUCTS AT A DEPARTMENT STORE FROM MAY 29, 1994 THROUGH JULY 16, 2003, THEN YOUR RIGHTS COULD BE AFFECTED BY A PROPOSED CLASS ACTION SETTLEMENT.

- This is a proposed Settlement of a class action case involving "Department Store Cosmetics," which are defined for the purpose of this Settlement as the full range of high-end, "prestige" or specialty beauty and cosmetic products and product lines, including color products (such as foundation, eye shadow and lipsticks), treatments (such as skin creams and moisturizers) and fragrances. These products are manufactured, distributed and/or sold by the Defendants under various brand names. The Settlement does not include cosmetics and fragrance products sold through mass distribution channels, such as drug stores and warehouse outlets.

- The Settlement requires the defendants to: (1) enter into a court order that prohibits them from engaging in certain marketing practices, including agreements to fix, establish, control or maintain the retail price at which any department store may offer for sale or sell any cosmetics or fragrance products; (2) give to Class members, free of any charge, cosmetics and fragrance products having a total retail value of $175 million; (3) pay, on behalf of the Class, plaintiffs' attorneys' fees and litigation costs in an amount to be determined by the Court, up to a maximum of $24 million; and (4) pay all the costs of notifying the class about, and administering all aspects of, this Settlement, including distributing the free Department Store Cosmetics. Any fees and costs that may be awarded by the Court shall not reduce the value of the cosmetics and fragrance products to be distributed to the Class members.

- The names of the Defendants are listed in Paragraphs 6 and 7, below.

- Visit the Settlement website at www._____ for a list of cosmetics and fragrance products involved in this class action and the brand names of these products. You may also get this information by calling 1-800-___-___, or by writing to:

  Cosmetics Antitrust Litigation Settlement Administrator
  [address]
  [city], [state] [zip]

| OPTIONS | LEGAL RIGHTS |
|---|---|
| Remain a Class Member by Doing Nothing | If you do not exclude yourself from the Class you will be bound by any decision of the Court in this case, you will give up your rights against the Defendants in this case about the same legal claims as are in this case and you will be entitled to participate in the distribution of the Department Store Cosmetics. |
| Exclude Yourself | If you exclude yourself from the Settlement, you will not be bound by the Settlement or judgment and will not be entitled to get free products distributed pursuant to the Settlement. You will be free to pursue your claim against the Defendants. This is the only option that allows you ever to bring or be part of any other lawsuit against the defendants in this case about the same legal claims as are in this case. |
| Object | If you do not exclude yourself, you may write to the Court about why you do not like the Settlement or the request for legal fees and costs. |
| Hire Your own Lawyer | You may hire your own lawyer at your expense to advise you of your rights under this proposed Settlement. |
| Go to a Hearing | You may ask to speak in Court about the fairness of the Settlement or the request for fees and costs. |

- These rights and options - **and the deadlines** to exercise them - are explained in this notice.

- The Court in charge of this case still has to decide whether to give final approval to the Settlement. The court order prohibiting the defendants from engaging in certain marketing and pricing practices will become effective only after the Court approves this Settlement and it becomes final. Likewise, free Department Store Cosmetics will be distributed only if the Court grants final approval to the Settlement and after any appeals are resolved.

- Please be patient. A Supplemental Notice will be published in approximately 50 newspapers in major metropolitan areas following settlement approval to alert class members when and where they may claim their settlement product. However, to assure that you will receive this information, you should provide your email and/or mailing address on the Settlement website or by calling the toll-free number in order to register to receive an email or postcard notification of the time and places of the settlement product give-away.

QUESTIONS? CALL 1-800-___-____, TOLL-FREE, OR VISIT THE REST OF THE SETTLEMENT WEBSITE

## WHAT IS THIS NOTICE ABOUT?

1.    Why has this notice been issued?

You have a right to know about a proposed Settlement of this class action lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement.

This notice is being made available to everyone who purchased Department Store Cosmetics manufactured, distributed and/or sold by the Manufacturer Defendants or Department Store Defendants listed in paragraphs 6 and 7 below from May 29, 1994 through July 16, 2003. A more detailed description of the persons benefited by this Settlement is contained in the section below entitled "Who is in the Settlement?".

This notice explains the lawsuit, the Settlement, your legal rights, what benefits are obtained and who is eligible for and how to get the free products to be distributed to Class Members.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is known as Azizian, et al. v. Federated Department Stores, Inc., et al. Case No. 3:03CV03359. The people who brought the case are called plaintiffs, and the companies they sued are called defendants.

2.    What is the lawsuit about?

A Settlement has been proposed in a class action lawsuit that alleges that certain manufacturers of Department Store Cosmetics and certain department stores that sell those products engaged in unlawful conduct in violation of the antitrust laws in connection with the pricing of those products.

The Settlement does not mean that the defendants admit that they have done anything wrong or illegal or that the Court has found that defendants violated the law. Indeed, defendants deny any wrongdoing or illegal conduct.

3.    Why is this a class action?

In a class action, one or more person(s), called the Class Representative(s), sue on behalf of a group of people who have similar claims – the Class Members. One Court then resolves the issues for all Class Members, except for those who exclude themselves from the Class. U.S. District Court Judge Armstrong is in charge of this class action.

4.    Why is there a Settlement?

Although the Court has not decided whether the claims in this lawsuit are correct, both sides have agreed to a Settlement. That way, both sides are able to avoid the risks and costs of a trial, the case can be resolved and the benefits of the Settlement can be made available to the Class Members. The Class Representatives and their attorneys think that the proposed Settlement is fair to the Class Members and the parties in the case and think that the terms of the Settlement are a reasonable and adequate resolution of this matter.

## WHO IS INCLUDED IN THE SETTLEMENT?

5. How do I know if I am a Class Member?

You are a member of the class if you are currently a resident of the United States who purchased Department Store Cosmetics in the United States during the period May 29, 1994 through July 16, 2003, which products were made, distributed and/or sold by the Manufacturer Defendants or Department Store Defendants listed below. You are not a member of the class, even though you bought the covered products during the relevant time period, if you are an employee, officer, director, agent or attorney of any Defendant, or the judge presiding over this matter or a member of each such person's immediate family. You do not need to do anything at this time if you want to remain a Class Member.

6. Which cosmetics and fragrance manufacturers are defendants in this case (the "Manufacturer Defendants")?

Boucheron (USA) Ltd., Chanel, Inc., Christian Dior Perfumes, Inc., Clarins U.S.A., Inc., Conopco, Inc., The Estée Lauder Companies Inc., Guerlain, Inc., L'Oréal USA, Inc. (formerly known as Cosmair, Inc.) and Parfums Givenchy, Inc.

The brand names of the products manufactured, distributed and/or sold by these Manufacturer Defendants include:

Boucheron, Sonia Rykiel, Christian Lacroix, Paul Smith, Issey Miyake, Jean Paul Gaultier; Chanel Colour, Precision Skincare, Chanel No. 1 Collection, Chanel Le Corps Actif, Allure, Chanel No. 5, Chanel No. 19, Chanel No. 22, Coco, Coco Mademoiselle, Chance, Allure for Men, Platinum Egoiste, Cristalle, Egoiste, Pour Monsieur, Technique Pour Homme, Anateus Pour Homme; Christian Dior Perfumes; Clarins, Thierry Mugler, Azzaro Paris; Calvin Klein, Obsession, Eternity, Escape, CK One, CK Be, Calvin Klein Color, Contradiction, Truth Calvin Klein, Calvin, Crave, Latitude Longitude, BCBGirls, Vera Wang, Chloe, Narcisse, Karl Lagerfeld, Lagerfeld Classic, Lagerfeld Man, Lagerfeld Woman, Lagerfeld Jako, KL, Photo, Sun Moon Stars,

Cerruti (or Nino Cerruti), Cerruti 1881, Cerruti Image, Cerruti 1881 Amber, Valentino, Very Valentino, Valentino Gold, Vendetta, Elizabeth Arden, 5th Avenue, Blue Grass, Red Door, Sunflowers, True Love, Elizabeth Taylor Black Pearls, Elizabeth Taylor Passion, White Diamonds, Jean Louis Scherrer, Indian Nights/Nuits Indiennes, Visible Difference, Ceramides, Millennium; Estée Lauder, Aramis, Clinique Laboratories, Inc., Prescriptives, Origins Natural Resources, M.A.C., La Mer, Bobby Brown Cosmetics, Tommy Hilfiger Toiletries, Donna Karan Cosmetics, Aveda, Stila Cosmetics, Jo Malone, Kate Spade Beauty, Laboratoires Darphin, Michael Kors Fragrances; Guerlain; Biotherm, Helena Rubenstein, Kiehl's Since 1851, Lancôme, Shu Uemura, the Designer Fragrances, including Cacharelle, Giorgio Armani, Guy Laroche, Paloma Picasso, and Ralph Lauren; and Parfums Givenchy.

7. Which department stores/retailers are defendants in this case (the "Department Store Defendants")?

Dillard's, Inc., Federated Department Stores, Inc., Gottschalks Inc., The May Department Stores Company, The Neiman Marcus Group, Inc., Nordstrom, Inc., Saks Incorporated and Target Corporation.

The names of the Department Store Defendants' stores include:

Dillard's, Maison Blanche, Gayfers, J.B. White, Castner Knott, Bacons, McAlpin's, Lion, Root's, The Jones Store Company, Joslins, Hennessy's, de Lendrecie's, Glass Block; Macy's East, Jordan Marsh, Macy's West, Bullock's, Rich's, Lazarus, Goldsmith's, Burdines, Bloomingdale's, The Bon Marche, Stern's, Broadway, Emporium, Weinstock's, Abraham & Strauss; Gottschalks, Gottschalks Inc. Harris-Gottschalks; Filene's, Kaufmann's, Lord & Taylor, Hecht's, Strawbridge's, Famous-Barr, The Jones Store, Foley's, Robinsons-May, Meier & Frank; Neiman Marcus, Bergdorf Goodman, Neiman Marcus Direct, Neiman Marcus Online; Nordstrom, Nordstrom Rack, Façonnable; Saks Fifth Avenue, Parisian, Proffitt's, McRae's, Younkers, Herberger's, Carson Pirie Scott, Bergner's, Boston Store; Hudson's, Dayton's, Marshall Field's and Target.

8. What if I still do not know whether I am included in the proposed Settlement class?

If you are still not sure whether you are included in the class, call 1-800-___-____ or write to:

Cosmetics Antitrust Litigation Settlement Administrator
[address]
[city], [state] [zip].

## THE SETTLEMENT BENEFITS - WHAT YOU GET

9.    What does the Settlement provide?

Defendants have agreed to:

(a)    Enter into a court order that prohibits them from engaging in certain marketing practices, including agreements to fix, establish, control or maintain the retail price at which any department store may offer for sale or sell any Department Store Cosmetics;

(b)    Give to Class Members, free of any charge, Department Store Cosmetics having a total retail value of $175 million;

(c)    Pay, on behalf of the Class, plaintiffs' attorneys' fees and expenses in an amount to be determined by the Court, up to a maximum of $24 million. Any fees and costs that may be awarded by the Court shall not reduce the value of the cosmetics and fragrance products to be distributed to the Class members; and

(d)    Pay all the expenses of notifying the class about, and administering all aspects of, this Settlement, and distributing the free cosmetics and fragrance products.

10.    Will I receive anything from the Settlement?

If you are a current resident of the United States and you purchased Department Store Cosmetics in the United States during the period May 29, 1994 through July 16, 2003, which cosmetics were manufactured, distributed and/or sold by one of the Manufacturer Defendants or Department Store Defendants, you will be eligible to receive (subject to the cap set forth in paragraph 9(b) of this notice) on a "first-come, first-served" basis, free Department Store Cosmetics, with an approximate retail value of $18 to $25 per unit, that were manufactured and/or sold by one of the Manufacturer Defendants. You will not be required to purchase anything to get your free Department Store Cosmetics products. You will be able to request the free Department Store Cosmetics products at stores owned by the Department Store Defendants. A Supplemental Notice will be published in approximately 50 newspapers in major metropolitan areas following settlement approval to alert class members when and where they may claim their settlement product. However, to assure that you will receive this information, you should provide your email and/or mailing address on the Settlement website or by calling the toll-free number in order to register to receive an email or postcard notification of the time and places of the settlement product give-away

3rd Floor. At this hearing, Judge Armstrong will consider whether the Settlement is fair, reasonable and adequate and the amount of attorneys' fees and costs to be awarded. If there are any objections, the Court will consider them. After the hearing, the Court will issue its ruling. We do not know how long this process will take.

18. Do I have to come to the hearing?

No. Plaintiffs' Counsel will answer any questions the Court may have. However, you may come, at your own expense. If you sent a written objection, you do not have to come to Court to talk about it. As long as you properly submitted your written objection, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

19. May I speak at the hearing?

You will not be heard unless you have submitted your comments or objections as provided in Paragraph 15, above, and have stated in your submission that you wish to be heard.

You cannot speak at the hearing if you exclude yourself.

IF YOU TAKE NO ACTION

20. What happens if I do nothing at all?

If you take no action, your rights will be affected. You will be bound by the terms of the Settlement and you will be agreeing to a release of the claims which are contained in the Settlement Agreement.

21. What is the Release of Claims?

The Release of Claims in the Settlement Agreement describes the legal claims against the Defendants you have given up by staying in the Class (i.e., if you do not exclude yourself as described in Paragraph 11, above). The Released Claims include all claims, demands, causes of action, whether class, individual or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and Attorneys' Fees, known or unknown, suspected or unsuspected, in law or equity, that could have been asserted against any of the Defendants or any of their related parties arising out of conduct from May 29, 1994 through July 16, 2003 by any Defendant concerning the pricing, marketing, distribution, promotion, advertising or sale of Department Store Cosmetic Products, and which arise under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing or trade practice law, or other similar law or regulation or common law. Released Claims do not include any other claim(s) that a Plaintiff or member of the Settlement

Class may have against one or more of the Defendants; for example, a personal injury or a product defect claim is not released. Released Claims also do not include any claim(s) that any member of the Settlement Class may have against any other manufacturer or retailer of Department Store Cosmetic Products other than the Settling Defendants.

## GETTING MORE INFORMATION

22.    Are there more details about the Settlement?

This notice merely summarizes the proposed Settlement. There are many more details in the Settlement Agreement.

23.    How do I get more information about the Settlement?

You can get a copy of the Settlement Agreement on the Settlement website, www._____, or by calling 1-800-___-_____, toll-free, or by writing to Cosmetics Antitrust Litigation Settlement Administrator.

EXHIBIT G

# LIST OF PUBLICATIONS

Exhibit G to Settlement Agreement

**Magazines:**

Parade

USA Weekend[1]

Better Homes & Gardens

People

Reader's Digest

TV Guide

Newsweek

Cosmopolitan

In-Style

Redbook

**Newspapers:**

| City | Newspaper |
|------|-----------|
| Atlanta | Journal Constitution |
| Baltimore | Sun |
| Boston | Globe |
| | Herald |
| Chicago | Sun Times |
| | Tribune |
| Cleveland | Plain Dealer |
| Dallas-Ft. Worth | Star Telegram |
| | Morning News |
| Denver | Post |
| Detroit | Free Press |
| Houston | Chronicle |
| Indianapolis | Star News |

---

[1] The Parade and USA Weekend magazines each appear in hundreds of newspapers nationwide. A list of the newspapers in which Parade and USA Weekend appear is attached to Exhibit G.

| Los Angeles | Newspaper Group |
| | Times |
| Miami-Ft. Lauderdale | Miami Herald |
| | Fort Lauderdale Sun Sentinel |
| Minneapolis-St. Paul | Minneapolis Star Tribune |
| | Saint Paul Pioneer Press |
| New York | Newark Star Ledger |
| | Daily News |
| | Post |
| | Times |
| Orlando-Daytona Beach-Melbourne | Orlando Sentinel |
| Orange County | Register |
| Philadelphia | Inquirer |
| Phoenix | Arizona Republic |
| Pittsburgh | Post-Gazette |
| Portland | Oregonian |
| Sacramento-Stockton-Modesto | Sacramento Bee |
| Seattle-Tacoma | Seattle Times/Post Intelligencer |
| San Francisco-Oakland-San Jose | Alameda Newspaper Group |
| | Contra Costa Newspaper Group |
| | San Francisco Chronicle |
| | San Jose Mercury News |
| St. Louis | Post-Dispatch |
| Tampa-St. Petersburg | Tampa Tribune |
| | Saint Petersburg Times |
| Washington | Washington Post |

## PARADE and USA WEEKEND Publications (sorted by state)

| STATE | COUNTY | NEWSPAPER |
|---|---|---|
| Alabama | Mobile | Mobile Register |
| | Anniston | The Anniston Star |
| | Birmingham | The Birmingham News |
| | Talladega | The Daily Home |
| | Gadsden | The Gadsden Times |
| | Huntsville | The Huntsville Times |
| | Alexander City | The Outlook |
| | Tuscaloosa | The Tuscaloosa News |
| | Florence/Sheffield | Times Daily |
| | Jasper | Daily Mountain Eagle |
| | Opelika | Opelika-Auburn News |
| | Decatur | The Decatur Daily |
| | Dothan | The Dothan Eagle |
| | Gadsden | The Gadsden Times |
| | Montgomery | The Montgomery Advertiser |
| | Selma | The Selma Times-Journal |
| Alaska | Anchorage | Anchorage Daily News |
| | Fairbanks | Fairbanks Daily News-Miner |
| Arizona | Tucson | Arizona Daily Star |
| | Flagstaff | Arizona Daily Sun |
| | Yuma | The Sun |
| | Mesa/Tempe | The Tribune |
| | Tucson | Arizona Daily Star |
| | Casa Grande | Casa Grande Dispatch |
| | Sun City | Daily News-Sun |
| | Bullhead City | Mohave Valley Daily News |
| | Sierra Vista | Sierra Vista Herald |
| | Phoenix | The Arizona Republic |
| | Prescott | The Daily Courier |
| | Douglas | The Daily Dispatch |
| | Kingman | The Kingman Daily Miner |
| | Lake Havasu City | Today's News-Herald |
| Arkansas | Little Rock | Arkansas Democrat Gazette |
| | Bentonville | Benton County Daily Record |
| | Fayetteville | Northwest Arkansas Times |
| | Blytheville | Blytheville Courier News |
| | El Dorado | El Dorado News-Times |
| | Harrison | Harrison Daily Times |
| | Conway | Log Cabin Democrat |
| | Pine Bluff | Pine Bluff Commercial |
| | Fort Smith | Southwest Times Record |
| | Mountain Home | The Baxter Bulletin |
| | Benton | The Benton Courier |

| STATE | COUNTY | NEWSPAPER |
|---|---|---|
| | Russellville | The Courier |
| | Searcy | The Daily Citizen |
| | Jonesboro | The Jonesboro Sun |
| | Springdale | The Morning News |
| | Paragould | The Paragould Daily Press |
| | Hot Springs | The Sentinel-Record |
| California | Los Angeles | Los Angeles Times |
| | Monterey | Monterey County/The Herald |
| | Oceanside/Escondido | North County Times |
| | Redding | Record Searchlight |
| | San Francisco | San Francisco Chronicle |
| | San Jose | San Jose Mercury News |
| | Bakersfield | The Bakersfield Californian |
| | Fresno | The Fresno Bee |
| | Modesto | The Modesto Bee |
| | Santa Ana | The Orange County Register |
| | Santa Rosa | The Press Democrat |
| | Riverside | The Press-Enterprise |
| | Stockton | The Record |
| | Sacramento | The Sacramento Bee |
| | San Diego | The San Diego Union-Tribune |
| | Walnut Creek | The Sunday Times |
| | San Luis Obispo | The Tribune |
| | Ventura | Ventura County Star |
| | Palmdale | Antelope Valley Press |
| | Marysville | Appeal-Democrat |
| | Vallejo | Benecia Herald |
| | Benicia | Benicia Herald |
| | Chico | Chico Enterprise-Record |
| | Red Bluff | Daily News |
| | Woodland Hills | Daily News |
| | Fairfield | Daily Republic |
| | Barstow | Desert Dispatch |
| | El Centro | Imperial Valley Press |
| | Ontario | Inland Valley Daily Bulletin |
| | Lakeport | Lake County Record-Bee |
| | Lodi | Lodi News-Sentinel |
| | Madera | Madera Tribune |
| | Marin County | Marin County Rafael |
| | Merced | Merced Sun-Star |
| | Oroville | Mercury-Register |
| | Santa Barbara | News-Press |
| | Victorville | Press-Dispatch |
| | Porterville | Recorder |

| STATE | COUNTY | NEWSPAPER |
|---|---|---|
| | Watsonville | Register-Pajaronian |
| | San Bernardino | San Bernardino County Sun |
| | San Gabriel | San Gabriel Valley Tribune |
| | San Mateo | San Mateo County Times |
| | Santa Cruz | Santa Cruz County Sentinel |
| | Santa Maria | Santa Maria Times |
| | San Francisco | Sunday SF Chronicle |
| | *Fremont* | *The Argus* |
| | Auburn | The Auburn Journal |
| | Salinas | The Californian |
| | Torrance | The Daily Breeze |
| | Woodland | The Daily Democrat |
| | Hayward | The Daily Review |
| | Davis | The Davis Enterprise |
| | Palm Springs | The Desert Sun |
| | Hanford | *The Hanford Sentinel* |
| | Lompoc | The Lompoc Record |
| | Napa | The Napa Valley Register |
| | Oakland | The Oakland Tribune |
| | Santa Rosa | The Press Democrat |
| | *Redlands* | *The Redlands Facts* |
| | Sacramento | The Sacramento Bee |
| | Eureka | Times-Standard |
| | Pleasanton | Tri-Valley Herald |
| | Tulare | Tulare Advance-Register |
| | Turlock | Turlock Journal |
| | Ukiah | Ukiah Daily Journal |
| | Visalia | Visalia Times-Delta |
| Colorado | Glenwood Springs | *Glenwood Springs Post Independent* |
| | Boulder | Sunday Camera |
| | Grand Junction | The Daily Sentinel |
| | Denver | The Denver Post & Rocky Mountain News |
| | *Colorado Springs* | *The Gazette* |
| | Pueblo | The Sunday Chieftain |
| | Durango | Durango Herald |
| | Fort Collins | Fort Collins Coloradoan |
| | Greeley | Greeley Tribune |
| | Denver | The Denver Post |
| | Montrose | The Montrose Daily Press |
| Connecticut | Stamford | The Advocate and Greenwich Time |
| | New London | *The Day* |
| | Hartford | The Hartford Courant |
| | Danbury | The News-Times |

| STATE | COUNTY | NEWSPAPER |
|---|---|---|
| | Waterbury | The Sunday Republican |
| | Bridgeport | Connecticut Post |
| | Manchester | Journal Inquirer |
| | New Haven | New Haven Register |
| | Norwich | Norwich Bulletin |
| | Meriden | Record-Journal |
| | New Britain | The Herald Press |
| | Norwalk | The Hour |
| | Torrington | The Register Citizen |
| Delaware | Dover | State News Sunday |
| | Wilmington | The News Journal |
| District of Columbia | Washington | The Washington Post |
| | Washington, DC | The Washington Times |
| Florida | Miami(EL) | El Nuevo Herald |
| | Sarasota | Herald Tribune |
| | Lake City | Lake City Reporter |
| | Naples | Naples Daily News |
| | Ft. Walton Beach | Northwest Florida Daily News |
| | Orlando | Orlando Sentinel |
| | St. Petersburg | St. Petersburg Times |
| | Ocala | Star-Banner |
| | Tallahassee | Tallahassee Democrat |
| | Gainesville | The Gainesville Sun |
| | Miami | The Herald |
| | Lakeland | The Ledger |
| | Stuart | The News |
| | West Palm Beach | The Palm Beach Post |
| | Tampa | The Tampa Tribune |
| | Boca Raton | Boca Raton News |
| | Bradenton | Bradenton Herald |
| | Crystal River | Citrus County Chronicle |
| | Daytona Beach | Daytona Beach News-Journal |
| | Melbourne | Florida Today |
| | Brooksville | Hernando Today |
| | Sebring | Highlands Today |
| | Marianna | Jackson County Floridian |
| | Winter Haven | News Chief |
| | Fort Myers | News-Press |
| | Pensacola | Pensacola News Journal |
| | Charlotte Harbor | Sun Herald |
| | Fort Lauderdale | Sun-Sentinel |
| | Leesburg | The Daily Commercial |
| | Jacksonville | The Florida Times Union |
| | Key West | The Key West Citizen |

| STATE | COUNTY | NEWSPAPER |
|---|---|---|
| | Panama City | The News Herald |
| | St. Augustine | The St. Augustine Record |
| Georgia | Columbus | Ledger-Enquirer |
| | Statesboro | Statesboro Herald |
| | Atlanta | The Atlanta Journal-Constitution |
| | Macon | The Macon |
| | Americus | Americus Times-Recorder |
| | Athens | Athens Herald Banner |
| | Brunswick | Brunswick News |
| | Canton | Cherokee Tribune |
| | Jonesboro | Clayton News |
| | Cordele | Cordele Dispatch |
| | Douglasville | Douglas County Sentinel |
| | Griffin | Griffin Daily News |
| | Lawrenceville | Gwinnett Daily Post |
| | LaGrange | LaGrange Daily News |
| | Marietta | Marietta Daily Journal |
| | Rome | Rome News-Tribune |
| | Savannah | Savannah Morning News |
| | Statesboro | Statesboro Herald |
| | Albany | The Albany Herald |
| | Augusta | The Augusta Chronicle |
| | Dublin | The Courier Herald |
| | Dalton | The Daily Citizen-News |
| | Cartersville | The Daily Tribune News |
| | Moultrie | The Observer |
| | Conyers | The Rockdale Citizen |
| | Warner Robins | The Sunday Sun |
| | Tifton | The Tifton Gazette |
| | Gainesville | The Times |
| | Newnan | The Times-Herald |
| | Milledgeville | The Union-Recorder |
| | Valdosta | The Valdosta Daily Times |
| | Thomasville | Thomasville Times-Enterprise |
| | Carrollton | Times-Georgian |
| Hawaii | Honolulu | Star-Bulletin |
| | Wailuku | The Maui News |
| | Hilo | Hawaii Tribune-Herald |
| | Lihue | The Garden Island |
| | Honolulu | The Honolulu Advertiser |
| | Kailua-Kona | West Hawaii Today |
| Idaho | Nampa/Caldwell | Idaho Press-Tribune |
| | Pocatello | Idaho State Journal |
| | Lewiston/Clarkson | Lewiston Morning Tribune |

| STATE | COUNTY | NEWSPAPER |
|---|---|---|
| | Idaho Falls | Post Register |
| | Twin Falls | The Times-News |
| | Coeur d'Alene | North Idaho Sunday |
| | Boise | The Idaho Statesman |
| Illinois | Belleville | Belleville News-Democrat |
| | Chicago | Chicago Tribune |
| | Danville | Commercial-News |
| | Decatur | Herald & Review |
| | Peoria | Journal Star |
| | Centralia | Morning Sentinel |
| | Carbondale | Southern Illinoisan |
| | Freeport | The Journal-Standard |
| | Champaign/Urbana | The News-Gazette |
| | Bloomington | The Pantagraph |
| | Quincy | The Quincy Herald-Whig |
| | Springfield | The State Journal-Register |
| | Benton | Benton News |
| | Chicago | Chicago Sun-Times |
| | DeKalb | Daily Chronicle |
| | Tinley Park | Daily Southtown |
| | Tinley Park | Daily Southtown |
| | Du Quoin | Du Quoin Call |
| | Eldorado | Eldorado Daily Journal |
| | Jacksonville | Jacksonville Journal-Courier |
| | Macomb | Macomb Journal |
| | La Salle | News-Tribune |
| | Mount Vernon | Register-News |
| | Rockford | Rockford Register Star |
| | Aurora | The Beacon News |
| | Elgin | The Courier News |
| | West Frankfort | The Daily American |
| | Sterling | The Daily Gazette |
| | Arlington Heights | The Daily Herald |
| | Kankakee | The Daily Journal |
| | Pontiac | The Daily Leader |
| | Harrisburg | The Daily Register |
| | Moline | The Dispatch |
| | Joliet | The Herald News |
| | Marion | The Marion Daily Republican |
| | Waukegan | The News Sun |
| | Crystal Lake | The Northwest Herald |
| | Galesburg | The Register-Mail |
| | Rock Island | The Rock Island Argus |
| | Alton | The Telegraph |

| STATE | COUNTY | NEWSPAPER |
|---|---|---|
| Indiana | Evansville | Evansville Courier & Press |
| | Bloomington/Bedford | Hoosier Times |
| | Kokomo | Kokomo Tribune |
| | Logansport | Pharos-Tribune |
| | South Bend | South Bend Tribune |
| | Anderson | The Herald Bulletin |
| | Fort Wayne | The Journal Gazette |
| | Munster/Lake Co/Valp | The Times |
| | New Albany | The Tribune |
| | Terre Haute | Tribune-Star |
| | Greencastle | Banner-Graphic |
| | Marion | Chronicle-Tribune |
| | *Franklin* | *Daily Journal* |
| | Noblesville | Daily Ledger |
| | Greenfield | Daily Reporter |
| | Decatur | Decatur Daily Democrat |
| | Lafayette | Journal and Courier |
| | Crawfordsville | Journal Review . |
| | Monticello | Monticello Herald Journal |
| | Bluffton | News-Banner |
| | Richmond | Palladium-Item |
| | New Castle | The Courier Times |
| | Elkhart | The Elkhart Truth |
| | Auburn | The Evening Star |
| | Indianapolis | The Indianapolis Star |
| | *Kendallville* | *The Kendallville News-Sun* |
| | Michigan City | The News Dispatch |
| | Fort Wayne | The News-Sentinel |
| | Peru | The Peru Tribune |
| | Columbia City | The Post & Mail |
| | Columbus | The Republic |
| | Shelbyville | The Shelbyville News |
| | Muncie | The Star Press |
| | Frankfort | The Times |
| | Seymour | The Tribune |
| | Vincennes | Vincennes Sun Commercial |
| | Wabash | Wabash Plain Dealer |
| Iowa | Mason City | Globe Gazette |
| | *Davenport* | *Quad-City Times* |
| | Cedar Rapids | The Gazette |
| | Burlington | The Hawk Eye |
| | Ford Dodge | The Messenger |
| | Ames | The Tribune |
| | Marshalltown | Times-Republican |

9

| STATE | COUNTY | NEWSPAPER |
|---|---|---|
| | Waterloo | Waterloo Cedar Falls Courier |
| | Clinton | Clinton Herald |
| | Iowa City | Iowa City Press-Citizen |
| | Sioux City | Sioux City Journal |
| | Dubuque | Telegraph Herald |
| | Council Bluffs | The Daily Nonpareil |
| | Des Moines | The Des Moines Register |
| Kansas | Manhattan | Manhattan Mercury |
| | Wichita | The Wichita Eagle |
| | Arkansas City | Arkansas City Traveler |
| | Dodge City | Dodge City Daily Globe |
| | Garden City | Garden City Telegram |
| | Lawrence | Journal-World |
| | Kansas City | Kansas City Kansan |
| | Hutchinson | The Hutchinson News |
| | Leavenworth | The Leavenworth Times |
| | Pittsburgh | The Morning Sun |
| | Newton | The Newton Kansan |
| | Olathe | The Olathe Daily News |
| | Salina | The Salina Journal |
| | Topeka | The Topeka Capital Journal |
| Kentucky | Somerset | Commonwealth Journal |
| | Bowling Green | Daily News |
| | Glasgow | Glasgow Daily Times |
| | Lexington | Lexington Herald-Leader |
| | Owensboro | Messenger-Inquirer |
| | Elizabethtown | The News Enterprise |
| | Ashland | The Sunday Independent |
| | Hopkinsville | Kentucky New Era |
| | Louisville | The Courier-Journal |
| | Henderson | The Gleaner |
| | Madisonville | The Messenger |
| | Paducah | The Paducah Sun |
| | Richmond | The Richmond Register |
| Louisiana | Lake Charles | American Press |
| | Baton Rouge | Baton Rouge Sunday Advocate |
| | Houma | The Courier |
| | Ruston | The Ruston Daily Leader |
| | New Orleans | The Times-Picayune |
| | Alexandria | Alexandria Town Talk |
| | Bogalusa | Daily News |
| | Lafayette | The Daily Advertiser |
| | New Iberia | The Daily Iberian |
| | Hammond | The Daily Star |

| STATE | COUNTY | NEWSPAPER |
|---|---|---|
| | Opelousas | The Daily World |
| | Monroe | The News-Star |
| | Shreveport | The Times |
| Maine | Portland | Maine Sunday Telegram |
| | Bangor | Bangor Daily News |
| | Waterville | Central Maine Morning Sentinel |
| | Biddeford | Journal-Tribune |
| | Augusta | Kennebec Journal |
| | Lewiston | Sunday Sun-Journal |
| Maryland | Hagerstown | The Herald Mail |
| | Baltimore | The Sun |
| | Westminster | Carroll County Times |
| | Rockville | Montgomery Journal |
| | Annapolis | The Capital |
| | Cumberland | The Cumberland Times-News |
| | Salisbury | The Daily Times |
| | Frederick | The Frederick Post/The News |
| | Lanham | The Prince George's Journal |
| | Easton | The Sunday Star |
| Massachusetts | Boston | Boston Sunday Globe |
| | Hyannis, Cape Cod | Sunday Cape Cod Times |
| | Springfield | Sunday Republican |
| | New Bedford | Sunday Standard-Times |
| | Worcester | Sunday Telegram |
| | Boston | Boston Herald |
| | Northampton | Daily Hampshire Gazette |
| | Salem | Essex County Newspapers |
| | Beverly | Gloucester Times |
| | Framingham | Metro West Daily News |
| | North Adams | North Adams Transcript |
| | Fitchburg | Sentinel and Enterprise |
| | Taunton | Taunton Daily Gazette |
| | Pittsfield | The Birkshire Eagle |
| | Beverly | The Daily News of Newburyport |
| | Newburyport | The Daily News of Newburyport |
| | North Andover | The Eagle Tribune |
| | Lawrence | The Eagle-Tribune |
| | Brockton | The Enterprise |
| | Fall River | The Herald News |
| | Quincy | The Patriot Ledger |
| | Greenfield | The Recorder |
| | Attleboro | The Sun Chronicle |
| | Lowell | The Sunday Sun |
| Michigan | Kalamazoo | Kalamazoo Gazette |

| STATE | COUNTY | NEWSPAPER |
| --- | --- | --- |
| | Ann Arbor | The Ann Arbor News |
| | Bay City | The Bay City Times |
| | Muskegon | The Chronicle |
| | Royal Oak | The Daily Tribune |
| | Flint | The Flint Journal |
| | Grand Rapids | The Grand Rapids Press |
| | Jackson | The Jackson Citizen Patriot |
| | Mount Clemens | The Macomb Daily |
| | Marquette | The Mining Journal |
| | Monroe | The Monroe Sunday News |
| | Mount Pleasant | The Morning Sun |
| | Pontiac | The Oakland Press |
| | Saginaw | The Saginaw News |
| | Traverse City | Traverse City Record-Eagle |
| | Battle Creek | Battle Creek Inquirer |
| | Cadillac | Cadillac Evening News |
| | Hillsdale | Hillsdale Daily News |
| | Lansing | Lansing State Journal |
| | Midland | Midland Daily News |
| | Mount Pleasant | Morning Sun |
| | Petoskey | Petoskey News-Review |
| | Owosso | The Argus-Press |
| | Houghton | The Daily Mining Gazette |
| | Greenville | The Daily News |
| | Iron Mountain | The Daily News |
| | Escanaba | The Daily Press |
| | Adrian | The Daily Telegram |
| | Detroit | The Detroit News and Free Press |
| | Sault Ste Marie | The Evening News |
| | St. Joseph | The Herald-Palladium |
| | Holland | The Holland Sentinel |
| | Bad Axe | The Huron Daily Tribune |
| | Alpena | The News |
| | Port Huron | Times Herald |
| Minnesota | Albert Lea | Albert Lea Tribune |
| | Austin | Austin Daily Herald |
| | Duluth | Duluth News Tribune |
| | Faribault | Faribault Daily News |
| | Owatonna | Owatonna People's Press |
| | St. Paul | St. Paul Pioneer Press |
| | Mankato | The Free Press |
| | New Ulm | The Journal |
| | Bemidji | The Pioneer |
| | Winona | Winona Daily News |

| STATE | COUNTY | NEWSPAPER |
|-------|--------|-----------|
|  | Fergus Falls | Fergus Falls Daily Journal |
|  | Virginia | Mesabi Daily News |
|  | Rochester | Post-Bulletin |
|  | St. Cloud | St. Cloud Times |
|  | Minneapolis | Star Tribune |
|  | Brainerd | The Brainerd Daily Dispatch |
|  | Hibbing | The Daily Tribune |
| Mississippi | McComb | Enterprise-Journal |
|  | Laurel Ms | Laurel Leader-Call |
|  | Tupelo | Northeast Mississippi Daily Journal |
|  | Picayune | Picayune Item |
|  | Columbus | The Commercial Dispatch |
|  | Brookhaven | The Daily Leader |
|  | Greenwood | The Greenwood Commonwealth |
|  | Pascagoula | The Mississippi Press |
|  | Biloxi/Gulfport | The Sun Herald |
|  | Vicksburg | The Vicksburg Post |
|  | Greenville | Delta Democrat Times |
|  | Hattiesburg | Hattiesburg American |
|  | Jackson | The Clarion-Ledger |
|  | Corinth | The Daily Corinthian |
|  | Meridian | The Meridian Star |
|  | Natchez | The Natchez Democrat |
|  | Biloxi | The Sun Herald |
| Missouri | Columbia | Columbia Missourian |
|  | St. Joseph | St. Joseph News-Press |
|  | St. Louis | St. Louis Post-Dispatch |
|  | Joplin | The Joplin Globe |
|  | Kansas City | The Kansas City Star |
|  | Jefferson City | The Sunday News Tribune |
|  | Columbia | Columbia Daily Tribune |
|  | Poplar Bluff | Daily American Republic |
|  | Dexter | Daily Statesman |
|  | Hannibal | Hannibal Courier-Post |
|  | Cape Girardeau | Southeast Missourian |
|  | Springfield | Springfield News-Leader |
|  | Sikeston | Standard Democrat |
|  | Kennett | The Daily Dunklin Democrat |
|  | Park Hills | The Daily Journal |
|  | Independence | The Examiner |
|  | Sedalia | The Sedalia Democrat |
| Montana | Billings | Billings Gazette |
|  | Bozeman | Bozeman Daily Chronicle |
|  | Kalispell | Daily Inter Lake |

| STATE | COUNTY | NEWSPAPER |
|---|---|---|
| | Helena | Independent Record |
| | Missoula | Missoulian |
| | Butte | The Montana Standard |
| | Great Falls | Great Falls Tribune |
| Nebraska | Scottsbluff | Star-Herald |
| | Omaha | Sunday World Herald |
| | North Platte | The North Platte Telegraph |
| | Beatrice | Beatrice Daily Sun |
| | Columbus | Columbus Telegram |
| | Fremont | Fremont Tribune |
| | Grand Island | Grand Island Independent |
| | Lincoln | Lincoln Journal Star |
| | York | York News-Times |
| Nevada | Las Vegas | Las Vegas Review-Journal & Las Vegas Sun |
| | Carson City | Nevada Appeal |
| | Sparks | Sparks Tribune |
| | Las Vegas | Las Vegas Review-Journal |
| | Reno | Reno Gazette-Journal |
| New Hampshire | Portsmouth | Herald Sunday |
| | Manchester | New Hampshire Sunday News |
| | Concord | Concord Monitor |
| | Dover | Foster's Daily Democrat |
| | Keene | The Keene Sentinel |
| | Nashua | The Telegraph |
| | Lebanon Hanover | Valley News |
| New Jersey | Willingboro | Burlington County Times |
| | Newark | Sunday Star-Ledger |
| | Woodbury | The Gloucester County Times |
| | Bergen/Hackensack | The Record/Herald News |
| | Trenton | The Times |
| | Salem | Today's Sunbeam |
| | Neptune | Asbury Park Press |
| | Cherry Hill | Courier-Post |
| | Morristown | Daily Record |
| | East Brunswick | Home News Tribune |
| | Newton | New Jersey Herald |
| | Toms River | Ocean County Observer |
| | Bridgewater | The Courier-News |
| | Jersey City | The Jersey Journal |
| | Atlantic City | The Press of Atlantic City |
| | Trenton | The Trentonian |
| New Mexico | Alamogordo | Alamogordo Daily News |
| | Albuquerque | Albuquerque Journal |

| STATE | COUNTY | NEWSPAPER |
|---|---|---|
| | Clovis | Clovis News Journal |
| | Hobbs | Hobbs News-Sun |
| | Portales | Portales News-Tribune |
| | Santa Fe | The Santa Fe New Mexican |
| | Albuquerque | Albuquerque Journal |
| | Carlsbad | Carlsbad Current-Argus |
| | Farmington | Daily Times |
| | Gallup | Gallup Independent |
| | Las Cruces | Las Cruces Sun-News |
| | Roswell | Roswell Daily Record |
| New York | Canandaigua | Daily Messenger |
| | Geneva | Finger Lakes Sunday Times |
| | Newsday/Melville | Newsday |
| | Plattsburgh | Press-Republican |
| | Staten Island | Staten Island Sunday Advance |
| | Albany | Sunday Times Union |
| | Buffalo | The Buffalo News |
| | Auburn | The Citizen |
| | Oneonta | The Daily Star |
| | Syracuse | The Post-Standard |
| | Corning | The Sunday Leader |
| | Middletown | The Times Herald Record |
| | Kingston | Daily Freeman |
| | New York | New York Daily News |
| | Niagara Falls | Niagara Sunday |
| | Dunkirk | Observer |
| | Utica | Observer-Dispatch |
| | Jamestown | Post-Journal |
| | Poughkeepsie | Poughkeepsie Journal |
| | Binghamton | Press & Sun-Bulletin |
| | Rochester | Rochester Democrat & Chronicle |
| | Elmira | Star-Gazette |
| | Schenectady | The Daily Gazette |
| | Ithaca | The Ithaca Journal |
| | White Plains | The Journal News |
| | Oswego | The Palladium-Times |
| | Glens Falls | The Post-Star |
| | Troy | The Record |
| | Saratoga Springs | The Saratogian |
| | Olean | The Times Herald |
| | Watertown | Watertown Daily Times |
| North Carolina | Greensboro | News & Record |
| | Rocky Mount | Rocky Mount Telegram |
| | Wilmington | Sunday Star-News |

| STATE | COUNTY | NEWSPAPER |
|-------|--------|-----------|
| | Charlotte | The Charlotte Observer |
| | Elizabeth City | The Daily Advance |
| | Greenville | The Daily Reflector |
| | Fayetteville | The Fayetteville Observer |
| | Raleigh | The News & Observer |
| | Hendersonville | Times-News |
| | Winston-Salem | Winston-Salem Journal |
| | Asheville | Asheville Citizen-Times |
| | Henderson | Daily Dispatch |
| | Roanoke Rapids | Daily Herald |
| | Goldsboro | Goldsboro News-Argus |
| | High Point | High Point Enterprise |
| | Kannaplis | Independent Tribune |
| | Lenoir | Lenoir News-Topic |
| | Mount Airy | Mount Airy News |
| | Salisbury | Salisbury Post |
| | Statesville | Statesville Record & Landmark |
| | Forest City | The Daily Courier |
| | Eden | The Daily News |
| | Jacksonville | The Daily News |
| | Monroe | The Enquirer-Journal |
| | Kinston | The Free Press |
| | Gastonia | The Gaston Gazette |
| | Durham | The Herald-Sun |
| | Hickory | The Hickory Daily Record |
| | Morganton | The News-Herald |
| | Reidsville | The Reidsville Review |
| | Lumberton | The Robesonian |
| | Sanford | The Sanford Herald |
| | Shelby | The Shelby Star |
| | New Bern | The Sun Journal |
| | Wilson | The Wilson Daily Times |
| | Burlington | Times-News |
| | Washington | Washington Daily News |
| North Dakota | Minot | Minot Daily News |
| | Dickinson | The Dickinson Press |
| | Fargo | The Forum |
| | Grand Forks | Grand Forks Herald |
| | Bismarck | The Bismarck Tribune |
| | Wahpeton | The Daily News |
| Ohio | Akron | Akron Beacon Journal |
| | Dayton | Dayton Daily News |
| | Hamilton | Journal-News |
| | Portsmouth | Portsmouth Daily Times |

| STATE | COUNTY | NEWSPAPER |
|---|---|---|
| | Salem | Salem News |
| | Springfield | Springfield News-Sun |
| | East Liverpool | Sunday Review |
| | Toledo | The Blade |
| | Elyria | The Chronicle-Telegram |
| | Middletown | The Middletown Journal |
| | Cleveland | The Plain Dealer |
| | Cambridge | The Sunday Jeffersonian |
| | New Philadelphia | The Times Reporter |
| | Youngstown | The Vindicator |
| | Chillicothe | Chillicothe Gazette |
| | Greenville | Daily Advocate |
| | Steubenville | Herald-Star |
| | Lancaster | Lancaster Eagle-Gazette |
| | Lisbon | Morning Journal |
| | Mansfield | News Journal |
| | Port Clinton | News-Herald |
| | Norwalk | Norwalk Reflector |
| | Piqua | Piqua Daily Call |
| | Washington Court House | Record Herald |
| | Sandusky | Sandusky Register |
| | Gallipolis | Sunday Times-Sentinel |
| | Bucyrus | Telegraph-Forum |
| | Tiffin | The Advertiser-Tribune |
| | Newark | The Advocate |
| | Athens | The Athens Messenger |
| | Bryan | The Bryan Times |
| | Cincinnati | The Cincinnati Enquirer |
| | Columbus | The Columbus Dispatch |
| | Coshocton | The Coshocton Tribune |
| | Findlay | The Courier |
| | Defiance | The Crescent-News |
| | Wooster | The Daily Record |
| | Massillon | The Independent |
| | Ironton | The Ironton Tribune |
| | Hamilton | The Journal-News |
| | Lima | The Lima News |
| | Marietta | The Marietta Times |
| | Marion | The Marion Star |
| | Lorain | The Morning Journal |
| | Willoughby | The News-Herald |
| | Fremont | The News-Messenger |
| | Portsmouth | The Portsmouth Daily Times |
| | Canton | The Repository |

| STATE | COUNTY | NEWSPAPER |
|---|---|---|
| | Fostoria | The Review Times |
| | Martins Ferry | The Times Leader |
| | Dover-New Philadelphia | The Times Reporter |
| | Warren | The Tribune Chronicle |
| | Xenia | The Xenia Daily Gazette |
| | Zanesville | Times Recorder |
| Oklahoma | Oklahoma City | The Sunday Oklahoman |
| | Muskogee | Daily Phoenix & Times-Democrat |
| | Enid | Enid News & Eagle |
| | Bartlesville | Examiner-Enterprise |
| | McAlester | McAlester News-Capitol & Democrat |
| | Ardmore | The Daily Ardmoreite |
| | Stillwater | The News Press |
| | Norman | The Norman Transcript |
| | Shawnee | The Shawnee News-Star |
| | Lawton | The Sunday Constitution |
| | Tulsa | Tulsa World |
| Oregon | Ontario | Argus Observer |
| | Pendleton | East Oregonian |
| | Klamath Falls | Herald And News |
| | Medford | Mail Tribune |
| | Bend | The Bulletin |
| | Roseburg | The News-Review |
| | Eugene | The Register-Guard |
| | Portland | The Sunday Oregonian |
| | Albany | Mid Valley Sunday |
| | Salem | Statesman-Journal |
| | Coos Bay | The World |
| Pennsylvania | Levittown/Bristol | Bucks County Courier Times |
| | State College | Centre Daily Times |
| | Erie | Erie Times-News |
| | Uniontown | Herald-Standard |
| | Pittsburgh | Pittsburgh Post-Gazette |
| | Stroudsburg | Pocono Record |
| | Reading | Reading Eagle |
| | Lancaster | Sunday News |
| | Johnstown | Sunday Tribune-Democrat |
| | Sunbury | The Daily Item |
| | Doylestown | The Intelligencer Record |
| | Allentown | The Morning Call |
| | Harrisburg | The Patriot News |
| | Philadelphia | The Philadelphia Inquirer |
| | Towanda | The Sunday Review |
| | Scranton | The Sunday Times |

| STATE | COUNTY | NEWSPAPER |
|---|---|---|
| | Wilkes Barre | Times Leader |
| | Du Bois | Tri-County Sunday |
| | Williamsport | Williamsport Sun-Gazette |
| | Altoona | Altoona Mirror |
| | Beaver | Beaver County Times |
| | Butler | Butler Eagle |
| | Somerset | Daily American |
| | West Chester | Daily Local News |
| | Chester | Delaware County Daily Times |
| | New Castle | New Castle News |
| | Washington | Observer-Reporter |
| | Pottsville | Pottsville Republican |
| | Bloomsburg | Press Enterprise |
| | Chambersburg | Public Opinion |
| | Hazleton | Standard-Speaker |
| | Bradford | The Bradford Era |
| | Wilkes-Barre | The Citizens' Voice |
| | Lebanon | The Daily News |
| | McKeesport | The Daily News |
| | Hanover | The Evening Sun |
| | Easton | The Express-Times |
| | Sharon | The Herald |
| | Indiana | The Indiana Gazette |
| | Meadville | The Meadville Tribune |
| | Pottstown | The Mercury |
| | Phoenixville | The Phoenix |
| | Clearfield | The Progress |
| | Lansdale | The Reporter |
| | Carlisle | The Sentinel |
| | Lewiston | The Sentinel |
| | Norristown | The Times Herald |
| | York | The York Dispatch Sunday News |
| | Greensburg | Tribune-Review |
| | Pittsburgh | Tribune-Review |
| | Tarentum | Valley News Dispatch |
| | Warren | Warren Times-Observer |
| Rhode Island | Providence | The Providence Sunday Journal |
| | Woonsocket | The Call |
| | West Warwick | The Kent County Times |
| | Newport | The Newport Daily News |
| | Pawtucket | The Times |
| | Westerly | The Westerly Sun |
| South Carolina | Anderson | Anderson Independent-Mail |
| | Spartanburg | Herald-Journal |

| STATE | COUNTY | NEWSPAPER |
|---|---|---|
| | Beaufort | The Beaufort Gazette |
| | Greenwood | The Index-Journal |
| | Hilton Head Island | The Island Packet |
| | Sumter | The Item |
| | Charleston | The Post And Courier |
| | Columbia | The State |
| | Myrtle Beach Sc | The Sun News |
| | Aiken | Aiken Standard |
| | Florence | Florence Morning News |
| | Beaufort | The Beaufort Gazette |
| | Greenville | The Greenville News-Piedmont |
| | Rock Hill | The Herald |
| | Bluffton | The Island Packet |
| *South Dakota* | *Huron* | *Plainsman* |
| | Rapid City | Rapid City Journal |
| | Yankton Daily Press | 319 Walnut St. |
| | Aberdeen | Aberdeen American News |
| | Sioux Falls | Argus Leader |
| Tennessee | Chattanooga | Chattanooga Times/Chattanooga Free Press |
| | Morristown | Citizen Tribune |
| | Cookeville | Herald-Citizen |
| | Johnson City | Johnson City Press |
| | Murfreesboro | Sunday News Journal |
| | Memphis | The Commercial Appeal |
| | Newport | The Newport Plain Talk |
| | Knoxville | The News-Sentinel |
| | Cleveland | Cleveland Daily Banner |
| | Kingsport | Kingsport Times-News |
| | Dyersburg | State Gazette |
| | Columbia | The Daily Herald |
| | Athens | The Daily Post-Athenian |
| | Maryville | The Daily Times |
| | Jackson | The Jackson Sun |
| | Clarksville | The Leaf-Chronicle |
| | Sevierville | The Mountain Press |
| | Oak Ridge | The Oak Ridger |
| | Nashville | The Tennessean |
| Texas | Abilene | Abilene Reporter-News |
| | Austin | Austen American-Statesman |
| | Brownwood | Brownwood Bulletin |
| | Corpus Christi | Corpus Christi Caller Times |
| | Del Rio | Del Rio News-Herald |
| | Fort Worth | Ft. Worth Star-Telegram |

| STATE | COUNTY | NEWSPAPER |
|-------|--------|-----------|
| | Houston | Houston Chronicle |
| | Kerrville | Kerrville Daily Times |
| | Longview | Longview News Journal |
| | Odessa | Odessa American |
| | San Antonio | San Antonio Express-News |
| | San Angelo | Standard Times |
| | Temple | Temple Daily Telegram |
| | Beaumont | The Beaumont Enterprise |
| | Brownsville | The Brownsville Herald |
| | Nacogdoches | The Dailey Sentinel |
| | Dallas | The Dallas Morning News |
| | Denison | The Denison Daily Post |
| | Lufkin | The Lufkin Daily News |
| | Marshall | The Marshall News Messenger |
| | McAllen | The Monitor |
| | Paris | The Paris News |
| | Victoria | The Victoria Advocate |
| | Wichita Falls | Times Record News |
| | Harlingen | Valley Morning Star |
| | Waco | Waco Tribune-Herald |
| | Amarillo | Amarillo Sunday News-Globe |
| | Arlington | Arlington Morning News |
| | Athens | Athens Daily Review |
| | Conroe | Conroe Courier |
| | Corsicana | Corsicana Daily Sun |
| | Denton | Denton Record-Chronicle |
| | El Paso | El Paso Times |
| | Greenville | Greenville Herald-Banner |
| | Sherman | Herald Democrat |
| | Killeen | Killeen Daily Herald |
| | Laredo | Laredo Times |
| | Lubbock | Lubbock Avalanche-Journal |
| | Plainview | Plainview Daily Herald |
| | Plano | Plano Star Courier |
| | Port Arthur | Port Arthur News |
| | Texarkana | Texarkana Gazette |
| | Texas City | Texas City Sun |
| | Baytown | The Baytown Sun |
| | Bryan | The Bryan-College Station Eagle |
| | Clute | The Facts |
| | Galveston | The Galveston County Daily News |
| | Midland | The Midland Reporter-Telegram |
| | Orange | The Orange Leader |
| Utah | Salt Lake City | Desert News |

| STATE | COUNTY | NEWSPAPER |
|-------|--------|-----------|
| | Logan | The Herald Journal |
| | Salt Lake City | The Salt Lake Tribune |
| | Ogden | Standard-Examiner |
| | Provo | The Daily Herald |
| | St. George | The Daily Spectrum |
| Vermont | Rutland/Barre | The Sunday Rutland Herald/And The Sunday Times Arg |
| | Bennington | Bennington Banner |
| | Brattleboro | Brattleboro Reformer |
| | Burlington | The Burlington Free Press |
| Virginia | Newport News/Hampton | Daily Press |
| | Martinsville | Martinsville Bulletin |
| | Richmond | Richmond Times-Dispatch |
| | Petersburg | The Progress-Index |
| | Roanoke | The Roanoke Times |
| | Norfolk | The Virginian-Pilot |
| | Bristol | Bristol Herald Courier |
| | Culpeper | Culpeper Star-Exponent |
| | Danville | Danville Register & Bee |
| | Bellevue | Eastside Journal |
| | Port Angeles | Peninsula Daily News |
| | Woodbridge | Potomac News |
| | Mount Vernon | Skagit Valley Herald |
| | Kent | South County Journal |
| | Suffolk | Suffolk News-Herald |
| | Alexandria | The Alexandria Journal |
| | Bellingham | The Bellingham Herald |
| | Vancouver | The Columbian |
| | Staunton | The Daily News Leader |
| | Charlottesville | The Daily Progress |
| | Aberdeen | The Daily World |
| | Fairfax | The Fairfax Journal |
| | Fredericksburg | The Free Lance-Star |
| | Everett | The Herald |
| | Lynchburg | The News & Advance |
| | Tacoma | The News Tribune |
| | Waynesboro | The News Virginian |
| | Olympia | The Olympian |
| | Bremerton | The Sun |
| | Wenatchee | The Wenatchee World |
| | Winchester | The Winchester Star |
| | Walla Walla | Walla Walla Union-Bulletin |
| Washington | Longview | The Daily News |
| | Seattle | The Seattle Times Seattle Post- |

| STATE | COUNTY | NEWSPAPER |
|-------|--------|-----------|
| | | Intelligencer |
| | Spokane | The Spokesman-Review |
| | Pasco/Tri Cities | Tri-City Herald |
| | Yakima | Yakima Herald-Republic |
| West Virginia | Clarksburg | Sunday Exponent Telegram |
| | Charleston | Sunday Gazette-Mail |
| | Wheeling | Sunday News-Register |
| | Morgantown | The Dominion Post |
| | Martinsburg | The Journal |
| | Parkersburg | The Parkersburg News |
| | Fairmont | Times-West Virginian |
| | Williamson | Williamson Daily News |
| | Bluefield | Bluefield Daily Telegraph |
| | Charleston | Charleston Daily Mail |
| | Point Pleasant | Point Pleasant Register |
| | Huntington | The Herald-Dispatch |
| | Elkins | The Inter-Mountain |
| | Beckley | The Register-Herald |
| Wisconsin | Kenosha | Kenosha News |
| | La Crosse | La Crosse Tribune |
| | Milwaukee | Milwaukee Journal Sentinel |
| | Racine | The Journal Times |
| | Madison | Wisconsin State Journal |
| | Beaver Dam | Daily Citizen |
| | Green Bay | Green Bay Press-Gazette |
| | Manitowoc | Herald Times Reporter |
| | Eau Claire | Leader-Telegram |
| | Oshkosh | Oshkosh Northwestern |
| | Stevens Point | Post Crescent Central WI Sunday |
| | Rhinelander | The Daily News |
| | West Bend | The Daily News |
| | Superior | The Daily Telegram |
| | Janesville | The Janesville Gazette |
| | Monroe | The Monroe Times |
| | Appleton | The Post-Crescent |
| | Fond Du Lac | The Reporter |
| | Sheboygan | The Sheboygan Press |
| | Watertown | Watertown Daily Times |
| | Waukesha | Waukesha County Freeman |
| | Wausau | Wausau Daily Herald |
| Wyoming | Rock Springs | Daily Rocket-Miner |
| | Laramie | Laramie Daily Boomerang |

EXHIBIT H

GUIDO SAVERI (22349)
R. ALEXANDER SAVERI (173102)
LISA SAVERI (112043)
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111
Telephone: (415) 217-6810

WILLIAM BERNSTEIN (65200)
MICHELE C. JACKSON (90807)
LIEFF, CABRASER, HEIMANN & BERNSTEIN
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Fatemah Azizian, _et al.,_ | CIVIL NO. 3:03 CV-03359 SBA |
| Plaintiffs, | FINAL JUDGMENT |
| v. | |
| Federated Department Stores, Inc., _et al.,_ | |
| Defendants. | |

FINAL ORDER, JUDGMENT AND DECREE GRANTING FINAL APPROVAL TO THE CLASS ACTION SETTLEMENT WITH DEFENDANTS BOUCHERON (USA) LTD., CHANEL, INC., CHRISTIAN DIOR PERFUMES, INC., CLARINS U.S.A., INC., CONOPCO, INC., L'ORÉAL USA, INC. (FORMERLY KNOWN AS COSMAIR, INC.), THE ESTÉE LAUDER COMPANIES INC., GUERLAIN, INC., PARFUMS GIVENCHY, INC. (SOMETIMES COLLECTIVELY REFERRED TO HEREIN AS THE "MANUFACTURER DEFENDANTS"), DILLARD'S, INC., FEDERATED DEPARTMENT STORES, INC., GOTTSCHALKS INC., THE MAY DEPARTMENT STORES COMPANY, THE NEIMAN MARCUS GROUP, INC., NORDSTROM, INC., SAKS INCORPORATED AND TARGET CORPORATION (SOMETIMES COLLECTIVELY REFERRED TO HEREIN AS THE "DEPARTMENT STORE DEFENDANTS"), COLLECTIVELY REFERRED TO AS THE "SETTLING DEFENDANTS"

1   This matter is before this Court on the motion for final approval of this class action

2   settlement.

3       BY ORDER CONDITIONALLY CERTIFYING SETTLEMENT CLASS; GRANTING

4   MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; AND

5   SCHEDULING HEARING ON FINAL SETTLEMENT APPROVAL, dated [to be inserted],

6   2003 ("Preliminary Approval Order"), this Court conditionally certified the settlement class

7   herein and granted preliminary approval to the proposed settlement. This Court also ordered that

8   notice of the settlement be published to the class members in accordance with the Preliminary

9   Approval Order.

10      In compliance with that order, notice was published to the members of the class on [to be

11  inserted], 2003, and posted on a dedicated website on [to be inserted], 2003.

12      On [to be inserted], 2003, the parties appeared at the final approval and fairness hearing

13  represented by their respective attorneys of record. An opportunity to be heard was given to all

14  persons requesting to be heard. This Court presided at the final approval and fairness hearing.

15  This Court has reviewed and considered all of the pleadings filed in connection therewith, all of

16  the presentations and evidence submitted at the hearing in support of the settlement, and the

17  submissions and arguments of objectors.

18      The proposed settlement having been duly noticed, and having been fully considered by

19  the Court,

20  IT IS HEREBY ADJUDGED, ORDERED AND DECREED that:

21      1.     This Court has jurisdiction over the claims of the members of the class asserted in

22  this proceeding, personal jurisdiction over the settling parties (including all class members), and

23  subject matter jurisdiction to approve the settlement as set forth in the Settlement Agreement

24  previously filed with this Court.

25

26

27

28

FINAL JUDGMENT

EXHIBIT H

1  2.  The notice given to the members of the class was reasonably calculated under the

2 circumstances to apprise them of the pendency of this action, all material elements of the

3 proposed settlement, their opportunity to exclude themselves from, to object to, or to comment

4 on the settlement and to appear at the settlement hearing. The notice was reasonable and the best

5 notice practicable under the circumstances; was due, adequate and sufficient notice to all class

6 members; and complied fully with the laws of the United States and of the Federal Rules of Civil

7 Procedure, due process and any other applicable rules of court. A full opportunity has been

8 afforded to the members of the class to participate in this hearing, and all members of the class

9 and other persons wishing to be heard have been heard. Accordingly, the Court determines that

10 all members of the class who have not excluded themselves from this litigation, are bound by this

11 Judgment, Final Order and Decree.

12  3.  [No.] members of the class requested to be excluded from this settlement, and a

13 list of each such class member is attached hereto as Exhibit 1. These individuals are hereby

14 found to have properly excluded themselves from the Settlement Class and this Judgment, Final

15 Order and Decree shall not binding on them.

16  4.  On [to be inserted], 2003, this Court preliminarily approved certification of a

17 Settlement Class defined as:

18     All persons who currently reside in the United States and who
      purchased Department Store Cosmetic Products in the United
19     States, which products were manufactured, distributed and/or sold
      by the Manufacturer Defendants or Department Store Defendants,
20     at any time during the period May 29, 1994 through July 16, 2003
      (the "Class Period"). Excluded from this Settlement Class are all
21     employees, officers, directors or agents (including attorneys) of
      any defendant, as well as any judge, justice or judicial officer
22     presiding over this matter, and each such person's immediate
      family ("Settlement Class").

23

24

25

26

27

28

5. For purposes of this settlement, the term "Department Store Cosmetic Products" means the full range of high-end, "prestige" or specialty beauty and cosmetic products and product lines (whether established, discontinued or new) including, but not limited to, color products, treatments and fragrances which are or were manufactured, distributed and/or sold by the Manufacturer Defendants or Department Store Defendants under various brand names during the Class Period. Department Store Cosmetic Products are sold primarily through traditional department and/or specialty stores ("Retail Stores"), including such stores owned or operated by the Department Store Defendants, who, in turn, sell such products to the Plaintiffs and members of the Settlement Class. The term "Department Store Cosmetics" excludes products and product lines sold principally through mass distribution channels.

6. Class certification is an appropriate method for protecting the interests of the class members and resolving the common issues of fact and law arising out of the existence of the alleged violations of federal and state antitrust laws.

7. Rule 23(b)(3), Federal Rules of Civil Procedure, provides for class certification when there is an ascertainable class and a well-defined community of interest among class members.

8. The Court finds for the purposes of this settlement that: (i) the members of the class are so numerous that joinder would be impractical; (ii) there is a commonality of interests between the Plaintiffs and members of the class; (iii) there are questions of law and fact which are common to the class and those common questions predominate over individual questions; (iv) the Plaintiffs' claims are typical of the claims of the absent members of the class; and (v) Plaintiffs will fairly and adequately represent the interests of the absent members of the class.

9. The class meets the predominance and superiority requirements. Common issues of fact and law predominate, for the claims of members of the class all hinge on whether a conspiracy existed, and whether it resulted in supra-competitive prices for Department Store

1  Cosmetic Products. This class action is superior to individual actions because, given the

2  substantial costs associated with litigating an individual action and the relatively small amount of

3  recoverable damages per individual, the Settling Defendants would likely pay no damages absent

4  class treatment of the claims of the class members.

5      10.     Accordingly, pursuant to Rule 23(e), Federal Rules of Civil Procedure, this Court

6  *finds that the applicable requirements of Rule 23, Federal Rules of Civil Procedure, have been*

7  satisfied with respect to this settlement and makes final its conditional certification of the

8  Settlement Class (excluding those persons listed in Exhibit 1) for settlement purposes only.

9      11.     This Court hereby grants final approval to the settlement and finds that it is fair,

10  reasonable and adequate, and in the best interests of the class as a whole. [The objections which

11  have been filed have been considered by the Court and are overruled.]  The proposed settlement

12  is the product of arm's-length, serious, informed and non-collusive negotiations between

13  experienced and knowledgeable counsel who have actively prosecuted and defended this

14  litigation for over four (4) years.

15      12.     The stipulation regarding conduct relief, attached hereto as Exhibit 2 and

16  incorporated herein, is hereby approved and shall be filed with the clerk forthwith.

17      13.     In addition to the effect of any final judgment entered in accordance with this

18  Agreement, upon this settlement becoming final, Settling Defendants and their present and

19  former parents, subsidiaries, divisions, affiliates, officers, directors, employees, agents and any

20  of their legal representatives (and the present and former parents, subsidiaries, divisions,

21  affiliates, officers, directors, employees, agents and legal representatives, and the predecessors,

22  heirs, executors, administrators, successors and assigns of each of the foregoing) shall be

23  released and forever discharged from all manner of claims, demands, actions, suits, causes of

24  action, whether class, individual or otherwise in nature, damages whenever incurred, liabilities of

25  any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or

26

27

28

EXHIBIT H

1   unknown, suspected or unsuspected, in law or equity, that any member of the Settlement Class
2   who has not timely excluded herself/himself from this action (including any of their past, present
3   or future agents, legal representatives, trustees, parents, partners, estates, heirs, executors and
4   administrators), and whether or not they object to the settlement, ever had, now has, or hereafter
5   can, shall or may have, arising out of conduct during the Class Period by any Settling Defendant
6   concerning the pricing, marketing, distribution, promotion or advertising or sale of Department
7   Store Cosmetic Products, and which arise under any federal or state antitrust, unfair competition,
8   unfair practices, price discrimination, unitary pricing or trade practice law, or other similar law
9   or regulation or common law, including, without limitation, the Sherman Antitrust Act, 15
10  U.S.C. § 1, *et seq.*, the Cartwright Act, Cal. Bus. & Prof. Code § 16720, *et seq.*, the Unfair
11  Practices Act, Cal. Bus. & Prof. Code § 17000, *et seq.*, and the Unfair Competition Act, Cal.
12  Bus. & Prof. Code § 17200, *et seq.*, as well as any other federal or state law, statute or regulation
13  concerning any of the aforementioned subjects. Nothing in the Settlement Agreement or in this
14  Order is intended to release any other claim(s) that a Plaintiff or member of the Settlement Class
15  may have against one or more of the Settling Defendants. For example, a personal injury or a
16  product defect claim is not released. Nothing in the Settlement Agreement or in this Order is
17  intended to release any claim(s) that any member of the Settlement Class may have against any
18  other manufacturer or retailer of Department Store Cosmetic Products other than the Settling
19  Defendants. Each member of the Settlement Class (including his or her past, present or future
20  agents, legal representatives, trustees, parents, estates, heirs, executors and administrators)
21  hereby covenants and agrees that he or she shall not hereafter assert any claim, demand, action,
22  suit or cause of action, whether class or individual, against any Settling Defendant based, in
23  whole or in part, upon any released claim.
24      14.     Plaintiffs and Settlement Class members who have not excluded themselves from
25  this litigation expressly waive the provisions of Section 1542 of the California Code of Civil
26
27

28

Procedure (and all other like provisions of law) to the full extent that these provisions may be applicable to this release. California Code of Civil Procedure, Section 1542, provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each member of the Settlement Class may hereafter discover facts other than or different from those which she or he knows or believes to be true with respect to the claims being released pursuant to the provisions of Paragraph 13. Nevertheless, each member of the Settlement Class hereby expressly waives and fully, finally and forever settles and releases, upon this settlement becoming final, any known or unknown, suspected or unsuspected, contingent or noncontingent claim with respect to the subject matter of the claims being released pursuant to the provisions of Paragraph 13, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

15. Without affecting the finality of this Judgment, Final Order and Decree, the parties, including the Settling Defendants and the members of the class, have submitted to the exclusive and continuing jurisdiction of this Court, and this Court reserves exclusive and continuing jurisdiction over the Settlement Agreement, including the administration and consummation of the settlement.

16. The Settlement Agreement is expressly approved and incorporated herein by this reference, and has the full force and effect of an order of this Court. The parties shall consummate the Settlement Agreement according to its terms.

17. Under Rule 54, Federal Rules of Civil Procedure, the Court, in the interests of justice, there being no just reason for delay, expressly directs the Clerk of the Court to enter this Judgment, Final Order and Decree, and hereby decrees that upon entry it be deemed as a final judgment and appealable with respect to all claims by members of the class against defendants

EXHIBIT H

1    Boucheron (USA) Ltd., Chanel, Inc., Christian Dior Perfumes, Inc., Clarins U.S.A., Inc.,

2    Conopco, Inc., L'Oréal USA, Inc. (formerly known as Cosmair, Inc.), The Estée Lauder

3    Companies Inc., Guerlain, Inc., Parfums Givenchy, Inc., Dillard's, Inc., Federated Department

4    Stores, Inc., Gottschalks Inc., The May Department Stores Company, The Neiman Marcus

5    Group, Inc., Nordstrom, Inc., Saks Incorporated and Target Corporation, in accordance with the

6    terms of the Settlement Agreement.

7         18.    This Court directs the Clerk of the Court to maintain the record of those members

8    of the Class who have timely excluded themselves from the Class for a period of five (5) years,

9    and to provide a certified copy of such records to the Settling Defendants, at their expense.

10        19.    As to each Settling Defendant, the class actions are dismissed with prejudice and,

11   except as provided herein or in the Settlement Agreement, without costs.

12

13   Dated: _____ ____, 2003

14                                          The Honorable Saundra Brown Armstrong
                                            United States District Court Judge
15                                          United States District Court for the
                                            Northern District of California
16                                          United States District Court Judge
                                            United States District Court for the
17                                          Northern District of California

18

19

20

21

22

23

24

25

26

27
                                    8                                    EXHIBIT H
28                             FINAL JUDGMENT