United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FATEMAH AZIZIAN, et al.,

Plaintiffs.

v.

FEDERATED DEPARTMENT STORES, et al.,

Defendants.

No. C 03-3359 SBA

CLASS ACTION

**ORDER**

[Docket No. 511]

This matter comes before the Court on Plaintiffs' Motion to Require Objectors Grace Wright and Kamela Wilkinson to Post a Bond on Appeal ("Motion for Bond on Appeal"). Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Bond on Appeal [Docket No. 511].

**BACKGROUND**

In 1998, Class Plaintiffs ("Plaintiffs") filed a number of class action complaints on behalf of persons who purchased Department Store Cosmetics Products ("DSCPs")[1] in California. The original complaints were filed in various California Superior Courts and were ultimately coordinated and assigned by the Judicial Council to the Honorable M. Lynn Duryee, Judge of the Superior Court in and for the County of Marin. Plaintiffs alleged

[1] DSCPs are high-end, prestige or specialty beauty and cosmetic products and product lines (including color products, treatment and fragrances) sold by the "Manufacturer Defendants" under various brand names from May 29, 1994 through July 16, 2003. These products were sold primarily through traditional department and/or specialty stores and not through mass distribution channels. The "Manufacturer Defendants" are: The Estée Lauder Companies Inc., L'Oréal USA, Inc., Conopco, Inc., Christian Dior Perfumes, Inc., Guerlain, Inc., Parfums Givenchy, Inc., Chanel, Inc., Boucheron (USA) Ltd., and Clarins U.S.A., Inc.

United States District Court
For the Northern District of California

that certain "Department Store Defendants"[2] engaged in anti-competitive practices that discouraged the discounting of DSCPs in the United States. On May 17, 2000, after extensive discovery, Plaintiffs filed an Amended Consolidated Complaint, which added the Manufacturer Defendants. The Amended Consolidated Complaint alleged pervasive joint practices of the Department Store Defendants and the Manufacturer Defendants to discourage discounting of DSCPs.

On January 5, 2001, Judge Duryee ordered the parties to mediation, and they retained the services of former Judge Weinstein and Catherine Yanni of JAMS to mediate settlement negotiations. The parties eventually reached settlement. In order to obtain nationwide settlement and relief, however, a federal complaint was filed in this Court on July 18, 2003.

Class Counsel promptly sought preliminary approval of their proposed settlement, which this Court granted on November 21, 2003. Nationwide notice was subsequently disseminated to the putative class members. Only sixty-one persons purported to opt out of the class; of these, one was a duplicate, a second was untimely, and a third was later withdrawn. Only twenty-six unique objections made on behalf of a total of seventy-three persons were submitted to the Court.

Hearings regarding final approval of the settlement were conducted on January 11, 2005 and March 8, 2005.

On March 30, 2005, the Court entered the Final Judgment Granting Final Approval to the Class Action Settlement with All Defendants and Awarding Attorneys' Fees and Costs.

On April 29, 2005, Objectors Grace Wright and Kamela Wilkinson each filed a Notice of Appeal.

On July 6, 2005, Plaintiffs filed the instant Motion to Require Objectors Grace Wright and Kamela Wilkinson to Post a Bond on Appeal ("Motion for Bond on Appeal").

## ANALYSIS

### A. Motion for Bond on Appeal

Federal Rule of Appellate Procedure 7 provides the district court with the authority to require an appellant to file a bond or "provide other security in any form and amount necessary to ensure payment of costs

---

[2] The "Department Store Defendants" are: Federated Department Stores, Inc., The Neiman-Marcus Group, Inc., Nordstrom, Inc., The May Department Stores Company, Saks Incorporated, Gottschalks Inc., Target Corporation, and Dillard's, Inc.

on appeal." Fed. R. App. P. 7. In the instant Motion, Plaintiffs request that the Court order Objectors Grace Wright ("Wright") and Kamela Wilkinson ("Wilkinson") to post a bond in the amount of $12,833,501.80 in order to "safeguard" the Stipulated Judgment from the potential "harm" that may result from Wright and Wilkinson's appeals, which Plaintiffs view as frivolous. Plaintiffs' proposed bond is comprised of the following amounts:

| | |
|---|---|
| 1. All costs on appeal recoverable under Fed. R. App. P. 39: | $6,540.00 |
| 2. Plaintiffs' estimated attorney's fees on appeal: | $300,000.00 |
| 3. The estimated interest on the $24 million attorney's fees award: | $178,457.68 |
| 4. "Delay" damages: | $5,931,753.22 |
| SUBTOTAL: | $6,416,750.90 |

Since Plaintiffs allege that the instant appeals lack merit, they contend that the $6,412,750.90 sub-total may be doubled pursuant to Fed. R. App. P. 38 to reach a total amount of $12,833,501.80.

**1. Reasonableness of the Cost Bond**

As a preliminary matter, the Court notes that while the decision to impose a cost bond is within the sound discretion of the Court, the Court may not order an appellant to post a bond in an amount beyond what is necessary to ensure adequate security if to do so would effectively preclude pursuit of an appeal. *See Lindsey v. Normet*, 405 U.S. 56, 77-79 (1972). Although this issue has not been squarely addressed in the Ninth Circuit, other circuit courts have held that Rule 7 was not intended to be used as a means of discouraging appeals, even when those appeals are perceived to be frivolous. *In re American President Lines, Inc.*, 779 F.2d 714, 717 (D.C. Cir. 1985); *see also Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974) (bond may not be imposed for the purpose of discouraging exercise of the right to appeal). So long as the bond is appropriately tailored to cover only those costs that may be incurred during an appeal, however, the imposition of a bond does not offend principles of Equal Protection or Due Process. *Adsani v. Miller*, 139 F.3d 67,77 (2nd Cir. 1998).

This Court must therefore carefully scrutinize Plaintiffs' request and determine whether they have adequately established that the bond they seek to have imposed is sufficient, but not greater than necessary, to ensure payment of costs relating to Wilkinson and Wright's appeals.

**2. Rule 39 Costs**

The first component that Plaintiffs contend should be included in the bond is $6,540.00 for certain filing and copying costs that will be incurred by Plaintiffs during the appeal. In determining the appropriate amount for the bond, Plaintiffs rely on Fed. R. App. P. 39, which sets forth the types of costs that may be assessed against the losing party on an appeal. These costs include: (1) the filing fee; (2) the preparation and transmission of the record;(3) the reporter's transcript; and (4) copying costs relating to the reproduction and service of the briefs or appendices. Fed. R. App. P. 39(c) and (e). Specifically, Plaintiffs allege that, pursuant to Ninth Circuit Rule 39-1.2, if found to be the prevailing party, they will be entitled to obtain reproduction costs for eighteen copies of each brief, plus two copies for each party to be served. They also contend that they will be entitled to obtain reproduction costs for six copies of the excerpts of record plus one copy for each party required to be served. Plaintiffs estimate that they can recover up to 10 cents per page, and that they will have to produce twenty-one copies of a 3,000 page record. Plaintiffs thus conclude that their total potential costs amount to $6,540.00.

The costs set forth in Fed. R. App. P. 39 are regularly included in Rule 7 cost bonds, *see Downey v. United Guaranty Corp.*, 2001 U.S. Dist. LEXIS 24918, * 6 (D. Ga. 2001), and the parties do not dispute that such costs may be included in the instant bond. However, both Wright and Wilkinson contend that Plaintiffs' estimated costs are grossly inflated. For example, Wilkinson argues that Plaintiffs' $6,540.00 estimate is unjustified because she and Wright, as the appellants, are primarily responsible for preparing and filing the record excerpts and for paying for the transcripts. Thus, Wilkinson contends that Plaintiffs will only incur costs in the amount of $240. Wright concurs with Wilkinson, and similarly argues that the amount of the bond should be no more than $240. Plaintiffs do not provide a meaningful response to Wright and Wilkinson's arguments, but nevertheless insist that Wright and Wilkinson's estimate is too low. Plaintiffs also cite to *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 124, 128 n. 6 (S.D.N.Y. 1999), in which the District Court for the Southern District of New York found a $1,500 cost bond to be appropriate after noting that the appellees would likely incur substantial costs in printing and serving the opposition brief in light of the fact that the service list included over one hundred law firms.

Wright and Wilkinson are correct that the appellant bears primary responsibility for producing both the

record and transcript on appeal, and therefore the Court concludes that Plaintiffs' $6,540.00 estimate, which is based almost entirely on copying costs relating to the 3,000 page record, is too high. Given that the service list in this action is fairly extensive, however, it is not inconceivable that the copying costs relating to the briefing on the appeal will be commensurate with the costs identified in *NASDAQ*. Accordingly, the Court finds that it is reasonable and appropriate to include in the bond costs of $1,000 for each appeal.

**3. Attorney's Fees**

The second component that Plaintiffs seek to include in the cost bond is the attorney's fees they will incur on the appeal, which Plaintiffs contend will amount to $300,000. As both parties concede, the Ninth Circuit has yet to address the question of whether a Rule 7 cost bond may properly include attorney's fees. However, other circuit courts considering this issue have found that attorney's fees may be included in a cost bond under two circumstances: (1) where the underlying statute provides for such an award; or (2) where it is likely that the Court of Appeals will determine that the appeal is frivolous pursuant to Fed. R. App. P. 38. *Downey v. Mortgage Guaranty Ins. Co.*, 313 F.3d 1341, 1342 (11th Cir. 2002) (approving of the inclusion of attorney's fees in a cost bond when the underlying statute provides for such recovery); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812 (6th Cir. 2004) (same); *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987) (approving cost bond that included attorney's fees potentially recoverable under Fed. R. App. P. 38).

Plaintiffs first argue that the underlying statute in the instant case provides them with the right to recover attorney's fees. Both parties concede that the applicable underlying statute here is the Clayton Act, 15 U.S.C. § 15, which permits recovery in an antitrust suit for "the cost of suit, including a reasonable attorney's fee." *Id.* Wright and Wilkinson argue, however, that when a plaintiff settles his antitrust claims prior to judgment, he is not entitled to attorney's fees under the Clayton Act. *See, e.g.,* Wilkinson Opp. at 12 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468-9 (2nd Cir. 1974) (discussing, in dicta, that the correct basis for awarding attorney's fees in settled actions brought under the Clayton Act is the equitable fund theory doctrine). Whether Wright and Wilkinson are correct on this point is unclear. As Defendants point out, this is not necessarily a settled question, as district courts within the Second Circuit and other jurisdictions have declined to follow *City of Detroit* and have held that attorney's fees pursuant to the Clayton Act may be included in a cost bond even when a judgment is reached through settlement. *See NASDAQ*, 187 F.R.D. at 128; *see also*

*In re Compact Disc Minimum Advertised Price Antitrust Litigation*, 2003 WL 22417252, * 1-2 (D. Me. 2003) ("*In re CDs*"). Further, even Wilkinson concedes that 15 U.S.C. § 15 also provides for the recovery of attorney's fees relating to work performed on an appeal. *See Perkins v. Standard Oil Co.*, 399 U.S. 222, 223 (1970). Accordingly, Plaintiffs have shown that there is some support for their contention that the Clayton Act entitles them to include attorney's fees in the cost bond.

Plaintiffs are also arguably entitled to attorney's fees if they can prove that the Court of Appeals is likely to find that the instant appeals are frivolous. *Sckolnick*, 820 F.2d at 15. In this regard, Plaintiffs vigorously contend that such a finding is likely, and in support of their argument, note that: (1) the issues Wright and Wilkinson raise on appeal were already considered, and rejected, by this Court during extensive settlement approval hearings; (2) Wright and Wilkinson are "spoilers" who decided not to opt out of the settlement solely to maximize the amount of money they and their counsel can obtain individually; and (3) Wright and Wilkinson are represented by counsel who routinely raise objections to class action settlements in the hopes of getting "paid off by class counsel."

Given that attorney's fees may be available under the Clayton Act if Plaintiffs successfully resolve the instant appeals in their favor, and given the procedural history of this case, including this Court's and the Special Master's exhaustive review of the settlement agreement and all objections thereto, and the fact that Wright and Wilkinson are the only persons out of the entire class to file appeals, a cost bond including a modest amount of attorney's fees appears to be warranted here. However, Plaintiffs' contention that they will incur approximately $300,000 in attorney's fees, based on their estimate that Plaintiffs' counsel will be forced to spend over 750 hours on the appeals, is completely inconsistent with Plaintiffs' assertion that the appeals are frivolous. If the appeals are truly frivolous, then, presumably, Plaintiffs should be able to dispose of the appeals fairly quickly. The Court therefore cannot fathom how an estimate of 750 hours is reasonable or justified. Accordingly, the Court hereby finds that the bond shall include costs in the amount of $40,000, based on an estimate of 100 attorney hours at Plaintiffs' counsel's blended rate of $400.00 per hour.[3]

---

[3]The Court further finds that Wilkinson and Wright shall be jointly and severally responsible for paying this cost. This is due to the fact that Plaintiffs have not provided the Court with documentation sufficient to establish that the legal issues raised in Wilkinson and Wright's appeals are not so closely related that there will not will be substantial duplication in the legal briefing and analysis necessary to oppose the appeals.

United States District Court
For the Northern District of California

**4. Interest on Attorney's Fees Award in the Stipulated Judgment**

Next, Plaintiffs seek to include in the bond the amount of post-judgment interest that could be earned on the award of attorney's fees provided for under the Stipulated Judgment, which Plaintiffs contend will amount to $178,457.68.[4] Plaintiffs argue that, should they prevail on the appeal, they will be entitled to recover this amount pursuant to Fed. R. App. P. 37.[5] This argument is without merit.

First and foremost, Plaintiffs have not provided the Court with any authority in support of their contention that Fed. R. App. P. 37 confers on them the right to recover interest from *Wright* and *Wilkinson*, who were not the defendants in the underlying suit. Further, as Wright points out, in the instant case, the terms of the Settlement Agreement explicitly provide that the settlement shall only become final upon the occurrence of certain events, including the "expiration for the time for appeal . . . or, if appealed, the [affirmance of the] final judgment . . . in its entirety by the Federal Court of last resort to which such appeal has been taken and [when] such affirmance has become no longer subject to further appeal or review." Settlement Agreement, ¶ 15(b). Given that Plaintiffs anticipated that the $24 million attorney's fees award would not be available until the judgment is affirmed on appeal, Plaintiffs have not persuasively shown that they are entitled to include post-judgment interest in the cost bond.

**5. "Delay" Damages**

The fourth component that Plaintiffs contend should be included in the cost bond is $5,931,753.22 for certain "delay" damages allegedly caused by the appeals. The $5,931,753.22 amount is comprised solely of the interest that would be earned on the $175 million Settlement Fund over a fourteen-month period. Again, given the fact that the Settlement Agreement specifically contemplates the possibility of delay due to appeal, this argument is without merit. Further, the authorities upon which Plaintiffs rely for their contention that a bond imposed under Rule 7 can secure damages caused by delay incident to an appeal are either inapposite or unpersuasive. *See* Pl's Mot. at 8 (citing *NASDAQ*, 187 F.R.D. at 128 and *Livingston v. Toyota Motor Sales*

---

[4] This is based on the differential between the statutory interest rate of 3.38% and the interest actually being earned on the $24 million sum, which is 2.75%, and Plaintiffs' estimate that the appeal will take fourteen months to resolve.

[5] Fed. R. App. P. 37 states that "if a money judgment in a civil case is affirmed, whatever interest is allowed by law is payable from the date when the district court's judgment was entered." *Id.*

*USA, Inc.*, 1997 U.S. Dist. LEXIS 24087, * 12 (N. D. Cal. 1997)); *see also* Reply at 8 (citing *In re CDs*, 2003 WL 22417252, * 1).

While it is true that, in *NASDAQ*, the court imposed a bond that included projected costs to the settlement trust resulting from the delay incident to the appeal, in support of this conclusion, the *NASDAQ* court relied exclusively on cases dealing with supersedeas bonds.[6] 187 F.R.D. at 128-29 (citing *Morgan Guaranty Trust Co. of N.Y. v. Republic of Palau*, 702 F. Supp. 60, 65 (S.D.N.Y. 1988) (stating that a "supersedeas bond . . . provides a guarantee that the appellee can recover . . . damages caused by the delay.") and *Omaha Hotel Co. v. Kountze*, 107 U.S. 378, 392 (1883) (discussing measure of damages recoverable on "an appeal bond given for supersedeas of execution on a decree of foreclosure.")). As such, *NASDAQ* is of questionable precedential value on this pont. *See Adsani*, 139 F.3d at 70 n. 2 (noting that cost bonds and supersedeas bonds are separate and distinct and "should not be confused.").

Moreover, even if the court in *NASDAQ* were correct that such "damages" may be included in a Rule 7 cost bond, in *NASDAQ*, the plaintiffs were able to identify specific administrative expenses that were caused by the delay. *Id.* at 128 (finding that proposed bond was supported by showing of increased administrative expenses, including "expenses necessarily incurred in extending the leases on office space and the leases on equipment, extending insurance and website maintenance, picking up mail and answering inquiries about the status of claims . . ., and rehiring and retraining of the claims administration staff."); *see also In re CDs*, 2003 WL 22417252, * 1 (finding that bond was supported by showing of certain administrative costs, including "storage and distribution of the *cy pres* CDs, fees to the bank administering the settlement fund and tracking down claimants who move . . . ."). Plaintiffs have made so such showing here. *NASDAQ* is therefore inapposite and does not provide persuasive support for Plaintiffs' proposed bond.

Similarly, the *Livingston* court appears to have construed the appellee's motion as brought under *either* Rule 7, which covers costs bonds, *or* Rule 8, which covers supersedeas bonds. *Livingston*, 1997 U.S. Dist. LEXIS 24087, * 12. As such, *Livingston* does compel the conclusion that a Rule 7 cost bond may include delay damages. Further, like *NASDAQ*, *Livingston* is also distinguishable from the instant case. For example,

---

[6] A "supersedeas bond" is a bond imposed pursuant to Fed. R. App. P. 8. A court may require a party to post a supersedeas bond only after the party seeking relief from the final judgment moves to stay the judgment pending appeal. *See* Fed. R. App. P. 8(a)(1) and (2).

United States District Court
For the Northern District of California

in *Livingston*, the parties did not expressly contemplate a delay in the enforcement of the judgment due to the appeal. Further, in *Livingston*, the plaintiffs provided the court with specific evidence that the value of the judgment, *i.e.* the consumer coupons, would actually *decline* in the event of a delay. *Id.* at *13. Again, Plaintiffs have not produced similar evidence in support of their own proposed bond.

Given the paucity of authority supporting Plaintiffs' position, a bond in excess of $5 million is simply unwarranted and unsupportable. Accordingly, the Court hereby declines to impose a bond that includes Plaintiffs' purported "delay" costs.

**6. "Double Costs" Under Rule 38**

Last, Plaintiffs seek to have the total amount of the cost bond doubled pursuant to Fed. R. App. P. 38 due to their contention that Wright and Wilkinson's appeals are frivolous. While Fed. R. App. P. 38 provides the *Court of Appeals* with the authority to "award just damages and [to] single or double costs to the appellee" upon a finding that the appeal is frivolous, Plaintiffs have not identified any circuit court authorities that hold that a Rule 7 bond may be doubled at the outset of the appeal by the *district court*. Moreover, as Wilkinson correctly notes, courts interpreting Fed. R. App. P. 38 have determined that attorney's fees are considered"damages" under the rule and are not included in the costs that may be doubled. *Cronin v. Town of Amerbury*, 81 F.3d 257, 261 (1st Cir. 1996). Since the possibility that Plaintiffs may recover attorney's fees pursuant to Fed. R. App. 38 has already factored into the cost of the bond, the Court finds that there is simply no justification for including this same amount twice.

///

///

**CONCLUSION**

IT IS HEREBY ORDERED THAT Plaintiffs' Motion for Bond on Appeal [Docket No. 511] is GRANTED IN PART AND DENIED IN PART. The Motion is DENIED with respect to Plaintiffs' request that a bond of $12,833,501.80 be imposed on Grace Wright and Kamela Wilkinson. The Motion is GRANTED in that Grace Wright and Kamela Wilkinson shall be jointly and severally responsible for posting a bond in the amount of $42,000 (the "Bond"). The Bond shall be posted within fourteen (14) days of the date of this Order.

IT IS SO ORDERED.

Dated: 8-9-05

SAUNDRA BROWN ARMSTRONG
United States District Judge