IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FATEMAH AZIZIAN, et al., | No. C 03-3359 SBA |
| Plaintiffs. | <u>CLASS ACTION</u> |
| v. | **ORDER** |
| FEDERATED DEPARTMENT STORES, et al., | [Docket Nos. 566, 572, 589] |
| Defendants. | |

_____

This matter comes before the Court on Objector Kamela Wilkinson's Motion for Protective Order [Docket No. 566], Class Plaintiffs' Motion to Take Deposition [Docket No. 572], and Objector Kamela Wilkinson's Objections to Special Master's Order Granting Discovery Pursuant to Federal Rule of Civil Procedure 27(b) [Docket No. 589]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds these matters appropriate for resolution without a hearing. The Court hereby SUSTAINS Objector Kamela Wilkinson's Objections to the Special Master's Order Granting Discovery Pursuant to Federal Rule of Civil Procedure 27(b), GRANTS Objector Wilkinson's Motion for Protective Order, and DENIES Class Plaintiff's Motion for Deposition.

**BACKGROUND**

In 1998, Class Plaintiffs ("Plaintiffs") filed a number of class action complaints on behalf of persons who purchased Department Store Cosmetics Products ("DSCPs")[1] in California. The original complaints were filed in various California Superior Courts and were ultimately coordinated and assigned by the Judicial Council to

---

[1] DSCPs are high-end, prestige or specialty beauty and cosmetic products and product lines (including color products, treatment and fragrances) sold by the "Manufacturer Defendants" under various brand names from May 29, 1994 through July 16, 2003. These products were sold primarily through traditional department and/or specialty stores and not through mass distribution channels. The "Manufacturer Defendants" are: The Estée Lauder Companies Inc., L'Oréal USA, Inc., Conopco, Inc., Christian Dior Perfumes, Inc., Guerlain, Inc., Parfums Givenchy, Inc., Chanel, Inc., Boucheron (USA) Ltd., and Clarins U.S.A., Inc.

the Honorable M. Lynn Duryee, Judge of the Superior Court in and for the County of Marin. Plaintiffs alleged that certain "Department Store Defendants"[2] engaged in anti-competitive practices that discouraged the discounting of DSCPs in the United States. On May 17, 2000, after extensive discovery, Plaintiffs filed an Amended Consolidated Complaint, which added the Manufacturer Defendants. The Amended Consolidated Complaint alleged pervasive joint practices of the Department Store Defendants and the Manufacturer Defendants to discourage discounting of DSCPs.

On January 5, 2001, Judge Duryee ordered the parties to mediation, and they retained the services of former Judge Weinstein and Catherine Yanni of JAMS to mediate settlement negotiations. The parties eventually reached settlement. In order to obtain nationwide settlement and relief, however, a federal complaint was filed in this Court on July 18, 2003.

Class Counsel promptly sought preliminary approval of their proposed settlement, which this Court granted on November 21, 2003. Nationwide notice was subsequently disseminated to the putative class members. Only sixty-one persons purported to opt out of the class; of these, one was a duplicate, a second was untimely, and a third was later withdrawn. Only twenty-six unique objections made on behalf of a total of seventy-three persons were submitted to the Court.

Hearings regarding final approval of the settlement were conducted on January 11, 2005 and March 8, 2005.

On March 30, 2005, the Court entered the Final Judgment Granting Final Approval to the Class Action Settlement with All Defendants and Awarding Attorneys' Fees and Costs.

On April 29, 2005, Objectors Grace Wright and Kamela Wilkinson each filed a Notice of Appeal.

On July 6, 2005, Plaintiffs filed a Motion to Require Objectors Grace Wright and Kamela Wilkinson to Post a Bond on Appeal ("Motion for Bond on Appeal").

On August 9, 2005, the Court issued an Order directing Objectors Grace Wright ("Wright") and Kamela Wilkinson ("Wilkinson") to post a bond in the amount of $42,000 on or before August 23, 2005. Pursuant to the Court's Order, Wright and Wilkinson were jointly and severally responsible for posting the

---

[2] The "Department Store Defendants" are: Federated Department Stores, Inc., The Neiman-Marcus Group, Inc., Nordstrom, Inc., The May Department Stores Company, Saks Incorporated, Gottschalks Inc., Target Corporation, and Dillard's, Inc.

bond.

On August 19, 2005, Wilkinson appealed the Court's August 9, 2005 Order. Also on that date, Wilkinson tendered to the Clerk of Court a check in the amount of $2,000.00. The Clerk rejected the check. Neither Wilkinson nor Wright paid the bond. Instead, on August 23, 2005, the date the bond was due, Objector Wilkinson filed a Motion for an Order Directing the Clerk to Accept $2,000.00 ("Motion to Accept $2,000 Bond").[3]

On August 31, 2005, Plaintiffs sent letters to Wilkinson and Wilkinson's attorneys, William Abbott ("Abbott"), L. Richard LeClair, III ("LeClair"), and Kent Brooks ("Brooks") requesting available dates for their depositions. The following day, Plaintiffs issued subpoenas to depose Wilkinson, Abbott, LeClair, and Brooks. Wilkinson, Abbott, LeClair, and Brooks were also directed to produce certain documents at their depositions.

On September 19, 2005, Wilkinson filed a Motion for Protective Order, seeking to prevent the depositions of Wilkinson, Abbott, LeClair, and Brooks. On September 22, 2005, the Court referred the Motion for Protective Order to the Special Master. On September 23, 2005, Plaintiffs filed a Motion for Leave to Take Depositions Under Fed. R. Civ. P. 27(b) ("Motion to Take Depositions").

On September 29, 2005, Wilkinson filed a Motion for Leave to File a Motion for Reconsideration of the Court's September 22, 2005 Order. Wilkinson's Motion for Leave to File a Motion for Reconsideration was denied with prejudice on October 4, 2005.

On October 5, 2005, the Special Master held a hearing on the Motion for Protective Order and Motion to Take Depositions.

On October 6, 2005, the Special Master issued an Order Granting Discovery Pursuant to Fed. R. Civ. P. 27(b) ("Special Master's Order Granting Discovery").

On October 14, 2005, this Court issued an Order denying Wilkinson's Motion for Clerk to Accept $2,000 Bond.

---

[3]On or about August 22, 2005, Wright also filed several motions concerning the bond and requesting a stay of the August 9, 2005 Order. Also on that date, Wright appealed the August 9, 2005 Order. Pursuant to a settlement between the parties and Wright, Wright subsequently withdrew her motions and her appeals on August 25, 2005.

On October 26, 2005, Wilkinson filed the instant Objection to Special Master's Order Granting Discovery.

## ANALYSIS

At the October 5, 2005 hearing, after considering the briefs submitted by Wilkinson and Plaintiffs on the Motion for Protective Order and Motion to Take Depositions, and after considering the arguments of counsel, Special Master Charles B. Renfrew issued a ruling allowing Plaintiffs to take the depositions of Wilkinson, Abbott, LeClair, and Brooks. The Special Master also ruled that Wilkinson, Abbott, LeClair, and Brooks would be required to produce the documents identified in Plaintiffs' subpoenas unless Wilkinson can show that the subpoenas are overbroad or seek irrelevant, immaterial, or unnecessary information. The Special Master's rulings were based on his finding that, given the sizable nature of the class, the sophisticated nature of the parties involved in the settlement, the amount at stake, and the fact that Wilkinson is the sole remaining objector to the class settlement, Plaintiffs had presented a prima facie case that Wilkinson may be a mere spoiler[4] to the settlement and that the interests of justice therefore support the discovery sought by the Plaintiffs.

In her Objection to Special Master's Order Granting Discovery, Wilkinson requests review of the Special Master's ruling on the grounds that Plaintiffs have not sufficiently demonstrated that they are entitled to discovery under Federal Rule of Civil Procedure 27(b). Plaintiffs, on the other hand, argue that the Special Master properly applied Rule 27(b) and that the depositions of Wilkinson's attorneys are justified under *Shelton v. American Motors Corp*, 805 F.2d 1323 (8th Cir. 1986) because Plaintiffs suspect that Wilkinson and her attorneys are currently engaged in a fraudulent scheme to extort money from the class.

Rule 27(b) provides in pertinent part:

> If an appeal has been taken from a judgment of a district court or before the taking of an appeal if the time therefor has not expired, the district court in which the judgment was rendered may allow the taking of the depositions of witnesses to perpetuate their testimony for use ***in the event of further proceedings in the district court***. In such case the party who desires to perpetuate the testimony may make a motion in the district court for leave to take the depositions, upon the same notice and service thereof as if the action was pending in the district court. The motion shall show (1) the names and addresses of persons to be examined and the

---

[4] As discussed in *Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1378 (9th Cir. 1993), a "spoiler" is a person who, having objected to a class action settlement, files a baseless appeal in order to advance his or her own personal interests and, possibly, to extract an unwarranted financial settlement from the parties.

4

> substance of the testimony which the party expects to elicit from each; (2) the reasons for perpetuating their testimony. If the court finds that the perpetuation of the testimony is proper to avoid a failure or delay of justice, it may make an order allowing the depositions to be taken and may make orders of the character provided for by Rules 34 and 35, and thereupon the depositions may be taken and used in the same manner and under the same conditions as are prescribed in these rules for depositions taken in actions pending in the district court.

Fed. R. Civ. P. 27(b) (emphasis added). Accordingly, Rule 27(b) requires a party to show both: (1) that the depositions are necessary to perpetuate testimony for use in the event of further proceedings in district court and (2) that the perpetuation of the testimony is necessary to avoid a failure or delay of justice.

After carefully considering the criteria set forth in Rule 27(b), and after conducting a *de novo* review of the Motion for Protective Order and the Motion for Discovery, the Court finds that Plaintiffs' Motion for Discovery is not supported by the authorities upon which they rely. Plaintiffs primarily argue that they need the requested discovery in order to determine whether Wilkinson is pursuing a frivolous appeal. However, a significant flaw in Plaintiffs' Motion is the fact that Plaintiffs have failed to demonstrate how the discovery they are seeking would be used in any further proceedings *in this Court*. Indeed, it is beyond dispute that the decision of whether to impose sanctions for the pursuit of a frivolous appeal lies squarely within the discretion of the *court of appeals* pursuant Federal Rule of Appellate Procedure 38. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 784 n. 34 (9th Cir.1992).[5] Plaintiffs have not provided the Court with any relevant authorities in support of their contention that a district court has the jurisdiction to entertain a sanctions motion that concerns solely the papers filed by Wilkinson in the Ninth Circuit or actions undertaken by Wilkinson, or her counsel, at the appellate level. Indeed, Plaintiffs grossly misstate the holding of *Pensiero, Inc. v. Lingle*, 847 F.2d 90, 98 (3rd Cir. 1988) in order to support their argument that "a sanctions proceeding 'is uniquely separable' and collateral from any decision on the merits." *Pensiero*, however, concerns an untimely Rule 11 motion for sanctions premised on a plaintiff's failure to reasonably investigate the facts and the law before filing the initial *complaint*. *Id.* at 92; *accord Hicks v. Southwest Md. Health Sys. Agency*, 805 F.2d 1165, 1167

---

[5] On Plaintiffs' Motion for Bond on Appeal, this Court considered the *potential* likelihood that the Ninth Circuit would find Wilkinson's appeal to be frivolous as part of the basis for determining the appropriate amount for the Rule 7 bond. However, contrary to Plaintiffs' current belief, the Court did *not* make any conclusions with respect to whether the appeal is, in fact, frivolous. In fact, the Court specifically noted that this is a determination to be made by the Ninth Circuit pursuant to Federal Rule of Appellate Procedure 38, not the district court.

(4th Cir. 1986). *Farmhand, Inc. v. Anel Engineering Indus., Inc.*, 693 F.2d 1140, 1146 (5th Cir. 1982), another case cited by Plaintiffs, concerns a district court's jurisdiction to oversee contempt proceedings relating to an injunction issued by that court. Thus, *Pensiero*, *Hicks*, and *Farmhand* do not stand for the proposition that a district court may entertain a motion for sanctions premised solely on proceedings in the appellate court. Further, even if Plaintiffs could demonstrate that this Court *does* have jurisdiction to sanction Wilkinson or Wilkinson's counsel while her appeal is pending, it would be entirely premature and inappropriate for this Court to make a determination regarding the merits of the appeal before the Ninth Circuit has had an opportunity to consider it in the first instance.

Additionally, Plaintiffs have also failed to demonstrate that it is likely that testimony will be lost if the depositions are not allowed to proceed immediately. Vague assertions that testimony "could" be lost or that evidence "could" be destroyed are not sufficient to justify discovery under Rule 27(b). *Lombards, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 976 (11th Cir. 1985).

Finally, Plaintiffs' desire to depose not just Wilkinson, but each of Wilkinson's attorneys, is also troubling. As Wilkinson points out, although there is no express prohibition against the taking of attorney depositions, attorney depositions are typically permitted only in those unique circumstances where: (1) no other means exist to obtain the information, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case. *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). Further, although Plaintiffs argue that the *Shelton* holding is not closely followed, even Plaintiffs admit that *Shelton* is still valid when: (1) litigation counsel are being deposed and (2) the questioning would expose litigation strategy in the pending case. *United States v. Philip Morris Inc.*, 209 F.R.D. 13, 17 (D.D.C. 2002).

Here, as the expected testimony goes to the heart of the attorney-client relationship between Wilkinson and her counsel, it is clear that the requested discovery would raise significant privilege issues. In fact, tacitly conceding this, Plaintiffs do not even attempt to argue that Abbott, LeClair, and Brooks are critical fact witnesses to non-privileged information. Instead, Plaintiffs rely on the "crime-fraud exception" and argue that the attorney-client privilege should not attach to Wilkinson's communications with her attorneys because Wilkinson and her attorneys have engaged in "attempted extortion." Plaintiffs have not provided the Court with

6

any evidence of extortion, however, and instead, vaguely refer to certain settlement demands Wilkinson made during a confidential Ninth Circuit mediation that were, at worst, unrealistic and unsubstantiated. However, Plaintiffs have not identified any cases where mere settlement demands – even ones that are completely outlandish – are sufficient to establish that the attorney has engaged in fraud thereby completely eviscerating the attorney-client privilege. Indeed, it is not clear that Plaintiffs can properly make such a showing without first establishing that Wilkinson's appeal *is* frivolous by obtaining a dismissal of Wilkinson's appeal in the appellate court.

Moreover, although Plaintiffs argue that the crime-fraud exception applies to the filing of frivolous litigation, it is significant that the cases cited by Plaintiffs are completely inapposite. For example, in *In re Richard Roe*, 168 F.3d 69, 71-72 (2nd Cir. 1999), the Second Circuit held that the crime-fraud exception could, conceivably, extend to the "bringing [of] baseless litigation intended to delay entry into a market by a competitor" thus violating antitrust laws. *Id.* In *Specialty Minerals, Inc. v. Pleuss-Stauffer AG*, 2004 WL 42280 * 9 (S.D.N.Y. 2004), on the other hand, the plaintiff produced ample evidence that the defendants had concealed prior art known to them at the time they filed their patent application, and then failed again to disclose the same prior art in the re-examination of the application. Finally, in *Recycling Solutions, Inc. v. District of Columbia*, 175 F.R.D. 407, 408-409 (D.D.C. 1997), the plaintiffs raised serious allegations that the defendants had employed counsel to pursue litigation in order to further facilitate the defendants' internal unconstitutional racial and ethnic discrimination policies. *Id.* at 409. No such showing has been made here. In fact, Plaintiffs appear to rely solely on mere speculation that Wilkinson's motives are unjustified. However, this is the type of pure speculation that prompted the court in *Motorola, Inc. v. Vosi Technologies, Inc.*, 2002 WL 1917256 (N.D. Ill. 2002) to reject the plaintiff's application of the crime-fraud exception. *See id.* (concluding that it was "not prepared to say that [the defendant's allegations] . . . have 'little or no factual basis,' let alone that the litigation has been carried on for the purpose of further fraud.").

Further, even in *Recycling Solutions, Inc.*, the district court limited the discovery to "an inquiry as to whether racial or ethnic factors were ever bespoken" between the defendants and their counsel. *Recycling Solutions, Inc.*, 175 F.R.D. at 410. The court did not allow discovery "encompass[ing] the merits of the [Contract Appeals Board's] decision, or legal issues arising thereon, . . . [the] legal strategies to be employed

7

United States District Court
For the Northern District of California

directed to the prompt and lawful resolution thereof, [or] . . . issues previously considered or presently pending either before the Superior Court of the District of Columbia or the District of Columbia Court of Appeals." *Id.* Thus, *Recycling Solutions, Inc.* does not provide authority for the type of discovery Plaintiffs are seeking here. As such, Plaintiffs' reliance on the crime-fraud exception is far too tenuous to overcome the attorney-client privilege. As the Second Circuit stated in *In re Richard Roe, Inc.:*

> Given that the attorney-client privilege and work product immunity play a critical role in our judicial system . . . the limited exceptions to them [i.e. crime-fraud and waiver] should not be framed so broadly as to vitiate much of the protection they afford. Where the very act of litigating is alleged as being in furtherance of a fraud, the party seeking disclosure under the crime-fraud exception must show probable cause that the litigation or an aspect thereof had little or no legal or factual basis and was carried on substantially for the purpose of furthering the crime or fraud. Absent such a showing, the requisite finding that an otherwise privileged or immunized communication was intended to further fraud cannot be made.

*Id.* at 71.

As a final matter, the Court finds it important to note that, between Plaintiffs, Wilkinson, and Wright, no less than ***ten motions*** have been filed in this Court over the past five months relating to Wilkinson and Wright's appeals. Indeed, this Court has become increasingly concerned that the recent stream of highly contentious and acrimonious litigation filed in this Court appears to be driven solely by the attorneys, rather than the clients. The Court is also concerned that very little effort – if any – has been made to comply with this Court's meet and confer requirement.[6] Because such litigation congests this Court's docket and drains scarce judicial resources, the parties are hereby ordered that, to the extent they find it necessary to file any further motions in this Court, the attorney who signs the motion must also file a certificate of counsel indicating that he or she has met and conferred, <u>in good faith</u>, with opposing counsel prior to filing the motion. Further, because this Court retains the inherent authority to manage its <u>own</u> proceedings, any abuse of the judicial process <u>in this Court</u> or further disregard of this Court's Orders will result in an order to show cause why sanctions should not issue. However, the Court reminds the parties that, to the extent that they anticipate filing further motions regarding the merits of Wilkinson's *appeal*, the Ninth Circuit is the appropriate forum for such matters to be

---

[6] Indeed, at the October 5, 2005 hearing before Judge Renfrew, counsel for Wilkinson repeatedly stated that, with the exception of the Ninth Circuit mediation, they had never spoken to Plaintiffs' counsel. *See* Oct. 5, 2005 Tr. at 27:13-17; 47:24-48:4 ("They don't have one scintella of evidence to deal with anything because we don't speak to them. We refuse to speak to them except in a confidential setting for reasons exactly like this.").

heard.

## CONCLUSION

IT IS HEREBY ORDERED THAT Objector Kamela Wilkinson's Objections to the Special Master's Order Granting Discovery Pursuant to Federal Rule of Civil Procedure 27(b) [Docket No. 589] are SUSTAINED.

IT IS FURTHER ORDERED THAT Objector Wilkinson's Motion for Protective Order [Docket No. 566] is GRANTED and Class Plaintiff's Motion for Deposition [Docket No. 572] is DENIED.

IT IS FURTHER ORDERED THAT to the extent that Objector Wilkinson or the parties find it necessary to file any further motions in this Court, the attorney who signs the motion must also file a certificate of counsel indicating that he or she has met and conferred, in good faith, with opposing counsel prior to filing the motion. Any abuse of the judicial process in this Court or further disregard of this Court's Orders will result in an order to show cause why sanctions should not issue. The Court further reminds the parties that, to the extent that they anticipate filing further motions regarding the merits of Wilkinson's *appeal*, the motions should be directed to the Ninth Circuit.

IT IS SO ORDERED.

Dated: 12-5-05

SAUNDRA BROWN ARMSTRONG
United States District Judge